# EXHIBIT C

```
 1    SUPREME COURT OF THE STATE OF NEW YORK
      COUNTY OF BRONX
 2    ------------------------------------------X
      SHAARILLE LINZY,
 3
                                    PLAINTIFF,
 4
              -against-              Index No.:
 5                                   23280/2020E

 6    JOSE A. ALEMAR, AMERICAN UNITED
      TRANSPORTATION, INC. and AMERICAN UNITED
 7    TRANSPORTATION II, INC.,

 8                                   DEFENDANTS.
      ------------------------------------------X
 9

10                  DATE: February 4, 2021

11                  TIME: 10:20 A.M.

12

13

14          EXAMINATION BEFORE TRIAL of the

15    Defendant, JOSE A. ALEMAR, taken by the

16    Plaintiff, pursuant to an Order, held via

17    video conference, before Sanite Conserve, a

18    Notary Public of the State of New York.

19

20

21

22

23

24

25
```

```
 1    A P P E A R A N C E S:

 2


 3    ROSENBAUM & ROSENBAUM, P.C.
         Attorneys for the Plaintiff
 4       SHAARILLE LINZY
         100 Wall Street, 15th Floor
 5       New York, New York 10005
         BY:  ANDREW MEIER, ESQ.
 6


 7
      ABRAMS FENSTERMAN
 8       Attorneys for the Defendants
         JOSE A. ALEMAR, AMERICAN UNITED
 9       TRANSPORTATION, INC. and AMERICAN UNITED
         TRANSPORTATION II, INC.
10       488 Madison Avenue, 23rd Floor
         New York, New York 10022
11       BY:  PETER OVERZAT, ESQ.

12


13


14
      ALSO PRESENT:
15       RAUL ZAMBRANO - SPANISH INTERPRETER

16              *          *          *

17

18

19

20

21

22

23

24

25
```

```
 1              221. UNIFORM RULES FOR THE
                  CONDUCT OF DEPOSITIONS
 2     221.1 Objections at Depositions
       (a) Objections in general.  No objections
 3     shall be made at a deposition except those
       which, pursuant to subdivision (b), (c) or
 4     (d) of Rule 3115 of the Civil Practice Law
       and Rules, would be waived if not
 5     interposed, and except in compliance with
       subdivision (e) of such rule.  All
 6     objections made at a deposition shall be
       noted by the officer before whom the
 7     deposition is taken, and the answer shall
       be given and the deposition shall proceed
 8     subject to the objections and to the right
       of a person to apply for appropriate relief
 9     pursuant to Article 31 of the CPLR.
       (b) Speaking objections restricted. Every
10     objection raised during a deposition shall
       be stated succinctly and framed so as not
11     to suggest an answer to the deponent and,
       at the request of the questioning attorney,
12     shall include a clear statement as to any
       defect in form or other basis of error or
13     irregularity.  Except to the extent
       permitted by CPLR Rule 3115 or by this
14     rule, during the course of the examination
       persons in attendance shall not make
15     statements or comments that interfere with
       the questioning.
16     221.2 Refusal to answer when objection is
       made. A deponent shall answer all questions
17     at a deposition, except (i) to preserve a
       privilege or right of confidentiality, (ii)
18     to enforce a limitation set forth in an
       order of the court, or (iii) when the
19     question is plainly improper and would, if
       answered, cause significant prejudice to
20     any person.  An attorney shall not direct
       a deponent not to answer except as provided
21     in CPLR Rule 3115 or this subdivision.
       Any refusal to answer or direction not to
22     answer shall be accompanied by a succinct
       and clear statement of the basis therefor.
23     If the deponent does not answer a question,
       the examining party shall have the right to
24     complete the remainder of the deposition.

25
```

```
 1              221. UNIFORM RULES FOR THE
                  CONDUCT OF DEPOSITIONS
 2
        221.3 Communication with the deponent
 3           An attorney shall not interrupt the
        deposition for the purpose of communicating
 4      with the deponent unless all parties
        consent or the communication is made for
 5      the purpose of determining whether the
        question should not be answered on the
 6      grounds set forth in section 221.2 of these
        rules and, in such event, the reason for
 7      the communication shall be stated for the
        record succinctly and clearly.
 8

 9             IT IS FURTHER STIPULATED AND AGREED
        that the transcript may be signed before
10      any Notary Public with the same force and
        effect as if signed before a clerk or a
11      Judge of the court.

12
               IT IS FURTHER STIPULATED AND AGREED
13      that the examination before trial may be
        utilized for all purposes as provided by
14      the CPLR.

15
               IT IS FURTHER STIPULATED AND AGREED
16      that all rights provided to all parties by
        the CPLR cannot be deemed waived and the
17      appropriate sections of the CPLR shall be
        controlling with respect hereto.
18

19             IT IS FURTHER STIPULATED AND AGREED
        by and between the attorneys for the
20      respective parties hereto that a copy of
        this examination shall be furnished,
21      without charge, to the attorneys
        representing the witness testifying herein.
22

23

24

25
```

