UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAARILLE LINZY,

                Plaintiff,

– against –

UBER TECHNOLOGIES, INC.,

                Defendant.

**OPINION & ORDER**

21 Civ. 05097 (ER)

RAMOS, D.J.:

    This case concerns whether Uber Technologies, Inc., may be held liable for injuries caused by one of its drivers. Shaarille Linzy brought claims against Uber after she was struck and injured by a car driven by Uber driver Jose Alemar. Uber has moved for summary judgment on all claims, arguing that it bears no liability because Alemar was not driving for Uber at the time of the incident.

    At this stage, viewing the evidence in the light most favorable to Linzy, the Court concludes that there is a genuine dispute of fact about Alemar's use of the Uber app at the time of the collision. Alemar's deposition testimony in a state court action—which the Court may consider on summary judgment—indicates that he had the Uber app on and "was going to start working an Uber" right before he hit Linzy with his car. Applying New York state law to these circumstances, the Court cannot find that Uber is entitled to judgment as a matter of law on the question whether Alemar was acting within the scope of his employment.

    Accordingly, Uber's motion for summary judgment, Doc. 51, is DENIED, and Uber's motion for oral argument, Doc. 56, is DENIED as moot.

I.   BACKGROUND

A. Factual Background[1]

On December 5, 2019, at 5:15 p.m., Linzy was hit by a car while walking in the Bronx.  Doc. 54 ¶ 4; Doc. 62 ¶ 4.  The car's driver was Jose Alemar, who sometimes drove for Uber.  Doc. 54 ¶ 4; Doc. 62 ¶ 4; Doc. 60-2 at 9:12–19.  The parties agree that the police report issued following the collision did not mention Uber and that Uber did not own, lease, or otherwise control Alemar's car.  Doc. 54 ¶¶ 4, 8; Doc. 62 ¶¶ 4, 8.  But the parties dispute whether Alemar was working for Uber at the time of the incident.

According to Uber, drivers are required to download a "Driver App" to be matched with customers looking for a ride.  Doc. 54 ¶ 1.  Drivers can receive ride requests only after they log in to the Driver App using their account.  Id. ¶¶ 1–2.  Uber states that "there are four different statuses for a driver who uses the Driver App": (1) "available" to receive a ride request; (2) "en route" to pick up a rider; (3) "on trip" transporting a rider; or (4) "offline" and unavailable to receive a ride request.  Id. ¶ 2.  When a driver is "online"—that is, "available," "en route," or "on trip"—Uber maintains information showing where that driver is located.  Id. ¶ 3.  Uber can discern the time and location "where a driver changes statuses, or goes 'online' or 'offline.'"  Id.

Uber asserts that it reviewed Alemar's account records in connection with this case.  Id. ¶ 5.  Those records indicated that Alemar went "offline" in the Driver App at approximately 11:51 p.m. on December 4, 2019—the night before the incident.  Id.  Alemar then became "available" in the Driver App at around 8:26 p.m. on December 5, 2019.  Id.  In other words, according to Uber's records, Alemar was "offline" at 5:15 p.m. (the time of the collision) and did not log in until more than three hours later.  Id. ¶ 6.

For her part, Linzy concedes that Uber maintains information about drivers' locations while they are "online."  Doc. 62 ¶ 3.  But Linzy denies that Uber can determine

---

[1] The following facts are taken from Uber's Local Rule 56.1 Statement of Undisputed Material Facts, Doc. 54, Linzy's Reply to Uber's Statement, Doc. 62, and the parties' attached exhibits.

the time and location at which a driver changes status or goes "online" or "offline." *Id.* Linzy also denies that Alemar was "offline" at the time of the incident. *Id.* ¶¶ 5–7. For support, Linzy relies on Alemar's deposition testimony in a state court action concerning the same collision. Specifically, Alemar testified: "Exactly when [the incident] happened, I was going to start working an Uber." Doc. 60-2 at 10:24–25, 11:7–11. When asked how long he had been on the Uber app prior to striking Linzy, Alemar stated: "If I'm not mistaken, ten, 15 minutes, or less." *Id.* at 11:18–23. Linzy asserts that this testimony creates a factual issue as to whether Alemar was within the scope of his employment for Uber when he hit her with his car. Doc. 62 at 5.

### B. Procedural History

On March 9, 2020, Linzy sued Alemar and the alleged owners of his car in New York state court. Doc. 21-2. Almost a year later, on February 8, 2021, she filed a separate action against Uber in New York state court. Doc. 2-1. She brought claims for vicarious liability and for negligent hiring, training, retention, and supervision. *Id.* ¶¶ 18–34.

