## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Shaarille Linzy,<br><br>              Plaintiff,<br><br>   v.<br><br>Uber Technologies, Inc.,<br><br>              Defendant. | Case No. 1:21-cv-05097 (ER) (SDA) |

## Defendant Uber's Memorandum of Law in Support of Motion for Reconsideration or, in the Alternative, for Certification for Interlocutory Appeal

Dated: November 20, 2023

**Defendant Uber Technologies, Inc.**

By:   */s/ Steven G. Williamson*
Christopher Betke (CB8047)
Andrew R. Ferguson (AF5154)
COUGHLIN BETKE LLP
1330 Avenue of the Americas, Suite 23A
New York, NY 10019
Telephone: (212) 653-0380
cbetke@coughlinbetke.com
aferguson@coughlinbetke.com

Steven G. Williamson (pro hac vice)
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 788-3368
swilliamson@perkinscoie.com

TABLE OF CONTENTS

PAGE

Introduction ................................................................................................................... 1

ARGUMENT ................................................................................................................. 3

    A.    The Court should reconsider its Order. ................................................... 3

        1.    The Court overlooked Plaintiff's failure to meet her burden of production. ................................................................... 4

        2.    The Court misapprehended the *Uy* decision. ............................. 8

    B.    In the alternative, this Court should certify its Order for interlocutory appeal. ................................................................ 10

        1.    The Order involves a controlling question of law. ................. 10

        2.    There is substantial ground for difference of opinion on the question of New York liability law. ............................. 12

        3.    Immediate appeal will materially advance the litigation. .......... 13

Conclusion ................................................................................................................. 14

# TABLE OF AUTHORITIES

PAGE(S)

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................................4, 5

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).......................................................................................................5

*Chertkova v. Connecticut Gen. Life Ins. Co.*,
   92 F.3d 81 (2d Cir. 1996)..............................................................................................5

*CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*,
   735 F.3d 114 (2d Cir. 2013)..........................................................................................4

*Duncan v. Uber Technologies, Inc., et al.*,
   No. 700606/2020 (N.Y. Sup. Ct. Queens Cnty. Sept. 27, 2023) ..........................7 n.1

*Florio v. City of N.Y.*,
   No. 06-cv-6473, 2008 WL 3068247 (S.D.N.Y. Aug. 5, 2008)..................................13

*Fountain v. Karim,*
   838 F.3d 129 (2d Cir. 2016).....................................................................................5, 8

*Holcomb v. Iona Coll.*,
   521 F.3d 130 (2d Cir. 2008).........................................................................................1

*Jackson v. Caribbean Cruise Line, Inc.*,
   88 F. Supp. 3d 129 (E.D.N.Y. 2015) ...................................................................11–12

*Jaffer v. Hirji*,
   887 F.3d 111  (2d Cir. 2018)........................................................................................4

*Jeffreys v. City of N.Y.*,
   426 F.3d 549 (2d Cir. 2005)..................................................................................10–11

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
   729 F.3d 99 (2d Cir. 2013)...........................................................................................3

*Lewis v. Clarkstown Police Dep't*,
   No. 11-cv-2487, 2014 WL 6883468 (S.D.N.Y. Dec. 8, 2014).................................3–4

*Liberty Mut. Ins. Corp. v. New York Marine & Gen. Ins. Co.*,
   590 F. Supp. 3d 597 (S.D.N.Y. 2022)..........................................................................4

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009),
  558 U.S. 100 (2009)..................................................................................................10

*Pen Am. Ctr., Inc. v. Trump*,
  No. 18-cv-9433, 2020 WL 5836419 (S.D.N.Y. Oct. 1, 2020)..................................12

*Pinter v. City of N.Y.*,
  976 F. Supp. 2d 539 (S.D.N.Y. 2013)...............................................................10, 13

*Seneca Nation v. Cuomo*,
  484 F. Supp. 3d 65 (W.D.N.Y. 2020).......................................................................12

*Skylon Corp. v. Guilford Mills, Inc.*,
  901 F. Supp. 711, 718 (S.D.N.Y. 1995)....................................................................13

