UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAARILLE LINZY,

                              Plaintiff,

          – against –

UBER TECHNOLOGIES, INC.,

                              Defendant.

**OPINION & ORDER**

21 Civ. 05097 (ER)

RAMOS, D.J.:

On November 6, 2023, the Court denied a motion for summary judgment filed by Uber Technologies, Inc.  Doc. 65.  Uber has moved for reconsideration of that decision or, in the alternative, for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Doc. 66.  For the reasons set forth below, Uber's motions are DENIED.

## I.    BACKGROUND

The facts and procedural history are set out in the Court's summary judgment opinion.  *Linzy v. Uber Techs., Inc.*, No. 21 Civ. 05097 (ER), 2023 WL 7302643, at *1–2 (S.D.N.Y. Nov. 6, 2023).  The Court repeats the relevant details here for convenience.

### A.  Factual Background

On December 5, 2019, at 5:15 p.m., plaintiff Shaarille Linzy was hit by a car while walking in the Bronx.  Doc. 54 ¶ 4; Doc. 62 ¶ 4.  The car's driver was Jose Alemar, who sometimes drove for Uber.  Doc. 54 ¶ 4; Doc. 62 ¶ 4; Doc. 60-2 at 9:12–19.

According to Uber, drivers are required to download a "Driver App" to be matched with customers looking for a ride.  Doc. 54 ¶ 1.  Drivers can receive ride requests only after they log in to the Driver App using their account.  *Id.* ¶¶ 1–2.  Uber states that "there are four different statuses for a driver who uses the Driver App":  (1) "available" to receive a ride request; (2) "en route" to pick up a rider; (3) "on trip" transporting a rider; or (4) "offline" and unavailable to receive a ride request.  *Id.* ¶ 2.

When a driver is "online"—that is, "available," "en route," or "on trip"—Uber maintains information showing where that driver is located. *Id.* ¶ 3.  Uber can discern the time and location "where a driver changes statuses, or goes 'online' or 'offline.'" *Id.*

Uber's records indicated that Alemar went "offline" in the Driver App at approximately 11:51 p.m. on December 4, 2019—the night before the incident. *Id.* ¶ 5.  Alemar then became "available" in the Driver App at around 8:26 p.m. on December 5, 2019.  *Id.*  In other words, according to Uber's records, Alemar was "offline" at 5:15 p.m. (the time of the collision) and did not log in until more than three hours later. *Id.* ¶ 6.

For her part, Linzy concedes that Uber maintains information about drivers' locations while they are "online."  Doc. 62 ¶ 3.  But Linzy denies that Uber can determine the time and location at which a driver changes status or goes "online" or "offline." *Id.*  Linzy also denies that Alemar was "offline" at the time of the incident. *Id.* ¶¶ 5–7.  For support, Linzy relies on Alemar's deposition testimony in a state court action concerning the same collision.  Specifically, Alemar testified:  "Exactly when [the incident] happened, I was going to start working an Uber."  Doc. 60-2 at 10:24–25, 11:7–11.  When asked how long he had been on the Uber app prior to striking Linzy, Alemar stated:  "If I'm not mistaken, ten, 15 minutes, or less." *Id.* at 11:18–23.  Linzy asserts that this testimony creates a factual issue as to whether Alemar was within the scope of his employment for Uber when he hit her with his car.  Doc. 62 at 5.[1]

**B. Procedural History**

Linzy filed this action in New York state court on February 8, 2021.  Doc. 2-1.  She brought claims against Uber for vicarious liability and for negligent hiring, training, retention, and supervision. *Id.* ¶¶ 18–34.  Uber removed the case to this Court on June 9, 2021.  Doc. 2.

---

[1] Uber previously argued that Alemar's deposition testimony was "inadmissible hearsay" that could not be considered at the summary judgment stage.  Doc. 52 at 10–12.  The Court rejected that argument and held that it could consider the testimony. *Linzy*, 2023 WL 7302643, at *3–5.  Uber has not moved for reconsideration of that determination.

