## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SHAARILLE LINZY, | ) | |
| *Plaintiff,* | ) | |
| v. | ) | |
| UBER TECHNOLOGIES, INC., | ) | |
| *Defendant.* | ) | 1:21-cv-05097-ER |

---

**DEFENDANT UBER TECHNOLIGIES, INC. OMNIBUS MOTION IN LIMINE TO (1) PRECLUDE TESTIMONY RELATED TO FINANCES, PROFITS, LOSSES, OR ECONOMIC STATUS OF UBER; (2) PRECLUDE EVIDENCE RELATED TO SIMILAR OR SAME OCCURRENCES, CLAIMS, OR LAWSUITS AGAINST UBER; (3) PRECLUDE ANY ARGUMENT, TESTIMONY, COMMENT OR REFERENCE TO ANY EVIDENCE OF ALL MEDIA COVERAGE IN ANY FORMAT AND FROM ANY SOURCE; (4) PRECLUDE USE OF PREJUDICIAL TERMS; (5) ENSURE A FAIR VOIR DIRE & TRIAL; AND (6) PRECLUDE PLAINTIFF'S COUNSEL FROM UTILIZING IMPROPER ANCHORING**

---

DEFENDANT,
UBER TECHNOLOGIES, INC.
Coughlin Betke LLP
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
212-653-0380
aferguson@coughlinbetke.com
Monday, December 16, 2024

## <u>TABLE OF CONTENTS</u>

MOTION TO PRECLUDE TESTIMONY RELATED TO FINANCES, PROFITS, LOSSES, OR ECONOMIC STATUS OF UBER ........................................................1
  Introduction.........................................................................................................1
  Legal Argument ..................................................................................................2
    A. Evidence of Uber's Financial Condition is Inadmissible...........................2
  Conclusion ..........................................................................................................3
MOTION TO PRECLUDE EVIDENCE RELATED TO SIMILAR OR SAME OCCURRENCES, CLAIMS, OR LAWSUITS AGAINST UBER ...............................4
  Introduction.........................................................................................................4
  Conclusion ..........................................................................................................5
MOTION TO PRECLUDE ANY ARGUMENT, TESTIMONY, COMMENT OR REFERENCE TO ANY EVIDENCE OF ALL MEDIA COVERAGE IN ANY FORMAT AND FROM ANY SOURCE....................................................................................6
  Introduction.........................................................................................................6
  Legal Argument ..................................................................................................6
    A. Any Media Coverage in Any Format and from Any Source Regarding the Incident or Generally Creates Undue Prejudice and Will Confuse and Mislead the Jury ..............6
    B. Media Coverage is Inadmissible Hearsay ................................................8
  Conclusion ..........................................................................................................8
MOTION SEEKING PRECLUSION OF PREJUDICIAL TERMS ..............................9
  Introduction.........................................................................................................9
  Legal Argument ..................................................................................................9
    A. Uber will be prejudiced by any assumption that it is a transportation service or driving service ........................................................................................10
    B. Uber will be prejudiced by an assumption that Alemar was its employee .................11
  Conclusion ........................................................................................................12
MOTION TO ENSURE A FAIR VOIR DIRE & TRIAL............................................13
  Introduction.......................................................................................................13
  Legal Argument ................................................................................................13
    Point I: "Golden Rule" Remarks Have Been Universally Condemned and Must Be Precluded Here ..........................................................................................13
    Point II: "Send a Message" Attacks on Defendants Are Improper....................................15
    Point III: "Failure to Take Responsibility" and HDTD ("How Dare They Defend") Attacks on Defendants Are Simply Modern Variants of the Verboten "Golden Rule" and "Send a Message" Attacks ................................................................................16
    Point IV: "Community Safety" Appeals Are Simply Variants of the "Golden Rule," Send a Message" and HDTD Attacks Designed to Precipitate Excessive Verdicts.............17
    Point V: "Hired Gun" Attacks Must Be Precluded…………………….....................18

Conclusion ..................................................................................................................19

MOTION TO PRECLUDE PLAINTIFF'S COUNSEL FROM UTILIZING IMPROPER
ANCHORING ............................................................................................................20

    Introduction ............................................................................................................20

    Argument ................................................................................................................20

        Point I: Suggesting Unreasonable Amounts for Pain and Suffering to the Jury in One's
        Capacity as an Officer of the Court ("Unreasonable Anchoring") Is Intentionally
        Misleading & Improper ......................................................................................20

        A. Read Together, CPLR 4016(b) and CPLR 5501(c) Prohibit "Unreasonable"
        Anchoring ..........................................................................................................20

        B. The Sustainable Range of Damages for Plaintiff's Pain and Suffering .................23

        C. Plaintiff's *Carte Blanche* Positions Violates Multiple Canons of Statutory
        Construction .......................................................................................................24

        Point II: Injecting Irrelevant and Improper Analogies to Guide the Jury's Determination
        of Non-Pecuniary Damages in One's Capacity as an Officer of the Court
        ("Unsubstantiated" Anchoring) Is Both Intentionally Misleading and Improper and
        Must Be Prohibited ...........................................................................................27

        Point III: Vouching By Plaintiff's Counsel for Their Anchor Is Impermissible ..............29

        Point IV: Anchoring of Any Kind Is Improper Outside of Summation and Impermissible
        During Voir Dire or Openings or Trial ...............................................................29

    Conclusion ..............................................................................................................31

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arbegast v. Bd. of Educ.*, 65 N.Y.2d 161 (1985 ...................................................................26

*Auburn Hous. Auth. v. Martinez*, 277 F.3d 132 (2d Cir. 2002) .........................................25

*Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 354 (S.D.N.Y. 2014)........................10

*Bermudez v. City of New York*, No. 15-CV-3240 (KAM)(RLM), 2019 U.S. Dist. LEXIS 3442
   (E.D.N.Y. Jan. 8, 2019) ......................................................................................................26

*Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576 (10th Cir. 1984) ........................................14

*Braun v. Ahmed*, 127 A.D.2d 418 (2d Dep't 1987) ...........................................................25

*Callaghan v. A Lague Express*, 298 F.2d 349 (2d Cir. 1962)............................................14

*Chem. Specialties Mfrs. Ass'n v. Jorling*, 85 N.Y.2d 382 (1995)......................................25

*Conn. ex rel. Blumenthal v. United States DOL*, 228 F.3d 82 (2d Cir. 2000) ...................24

*Consorti v. Armstrong World Indus.*, 72 F.3d 1003 (2d Cir. 1995)....................................26

*Coopersmith v. Gold*, 89 N.Y.2d 957 (1997)........................................................................4

*Delrosario v. City of New York*, No, 07 Civ. 2027 (RJS), 2010 U.S. Dist. LEXIS 20923
   (S.D.N.Y. Mar. 4, 2010) .......................................................................................................8

*Donlon v. City of New York*, 284 A.D.2d 13 (1st Dep't 2001) ...........................................22

*Eastman v. Nash*, 153 A.D.3d 1323 (2d Dep't 2017) .......................................................23

*Edwards v. City of Philadelphia*, 860 F.2d 568 (3d Cir. 1988) .........................................14

*Forrestal v. Magendantz*, 848 F.2d 303 (1st Cir. 1988) ...................................................14

*Garcia v. Fernandez*, 167 A.D.3d 991 (2d Dep't 2018)....................................................23

*Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415 (1996) ...........................................21

*Gonzalez v. Sullivan*, 934 F.2d 419 (2d Cir. 1991).............................................................18

*Gonzalez v. United States*, 80 F.4th 183 (2d Cir. 2023) ............................................21, 22

*Grasso v. Koslower*, 11 Misc. 3d 1086(A) (N.Y. Sup. Ct. 2006 .......................................19

*Gregory v. Chohan*, 670 S.W.3d 546 (Tex. 2023).......................................................27, 28

*Halftown v. Triple D Leasing Corp.*, 89 A.D.2d 794 (4th Dep't 1982)...............................18

*Harris v. City of New York*, No. 20 Civ. 10864 (LGS), 2024 U.S. Dist. LEXIS 2908 (S.D.N.Y.
   Jan. 5, 2024)........................................................................................................................15

*Hawkins v. New York Dermatology & Mohs Surgery Grp., PLLC*, Index No. 603688/2019, N.Y.
   Misc. LEXIS 30279 (N.Y. Sup. Ct. Oct. 6, 2023) ...............................................................28

*Hedges v. Planned Sec. Servs. Inc.*, 190 A.D.3d 485 (1st Dep't 2021)...........................31

*Hiciano v. Benson*, 189 A.D.3d 435 (1st Dep't 2020).......................................................23

*Hoke v. Miller*, No. 02-CIV-516, 2007 U.S. Dist. LEXIS 103177 (N.D.N.Y. Apr. 25, 2007) .....19

*Homeowners Choice Prop. & Cas. Ins. Co. v. Kirwas*, 251 So. 3d 181 (Fla. Dist. Ct. App. 2018)
   ..............................................................................................................................................17

*In re Hodges*, 154 A.D.2d 816 (3d Dep't 1989) ................................................................25

*Ivy v. Sec. Barge Lines, Inc.*, 585 f.2d 732 (5th Cir. 1978).............................................14