1   R A U L   Z A M B R A N O, a Spanish
2   interpreter, solemnly swore to translate
3   the following questions from English to
4   Spanish and answers from Spanish to
5   English:
6   J O S E   A L E M A R, called as a witness,
7   having been first duly sworn, through an
8   interpreter, by a Notary Public of the
9   State of New York, was examined and
10  testified as follows:
11  EXAMINATION BY
12  MR. MEIER:
13       Q.    Please state your name for the
14  record.
15       A.    Jose Antonio Alemar.
16       Q.    What is your address?
17       A.    1329 Balcom Avenue, 2nd Floor,
18  Bronx, New York 10461.
19       Q.    Good morning, sir.  My name is
20  Andrew Meier, and I'm an attorney at
21  Rosenbaum & Rosenbaum, and we represent a
22  woman by the name of Shaarille Linzy, in
23  association with a personal injury action
24  arising from a motor vehicle accident that
25  took place on December 5, 2019.

1       A.      Okay.
2       Q.      We're here today to ask you
3  some questions pursuant to a court order
4  about your involvement in that incident on
5  December 5, 2019.  Now I know that you do
6  speak some English, but we have a Spanish
7  interpreter here today.  So for purposes of
8  today's deposition, I want you to pretend
9  that you don't know any English; okay, sir?
10      A.      Okay.
11      Q.      Please allow me to ask all of
12 my questions in English and allow Raul to
13 translate my question from English to
14 Spanish before providing an answer, and I
15 ask that you provide your answer only in
16 Spanish; do not answer in English, and then
17 Raul will then translate the Spanish back
18 to English for the record.
19      A.      Okay.
20      Q.      Now, your attorney, I'm
21 assuming gave you some instructions about
22 how to answer today's testimony, but let me
23 just give you the same kind of ground rules
24 on the record; okay, sir?
25      A.      Okay.

1    Q.    We have a court reporter and
2  she's typing down everything that is said
3  to create a transcript.  And that
4  transcript is going to be used by all
5  parties for the remainder of this lawsuit.
6  So because she is typing up everything that
7  is said, there are some ground rules that
8  we have to make sure we follow to make her
9  job as easy as possible.
10          First of all, she can only
11  transcribe one person speaking at a time,
12  so I ask that we all try our best to not
13  talk over each other.  I further ask -- I
14  want to let you know that she can only take
15  down verbal questions and responses.  So
16  while we all know what you mean here today
17  when you shake your head up and down, that
18  will not show up on the transcript, so you
19  have to say, yes.  Likewise, shrugs of the
20  shoulders, uh-huhs, huh-uhs; we all know
21  what you mean here today, but that's not
22  going to show up on the transcript.
23          Also, I want to -- hopefully,
24  we'll be done in about an hour or so, if
25  all goes smoothly, so I want to -- also, I

1   want to accommodate you at the same time;
2   okay, sir?
3        A.   Okay.
4        Q.   So if at any point in time your
5   phone rings and you need to take a phone
6   call, text message you have to answer, you
7   have to use the restroom, you want to speak
8   with your attorney, I have absolutely no
9   problem accommodating that, so long as
10  there is not a question pending before we
11  take a break.  So if you want to take a
12  break, you just have to answer the question
13  and we can take as long a break as you
14  need; okay, sir?
15       A.   Okay.
16       Q.   And finally, if you do not
17  understand one of my questions, please let
18  me know and I will be more than happy to
19  rephrase it.  But for purposes of this
20  lawsuit, we all must assume that you
21  understood my question if you answer it; is
22  that fair, sir?
23       A.   Okay.
24       Q.   Are you ready to begin, sir?
25       A.   Yes, sir.

```
 1        Q.     Now, the address that you gave,
 2   how long have you resided at that address?
 3        A.     Approximately, December, three
 4   years.
 5             MR. MEIER:  Madam reporter, his
 6      name and address are on the record?
 7             COURT REPORTER:  Yes.
 8             MR. MEIER:  Thank you.
 9        Q.     Sir, were you employed back in
10   December of 2019?
11        A.     Yes, I was employed.
12        Q.     And by whom were you employed
13   in December of 2019?
14        A.     I worked for Uber.  I'm a taxi
15   driver.  I am self-employed.
16        Q.     Sir, on December 5, 2019,
17   specifically, were you a self-employed taxi
18   driver that worked for Uber?
19        A.     Yes.  Correct.
20        Q.     On December 5, 2019, did you
21   also work for Lyft or just Uber?
22        A.     I had Lyft as a part-time; I
23   mean, to complete.
24        Q.     Can you explain that further,
25   sir?
```