Uber removed the case to this Court on June 9, 2021. Doc. 2. Linzy moved to remand. Doc. 5. She argued that the case should be returned to state court for consolidation with the action she had filed against Alemar and the car owners. Doc. 5-1 at 1–2. Judge Nathan—to whom this case was originally assigned—denied the motion, concluding that removal was proper because the parties were diverse and the amount in controversy exceeded the $75,000 threshold. Doc. 16 at 3–4. Linzy's argument for a discretionary remand also failed because discovery could be coordinated between the two cases without consolidation, and the cases were not "so related as to compel a discretionary remand." *Id.* at 7. Judge Nathan explained that "the similarities between the cases can be handled through coordinated discovery and careful case management that considers the progress of both cases." *Id.* at 8.

3

On March 1, 2022, Linzy moved for joinder of Alemar and several others pursuant to Federal Rules of Civil Procedure 19 and 20. Doc. 21-1 at 1.[2] She argued that joinder was "crucial" because "there is a genuine risk of two parallel litigations in different forums and ultimately the possibility of inconsistent verdicts." *Id.* Magistrate Judge Aaron issued a Report and Recommendation ("R&R") explaining that the proposed defendants were not required parties under Rule 19 because the Court could grant complete relief between the existing parties—Linzy and Uber—regardless of whether the other defendants were joined. Doc. 29 at 5–6. And permissive joinder was not appropriate because all the relevant factors indicated that joinder would not comport with fundamental fairness. *Id.* at 6–10. Magistrate Judge Aaron recommended that Linzy's motion for joinder be denied. *Id.* at 11. On May 17, 2022, this Court adopted the R&R in full. Doc. 30.[3]

The parties proceeded with discovery. On August 4, 2023, Uber moved for summary judgment on all claims. Doc. 51.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine dispute of material fact where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022) (citation omitted). The party moving for summary judgment "bears the initial burden of showing that there is no genuine dispute as to a material fact." *Id.* at 738 (citation omitted). In a case where "the burden of proof at trial would fall on the nonmoving party, the moving

---

[2] Linzy sought joinder of American United Transportation, Inc., American United Transportation II, Inc., Erez Dassa, and Ethan B. Gerber. Doc. 21-1 at 1. She asserted that these proposed defendants owned the car Alemar was driving at the time of the incident. *Id.* at 5.

[3] The case was reassigned to the undersigned on April 11, 2022, three days before Magistrate Judge Aaron issued the R&R.

party can shift the initial burden by pointing to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Id.* (internal quotation marks and citation omitted). If the moving party meets its burden, the nonmoving party must "come forward with evidence that would be sufficient to support a jury verdict in its favor." *Id.* (citation omitted). In conducting this analysis, a court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (citation omitted).

### III. DISCUSSION

Uber has moved for summary judgment on all claims, arguing that the company cannot be liable because Alemar "was not online using the Uber app" at the time of the incident. Doc. 52 at 1 (emphasis omitted). But Alemar's state-court deposition testimony, which the Court may consider at the summary judgment stage, indicates that he had the app on and "was going to start working an Uber," Doc. 60-2 at 10:24–25, right before striking Linzy with his car. That testimony precludes summary judgment on the question of whether Alemar was within his scope of employment when the collision occurred.

#### A. Admissibility of Alemar's Deposition Testimony

At the outset, the Court must determine whether it may consider Alemar's deposition testimony from the state court action. In evaluating a motion for summary judgment, a court may consider evidence if it "will be presented in admissible form at trial." *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (citing *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (per curiam)). Here, Uber relies on Federal Rule of Civil Procedure 32, which sets out certain conditions under which depositions may be used "[a]t a hearing or trial." Fed. R. Civ. P. 32(a)(1). The rule also provides that depositions taken in an earlier action "may be used in a later action involving the same subject matter between the same parties." Fed. R. Civ. P. 32(a)(8).