*Tantaros v. Fox News Network, LLC.*,
  465 F. Supp. 3d 385 (S.D.N.Y. 2020)................................................................11, 13

*United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*,
  521 F. Supp. 3d 265 (E.D.N.Y. 2021) .........................................................10, 11, 13

*Uy v. A. Hussein*,
  186 A.D.3d 1567, 131 N.Y.S.3d 70 (2020) ......................................................2, 8–10

*Weber v. United States Trustee*,
  484 F.3d 154 (2007)..................................................................................................13

*Whyte v. Wework Companies, Inc.*,
  No. 20-cv-1800, 2020 WL 4383506 (S.D.N.Y. July 31, 2020)..............................12

*Zakrzewska v. New School*,
  574 F.3d 24 (2d Cir. 2009).......................................................................................12

*Zakrzewska v. New School*,
  598 F. Supp. 2d 426 (S.D.N.Y. 2009).......................................................................12

**STATUTES**

28 U.S.C. § 1292(b) .............................................................................................. *passim*

iii

## INTRODUCTION

Plaintiff alleges that she was hit by a car driven by Jose Alemar. Plaintiff filed two lawsuits for damages: a suit against Alemar that is pending in New York state court, and this suit against Uber. The premise of this lawsuit is that Alemar was acting as Uber's employee when the collision occurred. *See* Complaint, ECF No. 1. Plaintiff thus bore the burden of production to introduce some evidence that could enable a reasonable jury to find that Alemar had a working relationship with Uber at the time of this accident. *See Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (to survive summary judgment, plaintiff must "present evidence sufficient to satisfy every element of the claim" and "designate specific facts showing that there is a genuine issue for trial").

Plaintiff did not meet that burden of production. She never pursued written discovery and took only one 40-minute deposition. And through that discovery, Plaintiff never introduced evidence that, if believed and accepted by a jury, would establish Uber's liability as a matter of law. Uber accordingly moved for summary judgment because, based on all the evidence in the record, no reasonable jury could conclude that Uber was vicariously liable for Alemar as an employee at the time of his accident with Plaintiff. This Court denied Uber's motion in an Opinion & Order ("Order") on November 6, 2023.

Uber respectfully moves for reconsideration of this Court's Order. Plaintiff, as the party bearing the ultimate burden of proof, was required to produce sufficient evidence for a reasonable jury to return a verdict in her favor. The *only* evidence that Plaintiff produced to support her contention that Alemar was working for Uber at the time of the accident was deposition testimony from Alemar, taken in a different lawsuit where Uber was not present, that could be construed to mean that Alemar had the Uber App "on" or "open" when he struck Plaintiff. But the undisputed evidence in this record shows that, even if the Uber App was "on" or "open," Alemar was not *working with* Uber at that time: he had not yet activated the feature in the Uber app that even made

1

himself available to receive *requests* for rides. Respectfully, this Court's Order appears to have overlooked this critical information in the summary judgment record about how the Uber app works. And the undisputed facts in this record are insufficient as a matter of law to show that Uber could be vicariously liable for Alemar as an employee at the time of the accident. More than a dozen New York state courts have held that a ridesharing service like Uber cannot be liable for the actions of a driver who got into an accident at a time when he was not working online through the service's app.

The Order also appears to have misapprehended the legal significance of the case on which the Court relied, *Uy v. Hussein*, 131 N.Y.S.3d 70 (N.Y. App. Div. 2020). That case does not stand for the proposition that a ridesharing service like Uber can be vicariously liable for torts a driver might commit merely while he has the service's mobile application "on" or "open"; *Uy* held only that the facts in that particular record—where the evidence suggested that the driver was offline for just 40 minutes in between transporting passengers—did not "eliminate all questions of fact" and so Uber was not entitled to summary judgment. *Id.* at 73. In this case, by contrast, there are no disputes of fact. The undisputed evidence shows that (i) a driver must not merely open the Uber app but *also* go "online" to work for Uber, and (ii) Alemar may have had the Uber app open but he was not "online" when he hit Plaintiff with his car, and he had not been online for more than 17 hours. No New York court decision suggests that Uber can be liable for a driver who had not started accepting trip requests through the app—and who had not even made himself available to *receive* trip requests for several hours.