On August 4, 2023, Uber moved for summary judgment on all claims. Doc. 51. Uber pointed to an affidavit from Todd Gaddis, an Uber data manager, asserting that "Alemar was not logged 'online' in the Driver App" at the time of the collision. Doc. 53-31 ¶ 10. Gaddis also testified that a driver must "click the online button to actually go online to receive any of those requests and be connected with riders." Doc. 60-3 at 17:6–8. Uber argued that it could not be held liable for the actions of a driver who was not logged on to the Uber app—that is, a driver who was not "online"—at the time of the collision. Doc. 52 at 8.

The Court denied Uber's motion. In doing so, the Court primarily relied on *Uy v. Hussein*, 131 N.Y.S.3d 70 (App. Div. 2020), the only New York appellate decision to address a driver's scope of employment in similar circumstances. *Linzy*, 2023 WL 7302643, at *6. There, the Appellate Division held that affidavits indicating that the Uber driver had logged off the app before the collision "were simply insufficient, without more, to eliminate all questions of fact as to whether [the driver] was acting within the scope of his alleged employment with Uber at the time of the incident." *Id.* (alteration in original) (quoting *Uy*, 131 N.Y.S.3d at 73). With no persuasive evidence to suggest that the New York Court of Appeals would reject *Uy*'s conclusion, the Court applied the precedential reasoning in *Uy* and found that Uber was not entitled to summary judgment. *Id.* at *8–9.

Uber has moved for reconsideration or, in the alternative, for certification of an interlocutory appeal under 28 U.S.C. § 1292(b). Doc. 66. The Court heard oral argument on December 6, 2023.

## II.   LEGAL STANDARD

### A.  Motion for Reconsideration

The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). "A motion for reconsideration

should be granted only when the [moving party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and citation omitted). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs.*, 684 F.3d at 52 (internal quotation marks and citation omitted). The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted).

### B.  Motion for Certification of Interlocutory Appeal

A district court may certify an order for interlocutory appeal where the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "It is a basic tenet of federal law to delay appellate review until a final judgment has been entered." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). Accordingly, § 1292(b) "must be strictly construed and only exceptional circumstances [will] justify a departure" from the final judgment rule. *Colon ex rel. Molina v. BIC USA, Inc.*, No. 00 Civ. 3666 (SAS), 2001 WL 88230, at *1 (S.D.N.Y. Feb. 1, 2001) (alteration in original) (internal quotation marks and citation omitted).

"Whether to certify a question for interlocutory appeal is trusted to the sound discretion of the district court," which may deny certification even if the statutory criteria are satisfied. *Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 9 (E.D.N.Y. 2007). Moreover, "[t]he fact that district courts have the power to certify questions for interlocutory appeal in no way suggests that interlocutory appeal should be the norm." *Id.* at 10. Although § 1292(b) "was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits

piecemeal appeals." *Koehler*, 101 F.3d at 865. "The Second Circuit has repeatedly emphasized that district courts must 'exercise great care in making a § 1292(b) certification.'" *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001) (quoting *Westwood Pharms., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992)).

## III.    DISCUSSION

### A.  Motion for Reconsideration

Uber raises two grounds for reconsideration.  It argues that the Court (1) overlooked Linzy's failure to meet her burden of production, and (2) misapprehended the Appellate Division's decision in *Uy*.  Doc. 67 at 4, 8.  Neither argument is persuasive.

First, Uber asserts that Linzy had the burden "to introduce evidence that Uber controlled Alemar and that Alemar owed duties to Uber."  *Id.* at 4 (emphasis omitted).  In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the Supreme Court explained how the burden-shifting framework operates at the summary judgment stage.  Federal Rule of Civil Procedure 56(c), the Court held, "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322. The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.