*Izzo v. Manhattan Med. Grp., P.C.*, 164 A.D.2d 13 (1st Dep't 1990)..............................25

*J.B. v. Mo. Baptist Hosp. of Sullivan*, No. 4:16cv01394 ERW, 2018 U.S. Dist. LEXIS 19689
   (E.D. Mo. Feb. 7, 2018).......................................................................................................17

*Johnson v. Colglazier*, 348 F.2d 420, 422 (5th Cir. 1965) ..............................................14

*Johnson v. Howard*, 24 F. App'x 480 (6th Cir. 2001) ......................................................14

*Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516 (S.D.N.Y. 2008) ......................................2

*Klotz v. Sears Roebuck & Co.*, 267 F.2d 53 (7th Cir. 1959)............................................14

*Knight v. Barsch*, 154 A.D.3d 834 (2d Dep't 2017) ................................................................23

*Koufakis v. Carvel*, 425 F.2d 892 (2d Cir. 1970) ......................................................................2

*Liosi v. Vaccaro*, 35 A.D.2d 790 (1st Dep't 1970) ..................................................................14

*Local 100, Transp. Workers Union v. Traps. Workers Union*, No. 03 Civ. 3512 (PKC), 2005 U.S. Dist. LEXIS 20012 (S.D.N.Y. Sept. 13, 2005) ..........................................................................16

*Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074 (8th Cir. 2000) ................................................14

*Maher v. Locality Llc*, No. 2018CV30360, 2019 Colo. Dist. LEXIS 410 (Colo. Dist. Ct. Larimer Cty. May 17, 2019) ................................................................................................................17

*Malmberg v. United States*, 816 F.3d 185 (2d Cir. 2016) ...................................................29, 30

*Maraviglia v. Lokshina*, 92 A.D. 3d 924 (2d Dep't 2012) ......................................................19

*Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457 (S.D.N.Y. 2003) ......................14

*Marshall v. Port Auth. of New York*, No. 19-cv-2168 (LJL), 2022 U.S. Dist. LEXIS 219372 (S.D.N.Y. Dec. 5, 2022) ..............................................................................................20, 21, 22

*Marshall v. Randall*, 719 F.3d 113 (2d Cir. 2013) ..................................................................15

*Matter of Brandon's Estate*, 55 N.Y.2d 206 (1982) ..................................................................4

*Mazella v. Beals*, 27 N.Y.3d 694 (2016) ..................................................................................4

*McEachin v. City of New York*, 137 A.D.3d 753 (2d Dep't 2016) ...........................................24

*Mileski v. Long Island R.R. Co.*, 499 F.2d 1169 (2d Cir. 1974) ............................................26

*Morgan v. Robinson*, 3 A.D.2d 216 (1st Dep't 1957) ..............................................................4

*Morton v. Mancari*, 417 U.S. 535 (1974) ...............................................................................25

*Norton v. Nguyen*, 49 A.D.3d 927, 930 (3d Dep't 2008) ........................................................18

*People v. Douglas*, 178 Misc. 2d 918 (N.Y. Sup. Ct. 1998) ....................................................18

*People v. Hardy*, 35 N.Y.3d 466 (2020) .................................................................................26

*Perez v. Live Nation Worldwide, Inc.*, 193 A.D.3d 517 (1st Dep't 2021) ................................31

*Perez v. Ramos*, 429 P.3d 254 (Kan. Ct. App. 2018) .............................................................17

*Redish v. Adler*, 195 A.D.3d 452 (1st Dep't 2021) ................................................................31

*R.J. Reynolds Tobacco Co. v. Robinson*, 216 So. 3d 674 (Fla. Dist. Ct. App. 2017) ...............17

*Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 2d 202 (S.D.N.Y. 2021) ..............................4

*Rounds v. Rush Trucking Corp.*, 211 F.3d 185 (2d Cir. 2000) ................................................24

*Scheirman v. Picerno*, No. 2012CV2561, 2015 Colo. Dist. LEXIS 1266 (Colo., Denver Dist. Ct. Apr. 19, 2015) ......................................................................................................................17

*Siemucha v. Garrison*, 111 A.D.3d 1398 (4th Dep't 2013) .....................................................23

*Small v. City of New York*, 213 A.D. 3d 475 (1st Dep't 2023) ................................................22

*Smith v. Rudolph*, 151 A.D.3d 58 (1st Dep't 2017) ...............................................................19

*Steidel v. County of Nassau*, 182 A.D.2d 809 (2d Dep't 1992) ..............................................18

*Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414 (E.D.N.Y. 2013) ................................8

*Tesser v. Bd. of Educ.*, 370 F.3d 314 (2d Cir. 2004) ...............................................................2

*Tyre v. Merritt Constr. Inc.*, 36 N.Y.S.3d 410 (N.Y. Sup. Ct. 2015) .....................................10

*United States v. Downing*, 297 F.3d 52 (2d Cir. 2002) ...........................................................4

*United States v. Gaggi*, 811 F.2d 47 (2d Cir. 1987) ................................................................6

*United States v. Garnes*, 102 F.4th 628 (2d Cir. 2024) ..........................................................10

*United States v. Kaplan*, 490 F.3d 110 (2d Cir. 2007) ...........................................................10

*United States v. Lachman*, 48 F.3d 586 (1st Cir. 1995) ...........................................................7

*United States v. Loera*, 24 F.4th 144 (2d Cir. 2022) ...............................................................7

*United States v. O'Connor*, 580 F.2d 38 (2d Cir. 1978) ..........................................................4

*United States v. Perez*, 144 F.3d 204 (2d Cir. 1998) .............................................................29

iv

*United States v. Poandl*, 612 F. App'x 356 (6th Cir. 2015) (Nelson Moore, J., dissenting) .........14
*United States v. Stahl*, 616 F.2d 30 (2d Cir. 1980) .................................................................2
*Vainer v. DiSalvo*, 107 A.D.3d 697 (2d Dep't 2013) .................................................................24
*Weintraub v. Zabotinsky*, 19 A.D.2d 906 (2d Dep't 1963) ........................................................14
*Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122 (10th Cir. 2009) .........................................16
*Williams v. New York City Health & Hosps. Corp.*, 79 A.D.3d 440 (1st Dep't 2010) ..................22
*Wilt v. Montivel-Cohen*, 197 A.D.3d 1133 (2d Dep't 2021) ........................................................16
*Yvonne Y. v. City of New York*, 199 A.D.3d 551 (1st Dep't 2021) ...............................................26
*Zapata v. Yugo J & V, LLC*, 183 A.D.3d 956 (3d Dep't 2020) .....................................................23

## Rules

22 NYCRR § 1200.0, Rule 3.4(d)(2)(3) ..........................................................................................29
CPLR 4016 .................................................................................................................... passim
CPLR 4107 ...........................................................................................................................30
CPLR 5501 ..................................................................................................................... passim
DR 7-106[C][3] ....................................................................................................................29
Fed. R. Evid. 401 ....................................................................................................................9
Fed. R. Evid. 402 ....................................................................................................................9
Fed. R. Evid. 403 ...............................................................................................................7, 10
Fed. R. Evid. 404 ....................................................................................................................4
Fed. R. Evid. 802 ....................................................................................................................8
RPC 3.3(a)(1)-(2) ..................................................................................................................21

## Other Authorities

105 N.Y. Jur. Trial § 354, 362, 263 ...........................................................................................29
22 Am. Jur. 2d, Damages, § 989 .............................................................................................14
Annot: 96 A.L.R.2d 460 .........................................................................................................14
David Ball & Don Kennan, *Reptile: The 2009 Manual of the Plaintiff's Revolution* (2009) ........15
McKinney's Cons. Laws of NY, Book 1, Statutes § 193 .............................................................30
McKinney's Cons. Laws of NY, Book 1, Statutes § 240 .............................................................30
McKinney's Cons. Laws of NY, Book 1, Statutes $ 301, Comment a .........................................29
Timothy Capowski and Christopher Theobalt, <u>Anchoring Abuse: Evolution & Eradication</u>,
     N.Y.L.J. (Nov. 29, 2023) ...................................................................................................30
Timothy Capowski et al, <u>The Punitive 'Failure to Take Responsibility' Trope Must Be Entirely
     Policed Out of Tort Actions for Compensatory Damages</u>, N.Y.L.J. (Nov. 13, 2020) ............16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

| | |
|---|---|
| SHAARILLE LINZY, | :   Civil Action No.: 1:21-cv-<br>:   05097 |
| Plaintiff, | : |
| - against - | : |
| | :   **OMNIBUS MOTIONS IN** |
| | :   **LIMINE** |
| UBER TECHNOLOGIES, INC. | : |
| | : |
| Defendant. | : |
| | : |
| | : |
| | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X


### MOTION TO PRECLUDE TESTIMONY RELATED TO FINANCES, PROFITS, LOSSES, OR ECONOMIC STATUS OF UBER

### Introduction

Defendant, UBER TECHNOLOGIES, INC. (hereinafter "Uber") respectfully submits this motion *in limine* for an order which seeks the following:

1. All evidence of Uber's financial condition or profits be excluded from evidence;

2. All counsel be instructed not to comment on such evidence or make any attempt to introduce testimony or evidence regarding the same, or refer to the financial condition or profits of Uber; and

3. All counsel informs all of their witnesses not to make any reference or comment to such evidence.

   The introduction of such evidence would be highly improper and prejudicial to Uber even if the Court were to sustain an objection thereto and properly instruct the jury not to consider such

1

statements. Uber's financial condition is irrelevant in this case, and evidence of such should be excluded.