1    A.    Yes.  I was affiliated with
2  another company to complete; sometimes you
3  would have to do that to complete the day.
4  But I worked mostly with the other company.
5    Q.    Sir, just so I'm clear.  On
6  December 5, 2019, you were affiliated with
7  Lyft; is that what you were saying?
8    A.    If I'm not mistaken, I think I
9  was still affiliated with Lyft, but I do
10 not know if I had it active at that time.
11   Q.    And sir, just so I'm clear.
12 You were also affiliated and worked for
13 Uber on December 5, 2019; correct?
14   A.    Yes.  Correct.
15   Q.    Okay.  Now, other than Lyft and
16 Uber, were you affiliated with any other
17 employer, or ride-sharing app on December
18 5, 2019?
19   A.    No.  At that time, I was no
20 longer working at another company.
21   Q.    On December 5, 2019, were you
22 operating a motor vehicle as a taxi driver
23 for Uber and/or Lyft?
24   A.    Exactly when it happened, I was
25 going to start working an Uber.

1    Q.   So sir, just so I'm clear.
2    When you're referring to when it happened,
3    what do you mean by that?
4    A.   I am explaining that when it
5    occurred, I had just turned on the
6    application.  I had not worked yet.
7    Q.   So sir, when you say "when it
8    occurred," are you referring to an incident
9    that occurred on December 5, 2019 involving
10   a pedestrian?
11   A.   Correct.
12   Q.   And just so we're clear.  Did
13   the motor vehicle that you were operating,
14   when you just turned on the Uber
15   application, come in contact with a
16   pedestrian on December 5, 2019?
17   A.   Correct.
18   Q.   Okay.  How long had you been on
19   the Uber application prior to coming in
20   contact with a pedestrian on December 5,
21   2019, approximately?
22   A.   If I'm not mistaken, ten, 15
23   minutes, or less.
24   Q.   And when you were on the Uber
25   application for ten or 15 minutes prior to

```
 1   the contact with the pedestrian on December
 2   5, 2019, can you describe what exactly you
 3   were doing?
 4              And by that, sir, I mean, were
 5   you -- you were on the application, were
 6   you waiting -- had you been hailed by a
 7   potential customer, were you driving around
 8   with the application on, or something else?
 9        A.    I had just dropped off a
10   friend.  I don't know if she was taking the
11   train or the bus.  I was stopped at
12   Westchester waiting for a call to come in,
13   nothing came in, so I proceeded.
14        Q.    And just so I'm clear.  The
15   Uber application was on the whole time for
16   the ten or 15 minutes up until and
17   including the moment your vehicle came in
18   contact with the pedestrian, yes or no?
19        A.    Yes.
20        Q.    And is the Uber app on your
21   cell phone, tablet, or something else?
22        A.    On the tablet.
23        Q.    On December 5, 2019, was that
24   also the case; was the Uber application on
25   your tablet?
```

```
 1        A.     If I'm not mistaken, yes, I had
 2   the tablet -- the tablet on.  Times before,
 3   a few times, I had used the phone, but
 4   mostly, I have stayed on the tablet.
 5        Q.     On December 5, 2019, how large
 6   was the tablet that you used the Uber
 7   application on?
 8        A.     If I'm not mistaken, I think
 9   it's 8 inches.  I'm not that familiarized.
10   I had another one before, but I think, if
11   I'm not mistaken, that it is 8 inches.
12        Q.     And back on December 5, 2019,
13   in the ten to 15 minutes prior to coming in
14   contact with the pedestrian, where was the
15   tablet situated in the car when you were
16   using the Uber application?
17        A.     I always keep it on the right
18   side, the screen practically at the level
19   of the radio.
20        Q.     On December 5, 2019, when you
21   were on the Uber application, when you came
22   in contact with that pedestrian, was the
23   tablet on the dashboard, or something else?
24        A.     Yes, exactly where I told you,
25   by the radio that is exactly on the
```