5

Uber argues that Alemar's deposition testimony is "inadmissible hearsay" that cannot be considered on summary judgment. Doc. 52 at 10. In Uber's view, Alemar's testimony is not admissible under Rule 32(a)(8) because the prior deposition did not involve the "same parties" as this action. *Id.* at 10–12. Linzy responds that material relied on at the summary judgment stage need not be admissible in the form presented to the district court. Doc. 61 at 5. Instead, the question is whether that testimony is *capable* of being offered in an admissible form at trial. *Id.* Since Alemar could be called as a live witness at trial, Linzy reasons, his deposition testimony may be considered here. *Id.*

The Court will consider Alemar's testimony. At the summary judgment stage, several courts have found that deposition testimony from another action may be considered regardless of whether Rule 32(a)(8)'s requirements are satisfied. In *Highland CDO Opportunity Master Fund, L.P. v. Citibank, N.A.*, 270 F. Supp. 3d 716 (S.D.N.Y. 2017), for instance, the court held that it could rely on deposition testimony from another case, even though the opposing party lacked an "opportunity and similar motive to develop the testimony." *Id.* at 720 n.3 (citation omitted). The court explained that testimony is not "excludable on summary judgment merely because it was taken in a different case." *Id.* Other district courts in this Circuit have reached the same conclusion. *See, e.g.*, *BPI Lux S.a.r.l. v. Bd. of Managers of Setai Condo. Residence at 40 Broad St.*, No. 18 Civ. 1621 (NRB), 2019 WL 3202923, at *2 n.4 (S.D.N.Y. July 16, 2019) ("To be used on summary judgment in a new case, depositions from another case need only satisfy Rule 56's requirements and become part of the record in the new case."); *Kanciper v. Lato*, No. 13 Civ. 0871 (SJF) (SIL), 2016 WL 11507274, at *13 (E.D.N.Y. Dec. 1, 2016) (finding that deposition testimony from a state court action could be considered on summary judgment because "although the deposition testimony ultimately

may not be admissible at trial under Rule 32(a) of the Federal Rules of Civil Procedure, the witnesses who gave such testimony may, themselves, testify at trial").[4]

Courts outside of the Second Circuit have also held that such deposition testimony may be considered in deciding a summary judgment motion.  *See, e.g.*, *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 978 (7th Cir. 2014) (observing that "in a proper case, depositions from one case may be used at the summary judgment stage of another, even if Rule 32(a)(8)'s requirements are not met"); *Gulf USA Corp. v. Fed. Ins. Co.*, 259 F.3d 1049, 1056 (9th Cir. 2001) (holding that deposition testimony is the equivalent of an affidavit and may be used on summary judgment "regardless of whether the testimony was taken in a separate proceeding," so long as the depositions "were made on personal knowledge and set forth facts that were admissible in evidence").[5]

And still other courts have found that because Rule 32(a) refers to use at a "hearing or trial," it does not even apply to consideration of deposition testimony in connection with a summary judgment motion.  *See, e.g.*, *Ava Realty Ithaca, LLC v. Griffin*, No. 19 Civ. 123 (DNH) (TWD), 2021 WL 3848478, at *5 (N.D.N.Y. Aug. 26, 2021) ("Nothing in Rule 32(a) precludes consideration of deposition testimony that may otherwise be inadmissible at a hearing or trial in support of or in opposition to a motion for summary judgment."); *Vengurlekar v. HSBC Bank USA*, No. 03 Civ. 243 (LTS), 2008

---

[4] *See also, e.g.*, *Marom v. Blanco*, No. 15 Civ. 2017 (PKC), 2019 WL 3338141, at *1 n.2 (S.D.N.Y. July 25, 2019) (concluding that deposition transcripts from a separate action were "admissible at the summary judgment stage as the equivalent of affidavits pursuant to Fed. R. Civ. P. 56(c), and the Court has considered them in deciding defendants' motion for summary judgment"); *MacShane v. City of New York*, No. 06 Civ. 06024 (RRM) (RML), 2015 WL 1298423, at *4 n.4 (E.D.N.Y. Mar. 23, 2015) ("[A] transcript of a deposition may not be in a form that is admissible, but the underlying testimony would be admissible at trial subject to its compliance with the Federal Rules of Evidence, and therefore may be considered by the Court at the summary judgment phase." (internal citation omitted)).

[5] *See also, e.g.*, *Vondriska v. Cugno*, 368 F. App'x 7, 8–9 (11th Cir. 2010) (concluding that district court abused its discretion in applying Rule 32(a) to hold that deposition testimony was inadmissible on summary judgment); *Tingey v. Radionics*, 193 F. App'x 747, 765 (10th Cir. 2006) (noting that Rule 32(a) "is primarily applied as a limitation on introducing deposition testimony *at trial*" and that applying it to summary judgment proceedings would represent "an overly-expansive view of the Rule").  *See generally* 8A Wright & Miller, *Federal Practice and Procedure* § 2142 (3d ed.) ("A deposition is at least as good as an affidavit and should be usable whenever an affidavit would be permissible, even though the conditions of the rule on use of a deposition at trial are not satisfied.").