In the alternative, if the Court declines to grant reconsideration, Uber respectfully requests that the Court certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b). The Court's Order appears to hold that a ridesharing service can be held vicariously liable for a driver's torts

2

in New York if the driver merely has a ridesharing app "on" or "open," even though the driver has not made himself available to work as a ridesharing driver. That is an extraordinary new rule of New York substantive liability law that warrants expeditious appellate review. All three criteria for interlocutory appeal under Section 1292(b) are amply satisfied here: First, the Order presents "a controlling question of law"—whether a driver who merely turns on a ridesharing app but does not use the app to indicate his availability for work creates a working relationship between himself and the ridesharing service—that would be dispositive of this litigation if resolved in Uber's favor on appeal. *Id.* Second, "there is substantial ground for difference of opinion" on the answer to that question, as evidenced by the divergence between the Court's Order and dozens of New York cases going the other way. *Id.* And third, an immediate appeal from the Order would "materially advance the ultimate termination of this litigation" because the appeal could end this case before a time-consuming, costly, and unnecessary trial over a fact pattern where there is no credible claim that Uber was involved in the accident. *Id.*

This Court's Order appeared to express doubt about whether Uber could be held liable on this record as a matter of New York law. Order 16 ("If this Court were writing on a blank slate, perhaps it would resolve the [legal] question in Uber's favor."); *see id.* (describing it as "not entirely clear now the New York Court of Appeals would decide the scope of employment question). Before the Court subjects the parties to an expensive and burdensome trial, it should afford the Second Circuit an opportunity to rule on that legal question.

## ARGUMENT

**A. The Court should reconsider its Order.**

A motion for reconsideration may be granted in a civil case where the moving party identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v.*

3

*YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013); *see, e.g.*, *Lewis v. Clarkstown Police Dep't*, No. 11-cv-2487, 2014 WL 6883468, at *1 (S.D.N.Y. Dec. 8, 2014) (Ramos, J.) (granting reconsideration of prior summary judgment order). The motion must be accompanied by a memorandum "setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." Local Civil Rule 6.3. Motions for reconsideration are "committed to the sound discretion of the district court." *Liberty Mut. Ins. Corp. v. New York Marine & Gen. Ins. Co.*, 590 F. Supp. 3d 597, 601 (S.D.N.Y. 2022).

### 1. The Court overlooked Plaintiff's failure to meet her burden of production.

Uber respectfully submits that the Court's order denying summary judgment overlooked Plaintiff's failure to meet her burden of production.

#### a. Plaintiff bore the burden to introduce evidence that Uber controlled Alemar and that Alemar owed duties to Uber.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–249 (1986).

"The moving party" on a summary judgment motion "bears the initial burden of showing that there is no genuine dispute as to a material fact." *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (cleaned up). "But where the burden of proof at trial would fall on the nonmoving party"—as it would on Plaintiff here—"the moving party can shift the initial burden by pointing to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaffer v. Hirji*, 887 F.3d 111, 114 (2d Cir. 2018) (cleaned up).

4

There is no issue for trial unless the party bearing the burden of proof—here, Plaintiff—produces sufficient evidence for the jury to find in her favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324–325 (1986). The question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–252. And summary judgment *must* be granted to "secure the just, speedy, and inexpensive determination" of the action where there can be only one reasonable conclusion on the verdict. *Celotex*, 477 U.S. at 327; *see also, e.g.*, *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) ("No genuine issue exists if … the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor.").

The Court's Order explained the relevant legal conclusion that Plaintiff bore the burden to justify in this case: "In New York, 'an employee acts within the scope of his employment when (1) the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities, and (2) the employee is doing something in furtherance of the duties he owes to his employer.'" Order 9–10 (quoting *Fountain v. Karim*, 838 F.3d 129, 135 (2d Cir. 2016)) (cleaned up; internal quotation marks omitted).