Here, Uber argues that "there is no ambiguity that is material to liability, because there is no genuine dispute about the relevant facts in the record."  Doc. 67 at 5.  Even if Alemar had the app "on" or "open," Uber reasons, he did not take the additional step of going "online."  *Id.* at 6–7.  As a result, he was not available to receive any ride requests—or to actually accept such a request—at the time of the collision.  *Id.*  Uber

5

contends that it is "undisputedly impossible for drivers to do any *work* relating to Uber unless they are online." *Id.* at 7.

The Court recognizes that there is a distinction between a driver having the Uber app open and a driver taking the additional step of going online. The Court also recognizes that the Gaddis affidavit indicates that Alemar was not online—meaning that he could not receive or accept ride requests—at the time of the collision. The Court disagrees with Uber, however, that this is sufficient to demonstrate the absence of a genuine dispute of material fact.

To put the question more precisely, the relevant inquiry is: Under these circumstances, where a driver was not yet online but testifies that he opened the app and "was going to start working" for Uber right before the collision, could a reasonable jury conclude that the driver was within his scope of employment? Uber proposes a bright-line rule that so long as the driver is not "online," he cannot be within the scope of employment. *See, e.g.*, Doc. 67 at 9–10 ("[A]s a matter of law, Uber cannot be held vicariously liable for a driver's action where the driver is not 'online' on the Driver App."). The Court fails to see how that rule is consistent with the Appellate Division's decision in *Uy*. There, in holding that Uber was not entitled to summary judgment, the court explained that "[a]n action may be considered to be within the scope of employment . . . when 'the employee is engaged generally in the business of the employer, or if the act may be reasonably said to be necessary or incidental to such employment.'" *Uy*, 131 N.Y.S.3d at 73 (quoting *Pinto v. Tenenbaum*, 963 N.Y.S.2d 699, 701 (App. Div. 2013)).

Consider a hypothetical to illustrate the point: An Uber driver walks out his front door and gets into his car, ready to begin driving for Uber. As he backs the car out of the driveway, he unlocks his tablet and opens the Uber app. At this point, to be clear, the driver has not yet gone "online," and he is still unavailable to receive or accept ride

requests.  The driver is about to click the "online" button—his hand is hovering over it—but before he can do so, he crashes the car.

The hypothetical driver never went online, but could a reasonable jury conclude that he was within the scope of employment?  Under Uber's theory, the answer would be no.  Uber's data would reflect—as the data here reflects—that the driver was not online at the time of the crash.  Under *Uy*, however, the fact that the driver was logged off would not prevent a reasonable jury from concluding that he was "engaged generally in the business of the employer" or was engaged in an act that "may be reasonably said to be necessary or incidental" to his employment.  *See Uy*, 131 N.Y.S.3d at 73; *see also id.* (holding that affidavits showing that the driver had logged off before the collision did not eliminate all questions of fact as to whether he was within the scope of employment).  And as the case law discussed in the Court's prior opinion indicates, it is possible that a driver may be within the scope of employment while driving outside regular work hours.  *See Linzy*, 2023 WL 7302643, at *8.  In short, the Court does not see how the bright-line rule proposed by Uber can be reconciled with *Uy*.

Uber maintains that the Court has misapprehended the holding in *Uy*.  Doc. 67 at 8.  According to Uber, "*Uy* does not stand for the proposition that merely having the driver version of a ridesharing app on, as opposed to *being online* within that app to provide transportation services, creates a working relationship with a ridesharing service such as Uber."  *Id.* at 9.  The Court does not rely on *Uy* for that broad proposition.  Instead, the Court reads *Uy* to hold that an affidavit showing that a driver was logged off of the Uber app at the time of a collision is "insufficient, without more, to eliminate all questions of fact as to whether [the driver] was acting within the scope of his alleged employment with Uber."  *Uy*, 131 N.Y.S.3d at 73.  That principle is directly applicable here:  where Alemar testified that he had the app open and "was going to start working" for Uber, Gaddis's affidavit indicating that Alemar was logged off at the time of the

incident is not sufficient to warrant summary judgment for Uber on the scope of employment question.