**Legal Argument**

**A.  Evidence of Uber's Financial Condition Is Inadmissible**

Referring to the wealth or poverty of a party, or contrasting the financial status of one with the other in the course of argument (except where relevant to the issues), is an improper appeal to the sympathy or prejudice of the jurors, requiring a new trial. *Koufakis v. Carvel*, 425 F.2d 892, 902 (2d Cir. 1970) ("Remarks such as these, which can be taken as suggesting that the defendant should respond in damages because he is rich and the plaintiff is poor, are grounds for a new trial."); *see Kinsey v. Cendant Corp.*, 588 F. Supp. 2d 516, 518 (S.D.N.Y. 2008) ("The parties are not permitted to argue to the fact finder's potential economic sympathies or prejudices."); *see also United States v. Stahl*, 616 F.2d 30, 32-33 (2d Cir. 1980) ("Because such appeals [to class prejudice] are improper and have no place in a court room . . . we are compelled to reverse.") (internal citations omitted).

It is a fundamental rule that a party's wealth or insurance are grossly improper areas to explicitly or implicitly mention to a jury. *See Tesser v. Bd. of Educ.*, 370 F.3d 314, 318 (2d Cir. 2004) ("Evidence of wealth . . . is generally inadmissible in trials not involving punitive damages.") (internal quotation marks omitted) (alteration in original). Remarks pertaining to defendants' status as corporate entities, their profits, revenue, the number of employees or their insurance represent similar improper arguments and should be precluded. The same goes for unfounded accusations that defendants placed "profits over safety" or "cut corners to save a buck." Absent actual record evidence of such corner-cutting (and here, there is none) *combined with* a

further demonstration of its relevance to a determination of purely compensatory damages for personal injuries, such remarks are forbidden.

Evidence of Uber's financial condition is completely irrelevant in this case given there is no claim for exemplary or punitive damages. Therefore, evidence of Uber's financial condition should also be barred. Further, this case is about Plaintiff and her alleged injuries from an automobile incident, not about Uber's financial condition. There is no overlap whatsoever between the two. Reference to Uber's financial condition is irrelevant, will mislead the jury, and is unduly prejudicial. Uber seeks that this trial not be made about a character assassination and a persistent attempt to influence the verdict with a bias against Uber. Therefore, the Court should preclude any mention of media reports of news coverage whatsoever and instead, narrow the focus of the trial to Plaintiff's allegations and her alleged injuries.

## Conclusion

For the foregoing reasons, Uber respectfully requests that this Honorable Court issue an Order *in limine* (1) excluding all evidence of Uber's financial condition or profits, (2) directing that all counsel be instructed not to comment on such evidence or make any attempt to introduce testimony or evidence regarding the same, and (3) directing all counsel inform their witnesses not to make any references or comment to such evidence.

## MOTION TO PRECLUDE EVIDENCE RELATED TO SIMILAR OR SAME OCCURRENCES, CLAIMS, OR LAWSUITS AGAINST UBER

### Introduction

Uber respectfully submits this motion *in limine* for an order prohibiting all reference to, interrogation on, comment on, and introduction into evidence of any and all testimony regarding any evidence of other alleged related occurrences, claims or lawsuits against Uber.

This motion is made on the grounds that (1) such evidence is not relevant or admissible as per Federal Rule of Evidence 404(b)(1) and established precedent[1]; (2) admission of such evidence has been deemed reversible error[2]; (3) such evidence has little, if any, probative value which is substantially outweighed by the probability that its admission will create substantial danger of undue prejudice, confuse the issues for the jury, necessitate undue consumption of time, and mislead the jury; and (4) the court has the inherent power to curb abuses and promote fair process. This motion applies to all portions of the trial, including jury selection, opening statements, the testimony and examination of witnesses, and closing arguments.

Evidence of other pending claims, verdicts, and/or settlements reached in other litigations against Uber are inadmissible and wholly irrelevant to this matter. Admission of other claims and lawsuits against Uber would complicate and prolong these proceedings by overwhelming the jury with collateral evidence requiring a series of mini-trials related to the circumstances of each other

---

[1] *See Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 222-24 (S.D.N.Y. 2021); *Mazella v. Beals*, 27 N.Y.3d 694, 709 (2016); *Coopersmith v. Gold*, 89 N.Y.2d 957, 959 (1997); *Matter of Brandon's Estate*, 55 N.Y.2d 206, 210-11 (1982); *see also United States v. Downing*, 297 F.3d 52, 58 (2d Cir. 2002) ("Prior bad-acts evidence must be (1) offered for a proper purpose, (2) relevant, and (3) substantially more probative than prejudicial.").
[2] *See, e.g., United States v. O'Connor*, 580 F.2d 38 (2d Cir. 1978); *Morgan v. Robinson*, 3 A.D.2d 216 (1st Dep't 1957).

occurrence. The introduction of such evidence is irrelevant and prejudicial and would deny Uber its right to a fair trial.

## <u>Conclusion</u>

For the foregoing reasons and pursuant to the above-referenced authorities, Uber respectfully requests an order *in limine* excluding evidence of other claims or lawsuits against Uber.

## MOTION TO PRECLUDE ANY ARGUMENT, TESTIMONY, COMMENT OR REFERENCE TO ANY EVIDENCE OF ALL MEDIA COVERAGE IN ANY FORMAT AND FROM ANY SOURCE

### Introduction

Uber respectfully submits this motion *in limine* for an order to preclude any argument, testimony, comment or reference to any evidence of all media coverage in any format and from any source. This motion applies to all portions of the trial, including jury selection, opening statements, the testimony and examination of witnesses, and closing arguments.

Uber anticipates that Plaintiff, Plaintiff's counsel, and witnesses will attempt to enter into evidence or make arguments concerning Uber's presence in the media. However, this case is about Plaintiff and her alleged injuries from an automobile incident, *not* about Uber's spotlight in the news and media. There is no overlap whatsoever between the two. Reference to any negative coverage of Uber in the media is irrelevant, will mislead the jury, and is unduly prejudicial. This trial should not be turned into a character assassination of Uber, nor should the Court permit Plaintiff to engage in a persistent attempt to influence a liability determination or any verdict through prejudice against Uber. Therefore, the Court should preclude any mention of media reports or news coverage surrounding Uber, and instead, narrow the focus of the trial to Plaintiff and her alleged injuries.

### Legal Argument

**A. Any Media Coverage in Any Format any from Any Source Regarding the Incident or Generally Creates Undue Prejudice and Will Confuse and Mislead the Jury**

Media coverage in any format and from any source that may influence jurors should be excluded. For decades, courts have been sensitive to the fact that "trial[s] held in Metropolitan New York [may] engender extensive publicity." *United States v. Gaggi*, 811 F.2d 47, 51 (2d Cir. 1987). Indeed, the Second Circuit has outlined a special procedure for a trial court to use "to

6

determine whether media coverage [has] affected a juror's ability to be impartial." *United States v. Loera*, 24 F.4th 144, 162 n.14 (2d Cir. 2022) (citing *Gaggi*, 811 F.2d at 51). The concern is no less acute, and indeed may even be more acute, when the media coverage at issue is not directly relevant to the case at hand. *See id.* at 161-62 (District Court "canvassed the jury and spoke with jurors individually about news articles they had seen [including] an article reporting an affair by [defendant's] trial attorney.").

The Court may exclude relevant evidence in the exercise of the Court's discretion "if its probative value is substantially outweighed by a danger of . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403; *see also United States v. Lachman*, 48 F.3d 586, 591 (1st Cir. 1995) (affirming District Court's exclusion of evidence including newspaper clippings that "tende[d] to show that the control panel [exported by defendants] might well be used to foster the development of weaponry including nuclear missiles" and were not relevant to whether the control panel was listed as being illegal to export).

Here, Uber anticipates Plaintiff's counsel will make reference to media and news coverage surrounding Uber during *voir dire* and at trial. However, this case is about Plaintiff and her injuries, *not* any media coverage of Uber. If there was any media coverage specific to this incident, there is no foundation to establish that any of the news reporters held any expertise to comment on the causes or extent of the damages caused by the alleged incident which are being addressed in this litigation by expert witnesses. Similarly, there has been no foundation to establish that any media coverage was based upon any personal knowledge of a reporter who was a witness of the incident.

Lastly, media coverage surrounding Uber as a corporation or any business dealings that may or may not be featured in the news generally are irrelevant to alleged personal injuries sustained by Plaintiff.

The purpose of this trial is to assess Uber's liability for Plaintiff's alleged injuries that she sustained from an automobile incident and, if necessary, the extent of Plaintiff's alleged damages. The Court should prevent this case from turning into an ongoing and damaging character assassination of Uber whereby Plaintiff and Plaintiff's counsel attempt to influence the verdict with a corporate and company bias against Uber.