WL 373692, at *2 n.2 (S.D.N.Y. Feb. 8, 2008) (distinguishing use of deposition "at a hearing or trial" from plaintiffs' attempted use of deposition in connection with summary judgment motion).

On the other hand, Uber points to decisions from courts that have applied Rule 32(a)(8) to determine whether deposition transcripts from a prior action could be considered at the summary judgment stage. In *Mediavilla v. City of New York*, 259 F. Supp. 3d 82 (S.D.N.Y. 2016), the court noted that the plaintiff relied on "deposition transcripts from unrelated actions." *Id.* at 110. Citing Rule 32(a)(8), the court explained that "deposition testimony taken in a different action is only admissible if the present action involves the same subject matter and the same parties." *Id.* As a result, the court said, it would not consider such "inadmissible evidence." *Id.* But the *Mediavilla* court does not appear to have considered whether the deposition transcripts were admissible even if they did not fall within the scope of Rule 32(a)(8).[6]

The Court concludes that both logic and the weight of authority support considering the deposition testimony here. As some courts have noted, it would be odd to require a party to refile sworn deposition testimony in the form of an affidavit. *See, e.g.*, *Hoover v. Switlik Parachute Co.*, 663 F.2d 964, 966–67 (9th Cir. 1981) (concluding that depositions taken prior to opposing party's joinder were "the equivalent of affidavits" and that "[i]t would have been pointless for Pioneer to have the same witnesses it had deposed file affidavits when what Pioneer already had from them met all the requirements for affidavits"). While Uber was not present to cross-examine Alemar at his deposition, courts regularly consider affidavits on summary judgment despite the absence of cross-

---

[6] Uber also cites *District Attorney of New York County v. Republic of the Philippines*, 307 F. Supp. 3d 171 (S.D.N.Y. 2018). Doc. 64 at 5–6. But in that case, the court found that deposition transcripts were admissible under Rule 32(a)(8) because the "same subject matter" and "same parties" requirements were satisfied. *See* 307 F. Supp. 3d at 209–10. The court did not consider whether the transcripts would have been admissible if those conditions were not met. *See id.* at 210 n.14 ("Having found that the deposition transcripts are admissible under Rule 32(a)(8), the Court need not—and will not—assess the merits of Roxas's other grounds for admissibility.").

examination. And testimony from an earlier *trial* may be considered on summary judgment, even though the opposing party may not have had an opportunity to cross-examine the witness. *See, e.g.*, *Shulins v. New England Ins. Co.*, 360 F.2d 781, 785 (2d Cir. 1966) (observing that a certified transcript of a court record "has the same evidentiary value and safeguards as affidavits provided for in Rule 56(e), . . . which do not afford an opportunity for cross-examination" (citation omitted)); *Kraft Gen. Foods, Inc. v. Cattell*, 18 F. Supp. 2d 280, 284 (S.D.N.Y. 1998) ("Transcript testimony serves the same purpose as an affidavit under Fed. R. Civ. P. 56 and is comparable in that each form of testimony is sworn and submitted without cross-examination by the adverse party." (internal citation omitted)). The same reasoning applies to sworn testimony from a prior deposition.

Here, Alemar's deposition testimony was based on his personal knowledge and set forth facts that would be admissible at trial. Linzy has submitted the transcript in support of her opposition to Uber's summary judgment motion. Doc. 60-2. Accordingly, the Court may consider Alemar's testimony in determining whether summary judgment is proper.[7]

### B. Scope of Employment

On the merits, the key issue is whether Alemar was within the scope of employment at the moment he struck Linzy with his car. This case arises under the Court's diversity jurisdiction, so state substantive law applies. *See, e.g.*, *Sarkees v. E.I. DuPont de Nemours & Co.*, 15 F.4th 584, 588 (2d Cir. 2021). The parties agree that New York law governs. Doc. 52 at 5; Doc. 61 at 4.

In New York, "an employee acts within the scope of his employment when (1) 'the employer is, or could be, exercising some control, directly or indirectly, over the

---

[7] The Court therefore does not need to reach Linzy's argument that the testimony satisfies the "same parties" requirement of Rule 32(a)(8) because Alemar was represented at his deposition "by counsel whose motivations aligned closely with those of Uber." Doc. 61 at 9.