    **b.** **Plaintiff did not introduce any evidence that Alemar was even *available* to work with Uber at the relevant time, much less evidence that Uber controlled Alemar or that Alemar owed duties to Uber.**

The Court found that Alemar's state-court deposition testimony "create[d] at least some ambiguity as to whether and how he was using the app in the moments before the collision." Order 10. Respectfully, however, there is no ambiguity that is material to liability, because there is no genuine dispute about the relevant facts in the record. The Court summarized Alemar's testimony (from a deposition in a different case where Uber was not present) as follows:

> [Plaintiff's] attorney asked Alemar whether he was driving for Uber on the date of the incident. Alemar stated: "Exactly when it happened, I was going to start working an Uber." He explained that when the incident occurred, "I had just turned on

5

>the application. I had not worked yet." [Plaintiff's] attorney then asked Alemar how long he had been on the Uber app prior to striking Linzy. Alemar responded: "If I'm not mistaken, ten, 15 minutes, or less."

*Id.* (citations omitted).

Even construing Alemar's statements in the light most favorable to Plaintiff, Alemar said merely that he had the Uber App "on" or "open." *Id.* Alemar did not testify, nor even suggest, that he had "click[ed] the online button [within the app] to actually go online to receive any [ride] requests and be connected with riders." Order 10 (quoting affidavit of Todd Gaddis). Plaintiff has never attempted to dispute Uber's evidence that there is an important distinction between having the Uber app "turned on" (as Alemar testified) and "click[ing] the online button" within the app (as Gaddis described). The Court's Order recounted the record evidence that, after a driver opens the driver version of the Uber app, he must take *additional* steps to go online and indicate to Uber that he is "'available' to receive a ride request." Order 2. Simply having the App "open" does not enable the driver to perform any "work" through the App.

The Court's Order appears to have misapprehended the distinction between a driver having the Uber app open and the driver indicating to Uber that he is available to receive ride requests. But the evidence in this record—especially the Gaddis testimony—establishes that distinction and Plaintiff has not contested it. And that distinction is important. As Uber explained in its motion for summary judgment and Rule 56.1 Statement of Facts, unless a driver who has opened the app takes the further steps of logging in and clicking the button to go online, that driver cannot even receive requests for rides, much less accept rides or provide any transportation services. That work can be performed *only* if a driver has not only opened the Uber app but also taken the further step to go online. *See* Statement of Undisputed Material Facts ¶ 1 (citing Exhibit EE to Declaration of Steven

6

Williamson ("Williamson Declaration"), Affidavit of Todd Gaddis). It is thus undisputedly impossible for drivers to do any *work* relating to Uber unless they are online.[1]

The basic distinction between turning on a mobile application and using it should be familiar to everyone with a smartphone. Consider one of the many mobile applications that enables a user to order food for delivery. If a user opens the app, they can peruse a menu to consider whether they would like to place an order. Or the user can perform routine tasks like viewing past orders or adjusting account settings. But no one would think that merely having the app *open* establishes some relationship or transaction between the user and the relevant company; a transaction occurs only when the user takes an additional steps within the app to place and confirm her order. Gaddis's testimony in this record shows that the Uber Driver app works in much the same way: A driver can open the app to review account settings, view completed rides, and more, but the driver does not become available to receive ride requests unless he or she takes further steps within the app to go online. *See* Order 2, 10 (recounting Gaddis testimony).

It is also undisputed in this record that, while Alemar may have had his Uber app open, he did not take the further step to *go online* at the time he struck Plaintiff. *See* Order 2 (recounting Uber's records). Alemar's testimony did not create any "ambiguity" as to whether he was "online" at the time of the accident, and the evidence conclusively demonstrates that he was not. To go online, a driver must go beyond opening the app to click the "online button." ECF No. 60-3 at 16:5–8; 17:5–8. Alemar did not testify that he had clicked the "online button"; to the contrary, he