Uber attempts to distinguish *Uy* on its facts as well.  For instance, Uber argues that in *Uy*, "the evidence regarding the driver's status—online or offline—was much more equivocal than it is here."  Doc. 67 at 8.  The Court has already explained why this argument fails:  "The *Uy* court did not ask for more evidence that the driver had logged off; it had two affidavits making that fact plain.  Instead, the court said that such evidence was not itself sufficient to establish that the driver was outside his scope of employment."  *Linzy*, 2023 WL 7302643, at *6.  Nor is the Court persuaded by Uber's contention that *Uy* is distinct because the plaintiff there argued that the driver was on a temporary break from his work for Uber.  Doc. 67 at 9; Doc. 74 at 4.  This case may not involve any argument that Alemar was on a temporary break, but the relevant legal principle from *Uy* still applies:  an affidavit showing that the driver was logged off at the time of the collision does not entitle Uber to summary judgment.[2]

Finally, in a footnote, Uber asserts that because *Uy* was decided by the Second Department, "[i]t would not be binding in the First Department, which is where this case would have been heard if it were in state court."  Doc. 67 at 9 n.2.  As the Court observed in its summary judgment opinion, a New York trial court "is bound to apply the law as promulgated by the Appellate Division within its particular Judicial Department."  *Linzy*, 2023 WL 7302643, at *7 (quoting *Dukes v. NYCERS*, 331 F.R.D. 464, 469 (S.D.N.Y. 2019)).  But "where the issue has not been addressed within the Department, [the court] is bound by the doctrine of stare decisis to apply precedent established in another

---

[2] Uber has attached to its motion one of the trial court submissions from the plaintiff in *Uy*.  Doc. 67-2.  Uber highlights the plaintiff's arguments that the driver was on a temporary break and that he had provided contradictory statements about whether he was online at the time of the incident.  Doc. 67 at 9 (citing Doc. 67-2 ¶¶ 50–54, 56–58).  But the plaintiff also argued that "the issue of whether Uber is vicariously liable for [the driver's] negligence is not reducible to whether [the driver] had the Uber application on or off when he hit the plaintiff."  Doc. 67-2 ¶ 46.  In other words, the plaintiff directly challenged the same bright-line rule that Uber proposes here.  And for the reasons already explained, the Court concludes that such a rule is foreclosed by *Uy*.

Department, either until a contrary rule is established by the Appellate Division in its own Department or by the Court of Appeals." *Id.* (alteration in original) (quoting *Dukes*, 331 F.R.D. at 469). In any event, the fact that this case would have been heard in the First Department if it had been brought in state court has no effect on the Court's analysis. *See Dunnegan v. 220 E. 54th St. Owners, Inc.*, 518 F. Supp. 3d 764, 768 n.2 (S.D.N.Y. 2021) ("[T]his Court must consider New York case law generally and may not simply choose one department's law over another based on the locus of the apartment building [at issue]."); *see also Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116–17 (2d Cir. 2000) (explaining that district court reached "the wrong result" by following the law of the Third Department on the basis that "this was the law that would have been applied in the state trial court in the district where this accident occurred and where the suit was originally filed").

In denying summary judgment, the Court held that it had no "persuasive data to compel the conclusion that the Second Department was wrong in *Uy* or that the Court of Appeals would reject *Uy*'s holding." *Linzy*, 2023 WL 7302643, at *8 (internal quotation marks and citation omitted). Uber does not provide any persuasive reason for the Court to revisit that decision. The motion for reconsideration is denied.

### B. Motion for Certification of Interlocutory Appeal

In the alternative, Uber argues that the Court should certify its order for interlocutory review under 28 U.S.C. § 1292(b). Doc. 67 at 10. As noted above, § 1292(b) allows a district court to certify an order for interlocutory appeal where the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

Uber asserts that all three factors are satisfied in this case. Doc. 67 at 10–13. Linzy does not dispute that the order involves a controlling question of law and that an

immediate appeal might materially advance the termination of the litigation.  She argues only that there is no substantial ground for difference of opinion.  Doc. 72 at 11–14.