Therefore, any introduction of news media will confuse the issues and will mislead the jury, creating a substantial danger of undue prejudice to Uber.

### B. Media Coverage Is Inadmissible Hearsay.

Newspaper articles and media coverage "are inadmissible hearsay and cannot be relied upon." *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 449 (E.D.N.Y. 2013) (collecting cases); *see also Delrosario v. City of New York*, No. 07 Civ. 2027 (RJS), 2010 U.S. Dist. LEXIS 20923, at *18 (S.D.N.Y. Mar. 4, 2010) (collecting cases) ("Newspaper articles are hearsay when introduced to prove the truth of the matter asserted, and also must not be admitted."). Here, any media coverage Plaintiff might seek to introduce would be hearsay evidence because it would offer information from a person other than a witness with personal knowledge (expert witnesses excepted) to prove the truth of the matter asserted. Absent a specific exception, such hearsay evidence will not be admissible. *See* Fed. R. Evid. 802.

### Conclusion

Uber respectfully requests an order precluding any argument, testimony, comment or reference to any evidence of all media coverage in any format and from any source.

## MOTION SEEKING PRECLUSION OF PREJUDICIAL TERMS

### Introduction

Uber respectfully submits this motion *in limine* for an Order excluding the introduction at trial of any reference to the following irrelevant, immaterial, and prejudicial matters:

1. Referring to Uber as a "cab" or "taxi" company, driving service, or a transportation service;

2. Any use of the term "Uber driver" or variation of that term thereof;

3. Reference, testimony, or attempts to introduce evidence of an "Uber car," "the Uber," or "Uber vehicle" because Uber did not own, lease, manage, or maintain Jose Alemar's (hereinafter "Alemar") vehicle;

4. Describing a user's request for a ride made through the Rider App as "Requesting an Uber," "calling an Uber," "taking an Uber," "hailing an Uber," or "dispatching an Uber;"

5. Reference to Uber "employing" or "hiring" Alemar, or Alemar being an employee and/or legal partner of Uber;

6. Reference, testimony, or attempts to introduce evidence to the number of "Uber drivers" on the road at any given time, in New York or in any other jurisdiction;

7. Describing the Uber App software licensing processes as "applying for" or suggesting that an "application" by users was necessary to secure a license to gain access to the Uber App or Driver App;

8. Describing a user "paying Uber" for any trip.

### Legal Argument

It is a general rule that relevant evidence is admissible unless the evidence is otherwise rendered inadmissible by the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court of the United States. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

However, a trial court may exclude relevant evidence in the exercise of discretion "if its probative value is substantially outweighed by a danger of one or more of the following: unfair

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Rule 403 calls for 'on-the-spot balancing'" of evidence's probative value with its risk of unfair prejudice. *United States v. Garnes*, 102 F.4th 628, 635 (2d Cir. 2024) (quoting *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008)). Evidence that has only slight probative value is susceptible to exclusion where there is any significant risk of unfair prejudice. *See, e.g.*, *United States v. Kaplan*, 490 F.3d 110, 122 (2d Cir. 2007); *Beastie Boys v. Monster Energy Co.*, 983 F. Supp. 2d 354, 359 (S.D.N.Y. 2014); *see also Tyre v. Merritt Constr. Inc.*, 50 Misc. 3d 1226(A), 36 N.Y.S. 3d 410 (Supreme Court, Greene County, 2015) (applying analogous principles under New York law in a motor vehicle accident case and excluding evidence that plaintiff caused accident by smoking marijuana beforehand due to risk of unfair prejudice).

### A. Uber will be prejudiced by any assumption that it is a transportation service or driving service.

It is expected that Plaintiff will attempt to elicit testimony and introduce evidence at trial that Uber is a transportation or driving service/company. It would be unfair and unduly prejudicial if Plaintiff, her counsel, or any witnesses are allowed to use the above-referenced sub-set of specific words and phrases that are factually inaccurate, not offered as evidence of Plaintiff's claims, and risk rousing inaccurate and untrue assumptions from the jury.

Additionally, allowing any testimony or reference to Uber as a "transportation company" is a misnomer and would serve only to confuse and prejudice the jury on the issues presented in the instant action. Uber is a technology company that creates technology-based marketplaces connecting marketplace actors in a variety of sectors. Uber's most widely used technology service is its mobile apps that connect people in need of goods and services with independent third-party businesses to provide those services (*i.e.* drivers, restaurants, freight shippers). One such

10

marketplace in New York City enables independent third-party transportation providers—who are independently commercially licensed by the New York City Taxi & Limousine Commission ("NYCTLC")—to receive requests from riders for their services. Simply stated, Uber provides a smartphone technology link or connection between a rider and a TLC-licensed independent third-party transportation provider, such as Alemar in this case. Allowing any testimony and evidence to the contrary is irrelevant, improper, prejudicial, and must be excluded.

### B.      Uber will be prejudiced by an assumption that Alemar was its employee.

It bears emphasis that, at the time of the subject incident, Alemar was operating his personal vehicle for personal purposes. Alemar was not online in the driver version of the Uber App ("Driver App") at the time of the subject incident. The issue of whether Alemar was acting within the scope of any alleged employment is therefore necessarily disputed, the use of the terms set forth above will unfairly prejudice the jury into resolving the issue in Plaintiff's favor, which should not be permitted.

Even if Alemar was online in the Driver App at the time of the subject incident–and he was not–it remains that he was as a TLC-licensed third-party independent transportation provider who executed an agreement to utilize the Driver App. Uber is a technology company that creates technology-based marketplaces connecting marketplace actors in a variety of sectors. Uber is not liable for Alemar's conduct because Alemar was at all times an independent contractor. Alemar was not an employee of Uber. Because the issue of his alleged employment is also disputed, the use of the terms set forth above will unfairly prejudice the jury into resolving the issue in Plaintiff's favor, which should not be permitted.

11

As such, the use of such terminology suggesting Alemar was an employee of Uber will cause Uber undue prejudice and will inflame and prime the jury on this critical and heavily disputed issue.

## **<u>Conclusion</u>**

Uber respectfully requests this Court issue an Order barring the aforesaid terms at trial.

## MOTION TO ENSURE A FAIR VOIR DIRE & TRIAL

### Introduction

Uber respectfully submits this motion *in limine* for a preliminary order (1) limiting Plaintiff's counsel to commentary, questions, and evidence probative of the firmly-established purpose of this trial and (2) precluding the injection of irrelevant and improper matters outside those bounds strategically intended to procure an award against Uber and/or an excessive damages award. Uber so moves in furtherance of ensuring a just, fair, and efficient trial that maintains the sanctity of the jury's deliberations and guards the constitutionally guaranteed impartiality to which the parties are entitled.

To eliminate any ambiguity on this point, Uber hereby enumerates the most common improper comments and themes that plaintiffs' counsels introduce into personal injury trials, all of which should be forbidden at the outset here:

(1) invocation of the "golden rule";
(2) "send a message" attacks;
(3) "failure to take responsibility" attacks and "HDTD" (aka "how-dare-they defend") attacks on defendant; references to nebulous "safety rules," the jury's ostensible role as the "conscience of the community," and/or allusions to the risk of an accident similar to plaintiff's occurring in the future or to the jurors or their loved ones;
(4) "hired gun" attacks on defendant's damages experts;

### LEGAL ARGUMENT

### POINT I

### "GOLDEN RULE" REMARKS HAVE BEEN UNIVERSALLY CONDEMNED AND MUST BE PRECLUDED HERE

The "Golden Rule" (a/k/a "bag of gold") remark is the tactic in which a jury is asked in one form or another (directly or by implication) to put themselves in the plaintiff's shoes or the plaintiff's position – to "do unto others" as the jury would have "done unto itself."  Plaintiffs all-

too-frequently use this tactic, counting on juries' instincts to want to award themselves a maximalist sum, to divert the jury from its focus on the plaintiff and its role of objectively and dispassionately reviewing the evidence, and to appeal to the jury's sympathy, emotion, and bias.

The Golden Rule is known as the paradigmatic improper tactic in assessing compensatory damages. *See Marcoux v. Farm Serv. & Supplies, Inc.*, 290 F. Supp. 2d 457, 463 (S.D.N.Y. 2003) (quoting *Boshnakov v. Bd. of Educ. of Town of Eden*, 277 A.D.2d 996, 996 (4th Dep't 2000)).[3] Golden Rule arguments have been "universally condemned"[4] because they "encourage[] the jury to depart from neutrality and decide the case on the basis of personal interest and bias rather than on the evidence." *Forrestal v. Magendantz*, 848 F.2d 303, 309 (1st Cir. 1988); *Blevins v. Cessna Aircraft Co.*, 728 F.2d 1576, 1580 (10th Cir. 1984); *Ivy v. Security Barge Lines, Inc.*, 585 F.2d 732, 741 (5th Cir. 1978). They are "improper because they invite decision based on bias and prejudice rather than consideration of facts." *Johnson v. Howard*, 24 F. App'x 480, 487 (6th Cir. 2001); *see Edwards v. City of Philadelphia*, 860 F.2d 568, 574 (3d Cir. 1988).