9

employee's activities,' and (2) '[the employee] is doing something in furtherance of the duties he owes to his employer.'" *Fountain v. Karim*, 838 F.3d 129, 135 (2d Cir. 2016) (alteration in original) (quoting *Lundberg v. State*, 255 N.E.2d 177, 179 (N.Y. 1969)). An employee's scope of employment includes not only "an act undertaken at the explicit direction of the employer," but also "any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act." *Riviello v. Waldron*, 391 N.E.2d 1278, 1281 (N.Y. 1979) (citation omitted). Since "the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, the question is ordinarily one for the jury." *Id.*

During the deposition, Linzy's attorney asked Alemar whether he was driving for Uber on the date of the incident. Doc. 60-2 at 10:21–23. Alemar stated: "Exactly when it happened, I was going to start working an Uber." *Id.* at 10:24–25. He explained that when the incident occurred, "I had just turned on the application. I had not worked yet." *Id.* at 11:4–6. Linzy's attorney then asked Alemar how long he had been on the Uber app prior to striking Linzy. *Id.* at 11:18–21. Alemar responded: "If I'm not mistaken, ten, 15 minutes, or less." *Id.* at 11:22–23. He also confirmed that the Uber app was on for that entire ten-to-fifteen-minute period. *Id.* at 12:14–19.

Uber argues that this testimony is "entirely consistent with Uber's data." Doc. 64 at 7. According to an affidavit from Todd Gaddis, an Uber data manager, Uber's records indicated that "Alemar was not logged 'online' in the Driver App" at the time of the collision. Doc. 53-31 ¶ 10. In his deposition, Gaddis testified that a driver needs "to click the online button to actually go online to receive any of those requests and be connected with riders." Doc. 60-3 at 17:6–8. Gaddis's affidavit also stated that Alemar went offline at around 11:51 p.m. the night before the incident and did not appear online again until about 8:26 p.m. the next evening—more than three hours after he hit Linzy with his car. Doc. 53-31 ¶ 9. Based on this evidence, Uber contends that it has "no relationship whatsoever to Plaintiff's injuries." Doc. 64 at 10.

10

Viewed in the light most favorable to Linzy, however, Alemar's statements—that the app was on and that he "was going to start working an Uber"—create at least some ambiguity as to whether and how he was using the app in the moments before the collision. The Court's task is to predict, in these circumstances, whether the New York Court of Appeals would conclude as a matter of law that Alemar was outside his scope of employment. *See, e.g.*, *Dunnegan v. 220 E. 54th St. Owners, Inc.*, 518 F. Supp. 3d 764, 767–68 (S.D.N.Y. 2021) ("Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law." (quoting *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000))). In doing so, the Court may rely on decisions of the Appellate Division "to determine how the New York Court of Appeals would approach a legal issue." *Id.* at 768; *see also Michalski*, 225 F.3d at 116 (noting that "the decisions of New York State's Appellate Division are helpful indicators" in determining how the Court of Appeals would rule). And "[t]he holding of 'an intermediate appellate state court . . . is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Michalski*, 225 F.3d at 116 (omission in original) (quoting *West v. AT&T*, 311 U.S. 223, 237 (1940)).[8]

It appears that the only New York appellate decision addressing this question is *Uy v. Hussein*, 131 N.Y.S.3d 70 (App. Div. 2020). The fact pattern there was similar: an Uber driver hit the plaintiff with his car, and the plaintiff sued Uber on a theory of vicarious liability. *Id.* at 72. Uber moved for summary judgment, arguing that the driver was not acting within the scope of his alleged employment at the time of the incident. *Id.* at 73. Uber relied on affidavits from the driver and from an Uber representative stating

---

[8] Uber asserts that the Court should consider decisions from all New York "lower courts"—including trial courts. Doc. 64 at 9 (quoting *Khan v. Yale Univ.*, 27 F.4th 805, 818 (2d Cir. 2022)). New York trial court decisions may have persuasive value in some cases, but they are not binding precedent. *See Torres v. City of New York*, 590 F. Supp. 3d 610, 624 (S.D.N.Y. 2022) (noting that "a decision in an individual case of the New York State Supreme Court, as New York's trial court, is not binding on future cases"). And here, the trial court decisions cited by Uber are unavailing for the reasons discussed below.

that the driver had logged off the Uber app forty minutes before the collision.  *Id.*  But those assertions, the Second Department concluded, "were simply insufficient, without more, to eliminate all questions of fact as to whether [the driver] was acting within the scope of his alleged employment with Uber at the time of the incident."  *Id.*  The court affirmed the denial of Uber's cross-motion for summary judgment.  *Id.*[9]