---

[1] Uber maintains its position that drivers who go online to provide transportation services are independent contractors, not Uber employees. *See, e.g.*, *Duncan v. Uber Technologies, Inc.*, No. 700606/2020 (N.Y. Sup. Ct. Queens Cnty. Sept. 27, 2023). This Court expressly did not decide that issue. Order at 12 n.9. But that distinction is academic to the present case because the undisputed evidence shows that Alemar had no relationship whatsoever with Uber at the time of his accident with Plaintiff.

repeatedly said that he was *not* working at the time of the accident. ECF No. 60-2 at 10:24–25; 11:5–6; 53:23–24. And Uber's own data confirmed that Alemar was not online at the time of the accident—indeed, he had not been online for more than 17 hours. *See* Statement of Undisputed Material Facts ¶ 6 (citing Williamson Declaration Exhibit EE); Order 10. Plaintiff has not challenged the accuracy of Uber's records or produced any other evidence that could show Alemar was online or working in some way related to Uber when the collision occurred.

Plaintiff accordingly has not met her burden of production, as required to withstand a motion for summary judgment. She has not disputed that a driver engages the relationship with Uber only by going online rather than merely having the Driver app open; and she has not disputed that Alemar had not gone online for more than 17 hours at the time he struck her. Given the undisputed evidence that, at the relevant time, Alemar had not even made himself "'available' to receive a ride request," Order 1 (citation omitted), no reasonable juror could conclude that Uber was "exercising some *control*, directly or indirectly, over [Alemar's] activities" at that time, *and* that Alemar was acting "in furtherance of" some "*duties that he owed*" to Uber at the time. Order 9–10 (describing New York's scope-of-employment legal standard and quoting *Fountain*, 838 F.3d at 135). Because only one reasonable conclusion can be drawn from the evidence, judgment is required as a matter of law.

2. **The Court misapprehended the *Uy* decision.**

The Court's Order denying Uber's motion for summary judgment also appears to have misapprehended the New York Appellate Division's decision in *Uy*. In *Uy*, the evidence regarding the driver's status—online or offline—was much more equivocal than it is here. There, the evidence consisted *only* of (1) an English-translated affidavit from a driver who could not speak English saying that he had been offline for 40 minutes before the accident, and (2) an affidavit from an Uber representative that "contained essentially the same averments as [the driver's] affidavit."

8

131 N.Y.S.3d at 731. There was no data from Uber's records showing the precise times when the driver went online and offline, as there is in this case. The Second Department found that the two affidavits in *Uy* were "insufficient, without more, to eliminate all questions of fact as to whether [the driver] was acting within the scope of his alleged employment with Uber at the time of the incident." *Id.* (citations omitted).[2]

*Uy* does not stand for the proposition that merely having the driver version of a ridesharing app on, as opposed to *being online* within that app to provide transportation services, creates a working relationship with a ridesharing service such as Uber. The distinction between having the app on and being online did not feature in *Uy*; the plaintiff's argument there was instead that the driver should have been seen as merely on a temporary, 40-minute break from his work for Uber. *See Uy v. Hussein*, Index No. 710865/2016 (N.Y. Sup. Ct. Queens County), Affirmation in Opposition to Uber's Cross-Motion for Summary Judgment ¶¶ 50–54 (attached here as Exhibit A). The *Uy* plaintiff also argued that the driver had provided contradictory statements as to whether he had "logged in" to the Uber App at the time of the accident. *See id.* ¶¶ 56–58.

That is markedly different from the facts here, where the uncontroverted data and Alemar's testimony relied on by Plaintiff *both* reflect that Alemar was "offline," "had not worked yet," and indeed had not been "online" within the Uber app for more than 17 hours at the time of the alleged tort. *See* Order 10. *Uy* does not support the legal rule that a driver who has not been working with Uber for more than 17 hours, and who has not yet indicated to Uber that he is available to work that day, is actually under Uber's control and owes duties to Uber under New York law. About a dozen New York cases decided after *Uy* confirm that, as a matter of law, Uber cannot be held

---

[2] *Uy* was issued by the New York Supreme Court Appellate Division's Second Department. It would not be binding in the First Department, which is where this case would have been heard if it were in state court.