Courts have explained that "[a] substantial ground for difference of opinion exists when (1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit."  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 539 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).  Uber asserts that this Court "already recognized the substantial ground for difference of opinion," Doc. 67 at 12, when it stated that "it is not entirely clear how the New York Court of Appeals would decide the scope of employment question where an Uber driver had the app on and 'was going to start working an Uber' right before the incident," *Linzy*, 2023 WL 7302643, at *8.

Two sentences later, however, the Court held that it did not have "any persuasive data to compel the conclusion that the Second Department was wrong in *Uy* or that the Court of Appeals would reject *Uy*'s holding."  *Id.* (internal quotation marks and citation omitted).  Although some New York trial courts have granted summary judgment to Uber both before and after *Uy*, the Court has explained why it does not find those decisions persuasive.  *Id.* at *7–8.  While it may be possible that the New York Court of Appeals— or the Second Circuit—would reach a different conclusion, the Court does not see any substantial ground for difference of opinion as to *Uy*'s holding and its application to this case.  *Cf. In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10 Civ. 3461 (PAC), 2014 WL 5002090, at *3 (S.D.N.Y. Oct. 7, 2014) ("A mere disagreement or the possibility of a different outcome on appeal is not sufficient to show a substantial ground for difference of opinion.").

Furthermore, even if the substantial ground for difference of opinion prong were satisfied, the Court still would not be inclined to exercise its discretion to certify the issue for interlocutory appeal.  *See, e.g., Garber v. Off. of the Comm'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014) ("[E]ven when the elements of section 1292(b) are

satisfied, the district court retains 'unfettered discretion' to deny certification." (citation omitted)).  "Interlocutory appeals are strongly disfavored in federal practice," and parties "cannot invoke the appellate process 'as a vehicle to provide early review of difficult rulings in hard cases.'"  *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010) (citation omitted).  As a result, certification "is only warranted in 'exceptional cases,' where early appellate review 'might avoid protracted and expensive litigation.'"  *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (citation omitted).

This case does not present the kind of exceptional circumstances that merit interlocutory review.  According to Uber, the Court's holding that "a driver's decision to turn on a rideshare app but *not* to signal to the ridesharing provider that the driver is willing to receive ride requests creates the possibility of vicarious liability for the provider" represents "a dramatic and novel expansion of liability."  Doc. 67 at 11.  But the Court's holding is not nearly as broad—or as novel—as Uber suggests.  The Court's decision does not change the scope of a ridesharing provider's potential liability at all; it simply applies the principle set forth in *Uy* that an affidavit showing that a driver was logged off at the time of a collision is not sufficient to merit summary judgment on the scope of employment issue.  The Second Department—in the only New York appellate decision addressing the issue—and two New York trial courts have reached the same conclusion.  *See Uy*, 131 N.Y.S.3d at 73; *Singleton v. Am. United Transp. Inc.*, No. 808101/2021E, 2022 WL 17732992, at *2 (N.Y. Sup. Ct. Bronx Cnty. Nov. 30, 2022); *Uy v. Hussein*, No. 710865/2016, 2022 WL 2388184, at *2 (N.Y. Sup. Ct. Queens Cnty. May 19, 2022).

Uber's motion for certification of an interlocutory appeal is denied.

## IV.   CONCLUSION

For the foregoing reasons, Uber's motion for reconsideration and its alternative motion for certification of an interlocutory appeal are DENIED.  The parties are directed

to appear for a telephonic status conference on June 27, 2024, at 10:00 a.m.  The parties should dial 877-411-9748 and enter access code 3029857# when prompted.

The Clerk of Court is respectfully directed to terminate the motions, Docs. 66, 67.

It is SO ORDERED.

Dated:   June 7, 2024
         New York, New York

_____
    EDGARDO RAMOS, U.S.D.J.