The impropriety of Golden Rule commentary has been so widely known for so long that plaintiffs now advance it obliquely. Thus, the resort to Golden Rule now arrives masked as another line of improper attack: not "do unto plaintiff as you would have done unto you," but "do unto

---

[3] *See Callaghan v. A Lague Express*, 298 F.2d 349, 350-51 (2d Cir. 1962) (court improperly allowed counsel to argue that the jury "should treat [plaintiff] as you would like to be treated"); *Johnson v. Colglazier*, 348 F2d 420, 422 (5th Cir 1965); *Klotz v. Sears Roebuck & Co.*, 267 F.2d 53, 54-55 (7th Cir. 1959) (such comments constitute a "deliberate appeal to the jury to substitute sympathy for judgment); *Liosi v. Vaccaro*, 35 A.D.2d 790 (1st Dep't 1970) (reversible error to ask jurors, in substance and effect, what they would want or what they would take for the discomfort, pain and suffering experienced); *Weintraub v. Zabotinsky*, 19 A.D.2d 906 (2d Dep't 1963); *see generally* Annot: 96 ALR2d 760; 22 Am Jur 2d, Damages, § 989, at 1029-1030.

[4] *Lovett v. Union Pac. R.R. Co.*, 201 F.3d 1074, 1083 (8th Cir. 2000) (quoting *Spray-Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1246 (7th Cir. 1982)). Indeed, as one particularly sage jurist observed, "there are admonitions to avoid that line of argumentation in every trial-advocacy book on the market. . . . Thus, the government's improper remarks were prejudicial, extensive, and deliberate." *United States v. Poandl*, 612 F App'x 356, 372-373 (6th Cir. 2015) (Nelson Moore, J., dissenting).

defendant what you would do to someone who hurt you." This variant is therefore inherently more objectionable and improper, not less, than the original Golden Rule appeal.[5]

## POINT II

## "SEND A MESSAGE" ATTACKS ON DEFENDANTS ARE IMPROPER

It is well-settled that imploring a jury to "send a message" with its verdict constitutes improper commentary in a trial for compensatory damages. Such attacks are based on punishing the defendant financially and creating a "climate of hostility" and appealing to the jury's passion and sympathy, as opposed to impartially ascertaining a just compensatory pain and suffering award (should one be required). *See Marshall v. Randall*, 719 F.3d 113, 118 (2d Cir. 2013) (approving curative instruction given by trial court to the jury: "I noticed that it was suggested that you send a message. I don't want you to send any messages."); *Harris v. City of New York*, No. 20 Civ. 10864 (LGS), 2024 U.S. Dist. LEXIS 2908, at *5 (S.D.N.Y. Jan. 5, 2024) ("Plaintiff may not argue that the jury should use their verdict to send a message or otherwise address general issues about police conduct or misconduct. Such argument would raise issues that are irrelevant and would be unfairly prejudicial."); *In re Fosamax Prods. Liab. Litig.*, 742 F. Supp. 2d 460, 484 (S.D.N.Y. 2010) ("The Court was of the opinion at trial that counsel's comments regarding Merck's campaign to 'sell more pills' and his call for the jury to 'say something to Merck' was a roundabout attempt to put the issue of punitive damages before the jury."). Here, where there exists no claim

---

[5] The Court need not accept Defendant's word on this issue at face value. The *Reptile* book itself describes a proper compensatory damages presentation ("100% about your client") as an insufficient, old-fashioned strategy that should be discarded for an improper one: "In non-punitive cases, trial lawyers have always relied on jurors empathizing with your client's harms and losses, and compensating accordingly. For years, some teachers taught that you should start your opening statement with damages, explain how the damages occurred, and show how they could have been prevented. This made the case 100% about your client. But the Reptile is not particularly concerned with your client. Our research revealed a different picture: the reptile is concerned with the Reptile – meaning the individual juror: his world and family, their survival, and little else. . . . A direct reference to "this could happen to you" (the individual juror) would violate the Golden Rule. But you don't need to make direct references." David Ball & Don Keenan, *Reptile: The 2009 Manual of the Plaintiff's Revolution* 169 (2009).

15

and no basis to permit punitive damages, Uber should not be relegated to fruitlessly and ineffectually requesting after-the-fact relief from intentional and obvious misconduct.

## POINT III

### "FAILURE TO TAKE RESPONSIBILITY" AND HDTD ("HOW DARE THEY DEFEND") ATTACKS ON DEFENDANTS ARE SIMPLY MODERN VARIANTS OF THE VERBOTEN "GOLDEN RULE" AND "SEND A MESSAGE" ATTACKS

A plaintiff's attacks on a defendant for its "failure to take responsibility" and the related suite of HDTD attacks are equally improper adjuncts to the above-discussed improper attacks. This is no different than a defendant attacking a plaintiff for having the audacity to bring a personal injury lawsuit and seeking a winning lottery ticket and should warrant the same reception from the court. All such attacks on defendants are irrelevant to the issues of fair compensation for plaintiff's injury, and all are transparent efforts to place the focus instead on the defendant, while smuggling punitive considerations into the jury's deliberations.[6]  This conjures the notion of the defendant's conduct posing an ongoing threat and situates the jury to penalize the defendant through an excessive verdict not based on fair compensation.

In New York,[7] and nationwide,[8] case law unanimously confirms the impropriety of HDTD and related attacks or chastisements of a tort defendant for its failure to accept or take responsibility.

---

[6] *See* Timothy Capowski, et al., <u>The Punitive 'Failure To Take Responsibility' Trope Must Be Entirely Policed Out Of Tort Actions For Compensatory Damages</u>, N.Y.L.J. (November 13, 2020).

[7] *Wilt v. Montvel-Cohen*, 197 A.D.3d 1133 (2d Dep't 2021) ("The plaintiff's comments as to the defendants' delay in conceding liability were improper."); *see also Local 100, Transp. Workers Union v. Transp. Workers Union*, No. 03 Civ. 3512 (PKC), 2005 U.S. Dist. LEXIS 20012, at *31 (S.D.N.Y. Sept. 13, 2005) ("The IAC also criticized the Executive Board's decision to punish Allen for defending what she had done rather than 'admitting error,' finding that the decision 'subverts the right to defend oneself . . . by punishing her for daring to defend herself.'") (citation omitted) (alteration in original).  Indeed, not only are such comments plainly improper pursuant to simple relevancy and prejudice analysis, but the Courts cannot permit them for the practical reason that it would discourage defendants from conceding liability, and thus violate New York's strong public policy in this regard.

[8] *See Whittenburg v. Werner Enters. Inc.*, 561 F.3d 1122, 1129-30 (10th Cir. 2009) (citations omitted) (counsel's remark that defendants "spent vast sums of money to avoid responsibility . . . serves no proper purpose, and for time

## POINT IV

### "COMMUNITY SAFETY" APPEALS ARE SIMPLY VARIANTS OF THE "GOLDEN RULE", "SEND A MESSAGE" AND HDTD ATTACKS DESIGNED TO PRECIPITATE EXCESSIVE VERDICTS.

Another popular but improper strategy[9] is to present defendant and its conduct as a threat to the safety of the jury, their families, and their communities as a way to generate excessive damages verdicts.[10] It includes reliance on references to "personal safety," "community safety and protection," "guardians of the community," "community loyalty and duty," "conscience of the community," "danger to the community," and related accusations of violations of non-specific safety rules and regulations (seeking to re-define or confuse the applicable legal standard of care).This strategy, commonly referred to as Reptile tactics, is intended to trigger a primitive survival response in the jury whereby they return a larger verdict – not for compensatory damages

---

out of mind has been the basis for appellate courts ordering new trials"); *Scheirman v. Picerno*, No. 2012CV2561, 2015 Colo. Dist. LEXIS 1266, at *20 (Colo., Denver Dist. Ct. Apr. 19, 2015); *R.J. Reynolds Tobacco Co. v. Robinson*, 216 So. 3d 674, 681 (Fla. Dist. Ct. App. 2017) (citations omitted) ("A plaintiff may not suggest to the jury that a defendant is somehow acting improperly by defending itself at trial or that a defendant should be punished for contesting damages"); *Homeowners Choice Prop. & Cas. Ins. Co., Inc. v. Kuwas*, 251 So. 3d 181, 187 (Fla. Dist. Ct. App. 2018) (same).

[9] "'Reptile Theory' is a permutation of the 'Golden Rule' that is becoming increasing popular with plaintiff attorneys. It is intended to eliminate jury objectivity and exaggerate verdicts by appealing to a juror's own self-interest. . . . The 'Reptile' is a subversive strategy that seeks to benefit by playing upon subconscious and uncontrollable emotions that are triggered within individual jurors. The goal is to achieve a verdict based on these emotions rather than a dispassionate determination of the facts and their application to the controlling legal standards." *Maher v. Locality Llc*, No. 2018CV30360, 2019 Colo. Dist. LEXIS 410, at *13 (Dist. Ct., Larimer Co. May 17, 2019).