Uber attempts to distinguish *Uy* on the grounds that the affidavit submitted in that case was "entirely different" from the affidavit submitted here by Todd Gaddis.  Doc. 64 at 9.  The differences, according to Uber, are that the *Uy* affidavit did not explain the distinction between "online" and "offline" status and did not include supporting data showing that the driver was "offline."  *Id.* at 9–10.  Even accepting the accuracy of these distinctions, however, they are not relevant.  The *Uy* court did not ask for more evidence that the driver had logged off; it had two affidavits making that fact plain.  Instead, the court said that such evidence was not itself sufficient to establish that the driver was outside his scope of employment.  *See Uy*, 131 N.Y.S.3d at 73.  To the extent the identity of the Uber representative submitting the affidavit might be relevant, moreover, at least one New York trial court has relied on *Uy* and denied summary judgment for Uber where Gaddis provided the affidavit.  *See Singleton v. Am. United Transp. Inc.*, No. 808101/2021E, 2022 WL 17732992, at *2 (N.Y. Sup. Ct. Bronx Cnty. Nov. 30, 2022) ("Here, contrary to Uber's contention, the averments of Todd Gaddis that [the driver] had logged off of the Uber app 30 minutes before the accident is insufficient, without more, to

---

[9] There was also a dispute in *Uy* about whether the driver was an employee of Uber.  *See* 131 N.Y.S.3d at 72–73.  Here, Uber asserted in its reply brief that "Uber is not Mr. Alemar's employer; drivers who use the Uber App work as independent contractors."  Doc. 64 at 2.  But Uber did not move for summary judgment on that basis, focusing instead on the argument that Alemar was not driving for Uber at the time of the incident.  Accordingly, the Court need not determine whether Alemar was an employee or independent contractor.

12

eliminate all questions of fact as to whether [the driver] was acting within the scope of his alleged employment with Uber at the time of the incident.").[10]

Uber further argues that *Uy* is an "outlier" when compared to a plethora of decisions in Uber's favor from New York trial courts. Doc. 64 at 10. Uber cites twenty-nine of these decisions, but they are largely unhelpful for a variety of reasons. First, some of the decisions predate the *Uy* ruling.[11] Second, several of the decisions granted Uber's motion for dismissal or summary judgment where—unlike here and in *Uy*—the motion was not opposed by the plaintiff.[12] Third, a few of the decisions summarily granted Uber's motion without further analysis.[13] Finally, some of the decisions are inapposite for other reasons. *See* Doc. 53-13, *Espinal v. Rivas*, No. 803724/2021E (N.Y. Sup. Ct. Bronx Cnty. Mar. 27, 2023) (defendant did not have access to Uber app until almost two years after alleged accident); Doc. 53-16, *Ruiz v. Saleem*, No. 157262/2020 (N.Y. Sup. Ct. N.Y. Cnty. Jan. 5, 2023) (driver stated in affidavit that he was performing personal errands at time of accident and was not "doing anything using any Uber application"); Doc. 53-28, *Jaiman v. Singh*, No. 22679/2017E (N.Y. Sup. Ct. Bronx Cnty.

---

[10] Uber suggests that the driver's affidavit was insufficient in *Uy* because "the court was concerned that the affiant did not speak, write, or understand English." Doc. 64 at 9. The *Uy* court held that the driver's affidavit was not admissible. 131 N.Y.S.3d at 73. But the court also made clear that "even considering [the driver's] affidavit, . . . Uber failed to meet its burden." *Id.*

[11] *See* Doc. 53-2, *Bhagwandin v. Chowdhury*, No. 717962/2017 (N.Y. Sup. Ct. Queens Cnty. Nov. 27, 2018); Doc. 53-3, *Gilkes v. Fischlewitz*, No. 700220/18 (N.Y. Sup. Ct. Queens Cnty. Aug. 27, 2018); Doc. 53-7, *Knick v. Menachem Light*, No. 503898/18 (N.Y. Sup. Ct. Kings Cnty. June 6, 2018); Doc. 53-29, *Johnson v. Tristate Crane, LLC*, No. 525363/19 (N.Y. Sup. Ct. Kings Cnty. Aug. 17, 2020).