9

vicariously liable for a driver's action where the driver is not "online" on the Driver App. In concluding otherwise, this Court read *Uy* to stand for more than it can reasonably bear.

**B.   In the alternative, this Court should certify its Order for interlocutory appeal.**

If the Court declines to grant reconsideration, then it should certify its Order for interlocutory appeal under 28 U.S.C. § 1292(b). A district court may certify for interlocutory appeal if it finds that an order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* "[C]ourts routinely address motions for reconsideration and interlocutory appeal in the alternative." *United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 265, 274 (E.D.N.Y. 2021) (collecting cases). And when the statutory criteria are satisfied—as they indisputably are in this case—"district courts should not hesitate to certify an interlocutory appeal." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009); *see, e.g.*, *Pinter v. City of N.Y.*, 976 F. Supp. 2d 539, 575 (S.D.N.Y. 2013) (certifying summary judgment issues and stating that "proceeding with trial before the Second Circuit rules on this issue puts the Court at risk of expending scarce judicial resources by trying what may be unviable claims.").

   **1.   The Order involves a controlling question of law.**

The Court's order denying summary judgment rests on a substantive conclusion about New York scope-of-employment law. Summary judgment for a defendant should be denied only if the reviewing court finds that, if the jury accepts all the facts in the record proffered by the plaintiff, then a reasonable jury could impose liability as a matter of law. *See Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005) ("[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably*

10

find for the plaintiff.") (cleaned up). The plaintiff cannot "rely on conclusory allegations or unsubstantiated speculation," and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.*

Here, the Court concluded that the few facts in this record—Alemar's statement that he had the Uber app turned on, combined with Uber's undisputed evidence that Alemar was *not* available to receive ride requests at that time—would allow "a reasonable jury [to] conclude that Alemar was within the scope of employment [for Uber] at the time of the collision" with Plaintiff. Order 16. Whether that is a correct statement of New York law—*i.e.*, whether it is true that a driver's decision to turn on a rideshare app but *not* to signal to the ridesharing provider that the driver is willing to receive ride requests creates the possibility of vicarious liability for the provider—is a "pure question of law that the reviewing court [may] decide quickly and cleanly without having to study the record." *Tantaros v. Fox News Network, LLC*, 465 F. Supp. 3d 385, 390 (S.D.N.Y. 2020). And the Court's holding on that question represents a dramatic and novel expansion of liability by a federal court sitting in diversity: Plaintiffs have not identified a single New York case imposing liability on a digital app developer on the ground that a third party committed a tort while merely having that app open.

Where, as here, "reversal of the district court's order would terminate the action," the order "involves a 'controlling' question of law" for purposes of Section 1292(b). *Quartararo*, 521 F. Supp. 3d at 275–276 (cleaned up); *see also, e.g.*, 19 Moore's Federal Practice - Civil § 203.31 ("[I]f resolution of the question being challenged on appeal will terminate the action in the district court, it is clearly controlling. Controlling questions of law that fall within this category of dispositive issues include the question of whether a claim exists as a matter of law[.]") (footnotes omitted); *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 141 (E.D.N.Y. 2015) ("The issue

11

need not affect a wide range of pending cases as long as it is controlling in the instant litigation.") (cleaned up). If the Second Circuit determines that turning on a driver-side rideshare app, but *not* taking the further step to indicate availability to receive ride requests, does not create the possibility of vicarious liability for the rideshare provider as a matter of New York employment law, then this case is over and Uber is entitled to judgment. The first prong of the Section 1292(b) test is thus easily satisfied.

### 2. There is substantial ground for difference of opinion on the question of New York liability law.

There is substantial ground for difference of opinion over whether a driver qualifies as an employee of a ridesharing service when the driver merely has the app *turned on* but is not *online*— that is, not available to receive ride requests. A substantial ground for a difference of opinion may exist when "(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Pen Am. Ctr., Inc. v. Trump*, No. 18-cv-9433, 2020 WL 5836419, at *2 (S.D.N.Y. Oct. 1, 2020) (quoting *Whyte v. Wework Companies, Inc.*, No. 20-cv-1800, 2020 WL 4383506, at *1 (S.D.N.Y. July 31, 2020)).