[10] *See J.B. v Mo. Baptist Hosp. of Sullivan*, No. 4:16cv01394 ERW, 2018 U.S. Dist. LEXIS 19689, at *6-7 (E.D. Mo. Feb. 7, 2018) (granting preclusion) ("The 'reptile theory' is a litigation strategy based on a book titled *Reptile: The 2009 Manual of the Plaintiff's Revolution*. In that book, the authors instruct lawyers to appeal to the juror's own sense of self-protection in order to persuade jurors to render a verdict for plaintiffs that will, in the collective, effectively reduce or eliminate allegedly 'dangerous' or 'unsafe' conduct and thereby improve the safety of themselves, their family members, and their community."); *Perez v. Ramos*, 429 P.3d 254 (Kan. Ct. App. 2018) (approving preclusion) ("[T]he reptile theory is a jury influence tactic created by an attorney and a jury consultant. Highly summarized, this theory begins with the premise that neither reason (application of the law) nor sympathy (pity for the plaintiff) will motivate jurors to award a larger verdict. The only way to return such a favorable verdict is to appeal to jurors' survival instincts (coined as their 'reptilian brains'). The goal is to persuade jurors that their own safety is at risk and that a larger plaintiff's verdict will make them safer by making their community safer. When employing the reptile theory, a plaintiff's lawyer is to avoid golden rule theory arguments, as those are generally prohibited. Rather, a plaintiff's lawyer tries to establish several generic 'safety rules'—such as rules of the road—which may or may not have anything to do with the specific facts of the case. Reliance on these safety rules then activates the survival instinct of the jurors and prompts the jury to return a higher verdict.").

– but one intended to protect themselves, their families, and communities, and to punish defendants as a preventative measure.

New York courts have long rejected the injection of community conscience, protection, and community safety/danger themes. *See Norton v. Nguyen*, 49 A.D.3d 927, 930 (3d Dep't 2008) ("[I]t is inappropriate to refer to the jury as the 'conscience of the community'"); *Halftown v. Triple D Leasing Corp.*, 89 A.D.2d 794, 794 (4th Dep't 1982) (ordering, *inter alia*, a new trial on damages, where "Counsel [] told the jury six times that they were "the conscience of the community" and must send a message to those in the construction field to be more careful so that this does not happen again, thereby inviting the jury to award punitive damages although such were not involved in the pleadings); *see also Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (admonishing prosecutor for making an inappropriate "reference to the community's cry for safer streets" in closing argument); *People v. Douglas*, 178 Misc. 2d 918, 929 (Sup. Ct. Bronx Cnty. 1998) (the principle is also applicable in criminal jury trials [before sentencing], as "[j]uries cannot be 'the conscience of the community' [*United States v Spock*, 416 F2d 165, 182 (1st Cir 1969)] by violating their oath to apply the law to the evidence").

Uber thus asks that the Court preclude Plaintiff's counsel from referring to unspecified "safety rules" or "community danger," calls for the jury to act for public safety or the voice or conscience of the community, protecting the community from future similar incidents.

## POINT V

## "HIRED GUN" ATTACKS MUST BE PRECLUDED

The prototypical "hired gun" comment is where a defense expert is vilified to the jury on the basis that his opinions are "bought." The courts have unanimously prohibited such attacks and ordered new trials when they have been undertaken. *See, e.g., Steidel v. County of Nassau*, 182

18

A.D.2d 809, 814 (2d Dep't 1992); *see also Hoke v. Miller*, No. 02-CV-516, 2007 U.S. Dist. LEXIS 103177, at \*19-22 (N.D.N.Y. Apr. 25, 2007) (noting on habeas review that a prosecutor's statements that petitioner's expert testimony "had been 'bought and paid for' and that the expert was a 'hired gun' . . . would have been better left unsaid.").   In fact, courts have held that denigration of a party's medical witnesses is "a transgression that cannot be condoned.   Such opinions [a]re uncalled for and should not [be] placed before the jury."   *Smith v. Rudolph*, 151 A.D.3d 58, 62, 66 (1st Dep't 2017); *see also Maraviglia v. Lokshina*, 92 A.D.3d 924, 925 (2d Dep't 2012). Similarly, courts have held that "counsel's continual categorization of [defendant's] expert witnesses as paid pros who would make up whatever they had to in order to support the defense, is, in the opinion of this Court, inexcusable".   *Grasso v. Koslowe*, 11 Misc.3d 1086(A) (Sup. Ct. Richmond Cnty. 2006).

## **CONCLUSION**

This Court should grant the relief requested for the reasons set forth herein.

**MOTION TO PRECLUDE PLAINTIFF'S COUNSEL FROM UTILIZING IMPROPER ANCHORING**

**INTRODUCTION**

Uber submits this memorandum in support of its motion to preclude Plaintiff's counsel from: (1) engaging in *unreasonable* anchoring, i.e., the suggestion of a patently unreasonable figure for pain and suffering damages to the jury during summation; (2) from engaging in *unsubstantiated* anchoring, i.e., the drawing of inappropriate and irrelevant analogies by an officer of the court to guide the jury's determination of the pain and suffering award; (3) vouching personally for the given anchor to the jury; and, at a minimum, (4) anchoring during *voir dire*, openings or trial (anytime outside of summation as directed by the statute).

**ARGUMENT**

**POINT I**

**SUGGESTING UNREASONABLE AMOUNTS FOR PAIN AND SUFFERING TO THE JURY IN ONE'S CAPACITY AS AN OFFICER OF THE COURT ("UNREASONABLE" ANCHORING) IS INTENTIONALLY MISLEADING & IMPROPER**

A.    Read Together, CPLR 4016(b) and CPLR 5501(c) Prohibit "Unreasonable" Anchoring

"Anchoring" is the process by which an attorney is "permitted to make reference, during closing statement, to a specific dollar amount that the attorney believes to be appropriate compensation for any element of damage that is sought to be recovered in the action." CPLR 4016(b). *But see Marshall v. Port Auth. of New York.*, No. 19-cv-2168 (LJL), 2022 U.S. Dist. LEXIS 219372, at *17 (S.D.N.Y. Dec. 5, 2022) (noting that CPLR 4016 "was controversial before it was adopted . . . and remains controversial today") (internal citations omitted). *Unreasonable* anchoring is the tactic whereby plaintiff's counsel *vouch* to the jury on summation for an astronomical figure for pain and suffering damages as constituting reasonable compensation, despite their knowledge that the amount is many times higher than the highest amount ever deemed

20

"reasonable" by the Appellate Division under CPLR 5501(c). *See Marshall*, 2022 U.S. Dist. LEXIS 219372, at \*17 (noting, in discussing CPLR 4016, that CPLR 5501(c) "may provide some protection against a runaway jury inflamed by counsel's request for an award bearing no relation to the evidence at trial"); *see also Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 126-39 (1996) (holding that CPLR 5501(c) is applicable to state claims in federal court); *Gonzalez v. United States*, 80 F.4th 183, 187 (2d Cir. 2023) (clarifying that CPLR 5501(c) provides the appropriate standard for review of district court's damages award governed by New York law).

In practice, this unreasonable version of an otherwise permissible tactic directly pits the permission afforded under CPLR 4016(b) against: (1) the restraining language of CPLR 4016(b) that limits the referenced figure to one that "the attorney *believes to be appropriate* compensation" (emphasis added); (2) the limitations, public policy and legislative intent underlying CPLR 5501(c); (3) the 36 years of damages precedent handed down by the Appellate Division under the statute that plaintiff's counsel is charged with knowing; and (4) the prohibition against false statements of fact or law to a tribunal by attorneys under RPC 3.3(a)(1)-(2).

Plaintiff's counsel who engage in the practice of unreasonable anchoring typically seek refuge not only in a nonsensical interpretation of the "broad latitude" afforded them during summation, but also in a strained selective reading of CPLR 4016(b). Counsel insist that this provision bestows upon them the right to suggest *any* amount for pain and suffering, no matter how absurd or unreasonable, so long as they subjectively believe it is "appropriate." In practice, Plaintiff's counsel's subjective belief in the appropriateness of his or her suggested figure is without regard to the reviewing appellate court's catalogue of damages jurisprudence. Plaintiff's counsel either do not consider, or flatly ignore, the litany of pain and suffering awards reviewed by the Appellate Division pursuant to the statutory directive of CPLR 5501(c), which mandates

that a reviewing court "shall determine that an award is excessive or inadequate if it deviates materially from what would be *reasonable* compensation" (emphasis added). To make such a determination, the Appellate Division is required to compare the case under review with cases involving similar or worse injuries and the awards sustained therefor. Critically, "appellate court comparison of cases . . . using CPLR 5501(c) is *not optional but a legislative mandate*." *Donlon v. City of New York*, 284 A.D.2d 13, 16 (1st Dep't 2001) (emphasis added); *see also Small v. City of New York*, 213 A.D.3d 475, 476 (1st Dep't 2023); *Williams v. New York City Health & Hosps. Corp.*, 79 A.D.3d 440, 442 (1st Dep't 2010).