[12] *See* Doc. 53-1, *Collado v. Uber Techs., Inc.*, No. 715645/2019 (N.Y. Sup. Ct. Queens Cnty. Oct. 9, 2020); Doc. 53-6, *Green v. Yau*, No. 13601/2015 (N.Y. Sup. Ct. Kings Cnty. Mar. 18, 2021); Doc. 53-9, *Colon v. Cano-Molina*, No. 509234/2020 (N.Y. Sup. Ct. Kings Cnty. May 10, 2023); Doc. 53-12, *Fernandez v. Uber Techs., Inc.*, No. 721287/2021 (N.Y. Sup. Ct. Queens Cnty. Mar. 24, 2023); Doc. 53-15, *Hodge v. Anokye*, No. 810369/2021E (N.Y. Sup. Ct. Bronx Cnty. Jan. 9, 2023); Doc. 53-18, *Toro v. Garcia*, No. 805732/2022E (N.Y. Sup. Ct. Bronx Cnty. Dec. 5, 2022); Doc. 53-20, *Peleytay v. Efkarpidis*, No. 709549/2021 (N.Y. Sup. Ct. Queens Cnty. Nov. 28, 2022); Doc. 53-22, *Trompeter v. Velez*, No. 804075/2021E (N.Y. Sup. Ct. Bronx Cnty. Nov. 29, 2022); Doc. 53-27, *Brown v. Uber Techs., Inc.*, No. 35531/2020E (N.Y. Sup. Ct. Bronx Cnty. Mar. 10, 2022).

[13] *See* Doc. 53-4, *Beydoun v. Uber Techs., Inc.*, No. 504493/2020 (N.Y. Sup. Ct. Kings Cnty. Jan. 25, 2022); Doc. 53-5, *O'Neal v. Kashim*, No. 524346/2020 (N.Y. Sup. Ct. Kings Cnty. Jan. 4, 2022); Doc. 53-24, *Gonzales v. Khouri*, No. 505524/2022 (N.Y. Sup. Ct. Kings Cnty. Oct. 20, 2022).

Dec. 11, 2018) (Uber's cross-motion for summary judgment was limited to the issue of whether Uber owned the driver's car).

That leaves a number of other decisions in which the trial court determined that Uber could not be held vicariously liable.[14] As a preliminary matter, it is not clear that these rulings can overcome the Second Department's decision in *Uy*. In New York, a trial court "is bound to apply the law as promulgated by the Appellate Division within its particular Judicial Department . . . , and where the issue has not been addressed within the Department, [the court] is bound by the doctrine of stare decisis to apply precedent established in another Department, either until a contrary rule is established by the Appellate Division in its own Department or by the Court of Appeals." *Dukes v. NYCERS*, 331 F.R.D. 464, 469 (S.D.N.Y. 2019) (alteration and omission in original) (quoting *D'Alessandro v. Carro*, 992 N.Y.S.2d 520, 523 (App. Div. 2014)). To the extent that the decisions cited by Uber conflict with *Uy*, then, the Appellate Division's ruling must prevail as a matter of New York law.

Regardless, the trial court decisions lack persuasive force. None of the decisions engage with—or even discuss—*Uy* or other New York case law concerning a driver's scope of employment. Of course, it is possible that certain details specific to each case led the court to conclude that such analysis was unnecessary. But none of those details are evident from the face of the decisions. And there is no indication that any of these cases included testimony comparable to what Alemar provided here—that is, testimony

---

[14] *See* Doc. 53-8, *Rowe v. Kilgore*, No. 807484/2021E (N.Y. Sup. Ct. Bronx Cnty. June 8, 2023); Doc. 53-10, *Phillips v. Zhang*, No. 521302/2020 (N.Y. Sup. Ct. Kings Cnty. Feb. 15, 2023); Doc. 53-11, *McClanahan v. Sennini*, No. 528300/2022 (N.Y. Sup. Ct. Kings Cnty. Mar. 15, 2023); Doc. 53-14, *Quesada v. Uber Techs., Inc.*, No. 152130/2022 (N.Y. Sup. Ct. N.Y. Cnty. Feb. 21, 2023); Doc. 53-17, *Webster v. Golding*, No. 813793/2021E (N.Y. Sup. Ct. Bronx Cnty. Dec. 15, 2022); Doc. 53-19, *Vargas v. Uber Techs., Inc.*, No. 815835/2021E (N.Y. Sup. Ct. Bronx Cnty. Dec. 5, 2022); Doc. 53-21, *Granados v. Venture Leasing, LLC*, No. 23233/2018E (N.Y. Sup. Ct. Bronx Cnty. Nov. 28, 2022); Doc. 53-23, *Sitan v. Jallow*, No. 811740/2021E (N.Y. Sup. Ct. Bronx Cnty. Nov. 21, 2022); Doc. 53-25, *Flowers v. Mombrun*, No. 508598/2018 (N.Y. Sup. Ct. Kings Cnty. Sept. 30, 2022); Doc. 53-26, *Pena-Peralta v. Torigar Corp.*, No. 713147/21 (N.Y. Sup. Ct. Queens Cnty. Mar. 22, 2022).

that the driver had the app on and "was going to start working an Uber" right before the collision.