This Court already recognized the substantial ground for difference of opinion over the liability question at the heart of this case when the Court found it "not entirely clear how the New York Court of Appeals would decide the scope of employment question." Order 16; *cf. Zakrzewska v. New School*, 574 F.3d 24, 27 (2d Cir. 2009) (accepting petition for interlocutory appeal based on the district court's statement that its "conclusion is not free from doubt" (quoting *Zakrzewska v. New School*, 598 F. Supp. 2d 426, 437 (S.D.N.Y. 2009))); *Seneca Nation v. Cuomo*, 484 F. Supp. 3d 65, 78 (W.D.N.Y. 2020) (finding a substantial ground for opinion where the case law was "less than crystal clear"). That substantial ground for difference of opinion is reinforced by the dozens of New York cases disagreeing with the Court's legal holding that Uber can potentially

12

be held liable for the actions of a driver who had not made himself available to receive ridesharing requests at the time of the accident. *See* Order 13–14 & nn.11–14.

The Second Circuit has observed that Section 1292(b) exists in part "to assure the prompt resolution of knotty legal problems" like this one. *Weber v. United States Trustee*, 484 F.3d 154, 159 (2007). Because this Court's holding regarding New York scope-of-liability law is at the very least subject to serious question, the Order should be reviewed expeditiously by the Second Circuit.

### 3. Immediate appeal will materially advance the litigation.

Finally, certifying the Order for interlocutory appeal would materially advance the ultimate termination of this litigation. A party shows that an interlocutory appeal would "materially advance" the litigation by demonstrating that the "appeal promises to advance the time for trial or to shorten the time required for trial." *Tantaros*, 465 F. Supp. 3d at 389 (quoting *Florio v. City of N.Y.*, No. 06-cv-6473, 2008 WL 3068247, at *1 (S.D.N.Y. Aug. 5, 2008)). This factor "carries particular weight." *Quartararo*, 521 F. Supp. 3d at 278–279.

Here, a reversal by the Second Circuit would not only advance the time for trial or shorten the time for trial—it would eliminate the need for a trial altogether. Courts have repeatedly recognized that this factor supports certification for interlocutory appeal on a legal question that would obviate the need for further proceedings and entitle the defendant to judgment as a matter of law. *See Pinter*, 976 F. Supp. 2d at 575; *Skylon Corp. v. Guilford Mills, Inc.*, 901 F. Supp. 711, 718 (S.D.N.Y. 1995) (granting certification for interlocutory appeal following the denial of summary judgment regarding a question of liability).

This Court should certify its decision for interlocutory appeal in order to avoid forcing the parties (and the Court) to incur the significant costs and burdens of a trial that the Second Circuit may ultimately hold was entirely unnecessary because Uber cannot be liable as a matter of law on this record—where Uber had meaningful relationship to Alemar at the time of the accident.

13

## CONCLUSION

Uber respectfully requests that the Court reconsider its Order denying summary judgment. In the alternative, Uber respectfully requests that the Court certify its Order for interlocutory appeal under 28 U.S.C. § 1292(b).

Dated: November 20, 2023  Respectfully submitted,

**DEFENDANT UBER TECHNOLOGIES, INC.**

By: */s/ Steven G. Williamson*
Christopher Betke (CB8047)
Andrew R. Ferguson (AF5154)
COUGHLIN BETKE LLP
1330 Avenue of the Americas, Suite 23A
New York, NY 10019
Telephone: (212) 653-0380
cbetke@coughlinbetke.com
aferguson@coughlinbetke.com

Steven G. Williamson (pro hac vice)
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067
Telephone: (310) 788-3368
swilliamson@perkinscoie.com

## CERTIFICATE OF SERVICE

I hereby certify that, on November 20, 2023, a true and correct copy of the foregoing was served via the Court's electronic filing system upon all counsel of record.

/s/ *Steven G. Williamson*