Uber submits that CPLR 4016(b) must be read alongside, and in harmony with, CPLR 5501(c). That is to say, the term "appropriate" compensation in the former statutory provision must be defined in accordance, rather than in conflict, with the term "reasonable compensation" as set out in CPLR 5501(c). *See Marshall*, 2022 U.S. Dist. LEXIS 219372, at *17. Thankfully, we need not speculate as to what "reasonable compensation" means – CPLR 5501(c) defines such compensation as that which does not "deviate materially" from awards held to be reasonable in similar cases. Thus, an attorney may only arrive at a figure for "appropriate" or "reasonable" compensation for pain and suffering by consulting the reviewing appellate court's catalogue of approved awards for this category of damages.

By this memorandum, Uber seeks to confer notice upon Plaintiff's counsel of the awards for pain and suffering approved by courts applying New York law to similar injuries. *See Gonzalez*, 80 F.4th at 197-98 (affirming District Court's damages award for pain and suffering after bench trial based on District Court's citation to cases from the Northern District of New York and the Appellate Division, Second Department). Having done so, Plaintiff's counsel may not later claim ignorance of the applicable damages precedent. Should they suggest an unreasonable figure for

pain and suffering that is divorced from the governing damages jurisprudence during summation, they will have done so with full knowledge of this departure, thereby underscoring the impropriety of the anchor and revealing it to be an intentional and flagrant disregard of applicable law rather than a zealous but good-faith litigation tactic. They will have also knowingly misled the jury by suggesting to it that the improper anchor constitutes reasonable compensation for plaintiff's injuries while fully aware that it departs markedly from what the courts have defined as such.

B.      Any  *Carte Blanche* Position Taken by Plaintiff Violates Multiple Canons of Statutory Construction

Both existing precedent *and* 4016(b)'s clause "that the attorney believes to be *appropriate compensation*" are not superfluous and to be completely ignored. Courts "are required to 'disfavor interpretations of statutes [like CPLR 4016(b)] that render language superfluous.'" *Conn. ex rel. Blumenthal v. United States DOI*, 228 F.3d 82, 88 (2d Cir. 2000) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992)); *see also In re Hodges*, 154 A.D.2d 816, 816 (3d Dep't 1989) ("It is fundamental that in the construction of a statute, meaning and effect should be given to all of the language, and words should not be rejected as superfluous when it is practicable to give each one a distinct and separate meaning."); *Izzo v. Manhattan Med. Grp., P.C.*, 164 A.D.2d 13, 16 (1st Dep't 1990), amended on other grounds, 169 A.D.2d 428 (1st Dep't 1991) (following *Hodges*). Thus, the clause "that the attorney believes to be appropriate compensation" must be given "distinct and separate" meaning if possible.

Another canon of construction guides the analysis of what the "distinct and separate" meaning must be: CPLR 4016(b) must be harmonized with other components of the CPLR addressing "appropriate compensation" because "statutes relating to the same subject matter [] must be read together and applied harmoniously and consistently." *Chemical Specialties Mfrs.*

*Ass'n v. Jorling*, 85 N.Y.2d 382, 407 (1995) (emphasis in original) (internal quotations/citations omitted); *see also Morton v. Mancari*, 417 U.S. 535, 551 (1974) ("[W]hen two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."); *Auburn Hous. Auth. v. Martinez*, 277 F.3d 132, 145 (2d Cir. 2002) ("[I]t is the court's duty to reconcile these [statutory] provisions, if possible, so that both will have meaning.").

Under this rule, because 5501(c) addresses "reasonable compensation" just as 4016(b) addresses "appropriate compensation", they must be read harmoniously. In other words, 4016(b) should be read to provide counsel the freedom to suggest any "specific dollar amount" that the attorney "believes", in good faith, to represent appropriate compensation, or reasonable compensation under CPLR 5501(c). This also matches the stricture of *Braun v. Ahmed*, 127 A.D.2d 418 (2d Dep't 1987), which required that plaintiffs "suggest a figure that may be characterized as reasonable, or not unreasonable, as a matter of law." 5501(c) is the means by which the courts police awards that are "unreasonable, as a matter of law."

As 4016(b) was enacted after 5501(c), it follows that "the Legislature is . . . presumed to be aware of the decisional and statute law in existence at the time of an enactment." *Arbegast v. Bd. of Educ.*, 65 N.Y.2d 161, 169 (1985); *see also People v. Hardy*, 35 N.Y.3d 466, 474 (2020). Reading the two statutes together, as is required, clarifies the meaning of the clause "that the attorney believes to be appropriate compensation."  Any interpretation which reads that clause out of existence so as to allow attorneys to inflame juries by making ridiculous and unreasonable demands, ignores 4016(b)'s plain text and thus warps its meaning.

To conclude this point, Uber notes that the harm from this practice is undeniable, the aggressiveness of the plaintiffs' bar is increasing,[11] and the telling absence of substantive analysis from New York courts to date is consistent with an inability to justify unrestrained anchoring on any reasoned legal basis.[12] Thus, should this Court permit Plaintiff's counsel to engage in unreasonable anchoring during summation, Uber further objects and will seek a mistrial to the extent that Plaintiff's counsel suggests an unreasonable damages figure to the jury contrary to the statutory scheme established by 4016(b) and 5501(c).

## POINT II

### INJECTING IRRELEVANT AND IMPROPER ANALOGIES TO GUIDE THE JURY'S DETERMINATION OF NON-PECUNIARY DAMAGES IN ONE'S CAPACITY AS AN OFFICER OF THE COURT (*"UNSUBSTANTIATED"* ANCHORING) IS BOTH INTENTIONALLY MISLEADING AND IMPROPER AND MUST BE PROHIBITED

Another improper summation practice that has been increasing in popularity with the plaintiffs' bar has been to anchor the jury's determination of the individual plaintiff's pain and suffering by raising comparisons to priceless pieces of art, the salaries of premier athletes and

---

[11] Indeed, a prominent plaintiff counsel advised a New York County jury that **over $140 million** constituted reasonable compensation for their client's pain and suffering damages, when the Appellate Division has repeatedly limited the very highest end of reasonable compensation for any injuries to a mere fraction of this figure. *See Yanes v. City of New York*, N.Y. Co. Index No. 161066/2014, NYSCEF Doc. 93, Tr. 2079-80. This is the highest currently known improper anchor in the history of New York courts. More specifically, plaintiffs' firm asked the jury to "write in $70 million for the past pain and suffering" and, once having set that context, told the jury to award even more for future pain and suffering because "the biggest part of this case is his future. . . ." *Id.* The First Department subsequently ordered a *remittitur* of the jury's $59 million aggregate verdict for pain and suffering to **$29 million**. *See Yvonne Y. v. City of New York*, 199 A.D.3d 551 (1st Dep't 2021). It will, of course, never be known whether an objective, dispassionate, and unpoisoned New York County jury would have awarded lower amounts than $29 million "but-for" the outrageous unfairly manipulative anchor they were given by a preeminent officer of the court.

[12] In furtherance of this point, the Second Circuit disfavors anchoring altogether and has cautioned against the practice. *See Bermudez v. City of New York*, No. 15-CV-3240 (KAM)(RLM), 2019 US Dist. LEXIS 3442, at *29 (E.D.N.Y. Jan. 8, 2019) (collecting cases). Such suggestions anchor the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence. *See Mileski v. Long Island R.R. Co.*, 499 F.2d 1169, 1172 (2d Cir. 1974) ('A jury with little or no experience in such matters, rather than rely upon its own estimates and reasoning, may give undue weight to the figures advanced by plaintiff's counsel."). A jury is likely to infer that counsel's choice of a particular number is backed by some authority or legal precedent. "Specific proposals have a real potential to sway the jury unduly. While under the circumstances present here we do not yet reach the point of holding that it is error to permit such recommendations, it is not a desirable practice. We encourage trial judges to bar such recommendations." *Consorti v. Armstrong World Indus.*, 72 F.3d 1003, 1016 (2d Cir. 1995), *vac'd on other grounds sub nom. Consorti v. Owens-Corning Fiberglass Corp*, 518 U.S. 1031 (1996).

CEOs, the cost of elite fighter jets, $100 million contract disputes, and annual federal budgets, to name a few. There can be no debate but that such figures have nothing to do with the determination of fair and just compensation for a plaintiff's personal injuries – they are, on their face, simply untethered to any pain-and-suffering concept and instead pertain to the value assigned to extremely scarce property or labor by forces of supply and demand. Because it is irrelevant and unfairly prejudicial to the lay jury's determination, such a tactic should be precluded at the outset, instead of following an objection when the jury has already been poisoned by the comment. This is especially important where the tactic is intended, designed, and certain, to inspire juries to render excessive verdicts in direct contravention of the public policy underpinnings of CPLR 5501(c), a statute specifically designed by the legislature to prevent the upward spiral of non-pecuniary awards.

Fortunately, this improper practice has been recently identified and appropriately limited. In *Gregory v. Chohan*, the Texas Supreme Court set aside an exorbitantly bloated jury award of $39 million and ordered a new trial on damages, noting that plaintiff's counsel failed to "rationally connect the evidence to an amount of damages" and instead "encourag[ed] the jury to base an ostensibly compensatory award on improper considerations that have no connection to rational compensation." 670 S.W.3d 546, 551 (Tex. 2023).