Furthermore, while *Uy* appears to be the only case involving a rideshare platform driver, there are several New York appellate cases addressing whether other employees were within the scope of employment while driving. As a general matter, the Court of Appeals has explained, "an employee driving to and from work is not acting in the scope of his employment." *Lundberg*, 255 N.E.2d at 179. But there is an exception to this general rule: "an employee who uses his car in furtherance of his work is acting in the scope of his employment while driving home from his last business appointment, since such a person is working, and is under his employer's control, from the time he leaves the house in the morning until he returns at night." *Id.* *See generally Marks' Dependents v. Gray*, 167 N.E. 181, 183 (N.Y. 1929) (Cardozo, C.J.) ("[T]he decisive test must be whether it is the employment or something else that has sent the traveler forth upon the journey or brought exposure to its perils.").

Although the parties have not focused their briefing on New York case law on the scope of employment issue, some decisions indicate that employees involved in collisions while driving outside their regular work hours may well be within the scope of employment. *See, e.g.*, *Camisa v. Rosen*, 54 N.Y.S.3d 111, 112–13 (App. Div. 2017) (denying summary judgment for employer where driver was on his way home but on a phone call with a vendor); *Shauntz v. Schwegler Bros.*, 20 N.Y.S.2d 198, 199, 201 (App. Div. 1940) (jury could find that driver on his way home from servicing refrigerator at customer's restaurant was within scope of employment, especially in light of the fact that he "had his tools with him in the car and could be called upon to do work for his employer"); *see also McBride v. Schenectady County*, 488 N.Y.S.2d 288, 290 (App. Div. 1985) ("[W]here an employee who has no fixed base of employment is paid commissions and uses his vehicle to obtain sales, the vehicle's use can be held to be within the scope of employment, even when traveling to the employee's abode."). *But cf. Hamm v. United*

15

*States*, 483 F.3d 135, 138 (2d Cir. 2007) (military reservist was outside scope of employment where the drive "was not based on the military's requirements or orders" but rather "was done purely on his own time in order to commute to his place of employment"); *Swartzlander v. Forms-Rite Bus. Forms & Printing Serv., Inc.*, 572 N.Y.S.2d 537, 538 (App. Div.) (driver was outside scope of employment where it was undisputed that he was on a personal errand at the time of the incident and "the employment did not create the necessity for the travel"), *aff'd*, 582 N.E.2d 597 (N.Y. 1991).

      In light of this precedent, it is not entirely clear how the New York Court of Appeals would decide the scope of employment question where an Uber driver had the app on and "was going to start working an Uber" right before the incident. If this Court were writing on a blank slate, perhaps it would resolve the question in Uber's favor. But the Court does not have any "persuasive data," *Michalski*, 225 F.3d at 116 (citation omitted), to compel the conclusion that the Second Department was wrong in *Uy* or that the Court of Appeals would reject *Uy*'s holding. The conclusory statements in the trial court decisions cited by Uber—which, again, are not binding precedent—fall short on that score. (And for that matter, at least two trial courts have reached the opposite conclusion from those cases. *See Singleton*, 2022 WL 17732992, at *2; *Uy v. Hussein*, No. 710865/2016, 2022 WL 2388184, at *2 (N.Y. Sup. Ct. Queens Cnty. May 19, 2022) (on remand following the Appellate Division's ruling, trial court denied Uber's renewed motion for summary judgment).)

      Accordingly, the Court will follow the sole New York appellate decision to have addressed similar factual circumstances. On this record—which includes Alemar's deposition testimony—a reasonable jury could conclude that Alemar was within the scope of employment at the time of the collision. *See Uy*, 131 N.Y.S.3d at 73 (noting that action may be within scope of employment when "the employee is engaged generally in the business of the employer, or if the act may be reasonably said to be necessary or

incidental to such employment" (citation omitted)).  That is sufficient to preclude summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Uber's motion for summary judgment is DENIED. Uber's motion for oral argument is DENIED as moot.

The parties are directed to appear for a telephonic status conference on December 6, 2023, at 11:00 a.m.  The parties are directed to dial (877) 411-9748 and enter access code 3029857# when prompted.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 51, 56.


It is SO ORDERED.


Dated:   November 6, 2023
         New York, New York

_____
EDGARDO RAMOS, U.S.D.J.