The Texas Supreme Court also noted that a jury's discretion in crafting verdicts is not unlimited, and that they cannot simply "pick a number and put it in the blank." *Id.* at 554 (citation omitted). Instead, the Court stated that the jury's task, whatever the case, is always the same: "They must find an amount that, in the standard language of the jury charge, 'would fairly and reasonably compensate' for the loss." *Id.* at 555 (internal quotation marks omitted). Importantly, the Court held that the "unsubstantiated anchoring" by plaintiffs' counsel in that case was patently improper

and that the irrelevant analogies provided as to the cost of a $71 million Boeing F-18 fighter jet and a $186 million painting by Mark Rothko did not bring jurors any closer to gaining a sense of how to compensate plaintiffs for their injuries. *Id.* at 558. The Court then made clear that the insidious tactic employed by plaintiffs' counsel was improper because its "self-evident purpose" was "to get jurors to think about the appropriate damages award on a magnitude similar to the numbers offered, despite the lack of any rational connection between reasonable compensation and the anchors suggested." *Id.* The Texas Supreme Court finished by stating that it had an obligation to prevent such tactics and that like any other jury finding, an award of damages must be subject to meaningful evidentiary review. *Id.* at 559, 561.

For the foregoing reasons, it is clearly inappropriate for Plaintiff's counsel to compare Plaintiff's pain and suffering to unrelated high-value items. Should this Court nonetheless permit Plaintiff's counsel to engage in such unreasonable anchoring during summation, Uber further objects and will seek a mistrial to the extent that Plaintiff's counsel anchors Plaintiff's damages to completely irrelevant goods.

## POINT III

### VOUCHING BY PLAINTIFF'S COUNSEL FOR THEIR ANCHOR IS IMPERMISSIBLE

Any permission afforded under CPLR 4016(b) to reference a proposed amount for damages does not include any accompanying permission for Plaintiff's counsel to personally "vouch" to the jury for a proposed amount as a reasonable one, or one that their so-called expert legal experience tells them is appropriate, or anything of the kind.[13] To the contrary, the statute is in derogation of

---

[13] Vouching is improper in any context. It is black-letter law that counsel may not turn himself into an unsworn witness and place his credibility on the side of a party to vouch for witnesses or "personal knowledge of facts in issue." *See* 105 NY Jur Trial §354, 362, 263; *see also United States v. Perez*, 144 F.3d 204, 210 (2d Cir. 1998) ("Attorney statements vouching for the credibility of witnesses are generally improper because they 'imply the existence of

the common law and must be strictly construed for that reason. *See Malmberg v. United States*, 816 F.3d 185, 193 (2d Cir. 2016) (quoting *Oden v. Chemung Cty. Indus. Dev. Agency*, 87 N.Y.2d 81, 85 (1995)); *accord* McKinney's Cons Laws of NY, Book 1, Statutes § 301, Comment a ("[S]tatutes in derogation or in contravention (of the common law), are strictly construed, to the end that the common law system be changed only so far as required by the words of the act and the mischief to be remedied"). Hence, even should this Court permit Plaintiff's counsel to engage in unreasonable anchoring during summation, Uber further objects and will seek a mistrial to the extent that Plaintiff's counsel personally vouches for the unreasonable figure given to the jury.

## POINT IV

### ANCHORING OF ANY KIND IS IMPROPER OUTSIDE OF SUMMATION AND IMPERMISSIBLE DURING *VOIR DIRE* OR OPENINGS OR TRIAL

Lastly, the text of CPLR 4016(b) specifically only permits anchoring during summation, which means Plaintiff's counsel should not be permitted to suggest a figure for any component of Plaintiff's damages, no matter how reasonable or unreasonable, during any pre-summation stage of trial (*voir dire*, opening remarks, witness examinations, etc.). As such, and consistent with a statute interpreted in derogation of the common law, *see Malmberg*, 816 F.3d at 193, Uber pre-emptively objects to all pre-summation anchoring tactics and will seek a mistrial to the extent that Plaintiff's counsel utilizes this tactic during any phase of trial preceding closing remarks.[14] This limitation is bolstered further by the universal principle of statutory interpretation, the maxim *expressio unius est exclusio alterius*, Plaintiff's counsel should not be allowed to suggest a figure

---

extraneous proof.'") (quoting *United States v. Rivera*, 22 F.3d 430, 438 (2d Cir. 1994)). Vouching is also a violation of the Code of Professional Responsibility, DR 7-106[C][3], and the Rules of Professional Conduct, 22 NYCRR §1200.0, Rule 3.4(d)(2)(3).

[14] Should Plaintiff's counsel engage in any variation of the anchoring tactic during jury *voir dire*, defendant, if it has not already, will immediately move the court to supervise *voir dire* and/or request that *voir dire* is fully transcribed to ensure a fulsome record for appellate review. *See* CPLR 4107.

or analogue for Plaintiff's pain and suffering damages, no matter how reasonable or unreasonable, outside of summation. *See* N.Y. Stat. Law § 240 (McKinney) ("The maxim *expressio unius est exclusio alterius* is applied in the construction of the statutes, so that where a law expressly describes a particular act, thing or person to which it shall apply, an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded.").[15] [16]

---

[15] If the foregoing were not enough, CPLR 4016(b), as originally enacted in 2003, actually permitted reference to a specific dollar amount "during opening statement and/or during closing statement", *but the very next year the Legislature struck the language "during opening statement and/or"*. This is, unquestionably, an absolute subtraction of this statutory right expressly limiting the permission to summation only. Yet another fundamental principle of statutory construction leaves this point beyond peradventure. *See* N.Y. Stat. Law § 193 (McKinney) ("The Legislature, by enacting an amendment of a statute changing the language thereof, is deemed to have intended a material change in the law.").

[16] *See also Anchoring Abuse: Evolution & Eradication*, Timothy Capowski and Christopher Theobalt, NYLJ (Nov. 29, 2023).

**CONCLUSION**

For the foregoing reasons, this Court should grant an Order granting the requested relief, and awarding Uber such other and further relief as is deemed just and appropriate. Should the court decline, Uber intends to preserve this issue for appeal and hereby places its preemptive objection on the record and will seek a mistrial and related relief should Plaintiff nevertheless resort to any of the above improper tactics.[17]

---

[17] Improper or unreasonable anchoring was raised by a host of *amici curiae* in three 2021 appeals to the First Department in response to a wave of nuclear verdicts this improper practice precipitated. Unfortunately, the Court misstated the relief sought, refused to directly address the issue, ignored the outcry for relief, and denied leave to permit the Court of Appeals to address and end or limit this discreditable practice once and for all. *See Hedges v. Planned Sec. Serv. Inc.*, 190 A.D.3d 485, 489 (1st Dep't 2021) (defendant objected to improper **$58 million** anchor and 24 *amici curiae* entities supported relief on this issue, but defendant inexplicably failed to pursue the issue on appeal; the Court merely reduced the pain and suffering verdict to **$13 million** and noted that it "declines the invitation of amici to announce a new rule prohibiting the practice of anchoring."); *Perez v. Live Nation Worldwide, Inc.*, 193 A.D.3d 517 (1st Dep't 2021) (defendant *pre*-objected to improper **$85 million** anchor [but did not object contemporaneously as mandated by the trial court] and 24 *amici curiae* entities supported relief on this issue; the Court remitted the verdict to **$20 million** and stated that "[w]e decline the invitation of defendant and amici to announce a new rule prohibiting the practice of anchoring (*see Hedges*, 198 A.D.3d at 489).""); *Redish v. Adler*, 195 A.D.3d 452 (1st Dep't 2021) (failing to mention briefs or arguments of 25 *amici* on issue of improper **$40 million** anchor [that was not objected to or raised by defendants on appeal] while remitting the verdict to **$10 million**).

To be 100% clear, the First Department was never asked for the relief that it denied ("a new rule prohibiting the practice of anchoring") and has *not* indicated that no relief will be forthcoming from unreasonable anchoring on an individualized basis. It merely declined to substantively comment or proffer an overarching rule. Moreover, "unsubstantiated" anchoring (Point II), "vouching" anchoring (Point III), and "pre-summation" anchoring (Point IV) have not previously been raised or litigated on appeal. The impropriety of all of these tactics and availability of various forms of relief will continue to be raised before all courts, including the First Department, until the issue is actually *addressed* and resolved by the Appellate Division and Court of Appeals.

As can be seen by the ultimate remittiturs, the unreasonable anchors in these cases each generated pain and suffering verdicts approximately four times higher than the <u>highest</u> figure the Court could permit as constituting reasonable compensation, thus concretely proving the "unreasonableness" of each counsel's anchor. The remittitur of the Court to **$29 million** in *Yanes, supra*, from an improper **$140+ million** anchor, speaks for itself, but perhaps even more loudly.

Respectfully submitted,
DEFENDANT,
UBER TECHNOLOGIES, INC.
By their attorneys,

/s/ Andrew R. Ferguson
Andrew R. Ferguson (AF5154)
Coughlin Betke LLP
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
212-653-0380
aferguson@coughlinbetke.com

31

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document, filed through the ECF system, will be sent electronically to all counsel of record on December 16, 2024.

<u>/s/ Andrew R. Ferguson</u>
Andrew R. Ferguson