**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| SHAARILLE LINZY, | ) | |
| *Plaintiff,* | ) | |
| v. | ) | |
| UBER TECHNOLOGIES, INC., | ) | |
| *Defendant.* | ) | 1:21-cv-05097-ER |

---

### DEFENDANT UBER TECHNOLOGIES INC.'S PRETRIAL MEMORANDUM

---

DEFENDANT,
UBER TECHNOLOGIES, INC.
Coughlin Betke LLP
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
212-653-0380
aferguson@coughlinbetke.com
Monday, December 30, 2024

**TABLE OF CONTENTS**

I.    Statement of the Case At Trial ........................................................................... 1

II.   Statement of the Issues Remaining For Trial .................................................... 4

     A. Plaintiff Cannot Meet Her Burden Of Proving Alemar Was Acting Within The Scope Of Any Alleged Employment With Uber Because Alemar Was Not Online In The Driver App And Not Available To Accept Ride Requests At The Time Of The Incident ........... 4

     B. Plaintiff Cannot Meet Her Burden Of Proving That Alemar Was An Employee Of Uber ................................................................................................................. 7

     C. Plaintiff Cannot Meet Her Burden Of Proving That Uber Knew Or Should Have Known That Alemar Had A Propensity For The Alleged Conduct ................................. 11

     D. The Plaintiff Caused The Incident By Darting Out Into Moving Traffic Between Two Parked Buses And Not In A Crosswalk ................................................................. 13

     E. The Plaintiff Underwent Unnecessary Treatment And Surgery .................................. 14

     F. The Plaintiff Cannot Present Unpleaded Claims ....................................................... 15

     G. Plaintiff Has Not Submitted Any Proposed Verdict Sheet Questions Concerning Employment or Negligent Hiring, Training, Retention, or Supervision .......................... 17

III.  Summary of Trial Witnesses .......................................................................... 17

     A. Uber's Trial Witnesses ............................................................................... 17

     B. Plaintiff and Her Trial Witnesses ................................................................. 20

IV.   Relief Requested ......................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Uber, et al.,* Index No. 514161/2019 (Kings Cnty. Sup. Ct., November 21, 2024) ...... 7, 9

*Alves v. Petik*, 136 AD3d 426 (1st Dep't 2016)................................................................... 9

*AMEX v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002) (same); *Ginns v. Towle*, 361 F.2d 798, 801 (2nd Cir. 1966) ................................................................................................... 16

*Araneo v. Town Bd. for Town of Clarkstown,* 865 N.Y.S.2d 281, 284 (2nd Dept. 2008) ............. 9

*Ashar v. Uber*, NAM ID: 1000249080 (May 20, 2022) ................................................. 8

*Avent v. Headley*, 252 A.D.2d 565 (2d Dep't 1998)..................................................... 12

*Bandele v. Uber, et al.,* Index No. 720862/2020 (Queens Cnty. Sup. Ct., December 9, 2024) . 7, 9

*Barak v. Chen*, 929 N.Y.S.2d 315, 318 (2nd Dept. 2011)............................................... 9

*Barrett v. Uber, et al.,* Index No. 515935/2023 (Kings Cnty. Sup. Ct., February 1 ,2024)............. 6

*Barton v. City of New York*, 187 A.D.3d 976 (2d Dep't 2020); *Dejesus v. Dejesus*, 132 A.D.3d 721 (2d Dep't 2015)................................................................................................. 11

*Beckman v. United States Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) ................... 16

*Bhanti v. Brookhaven Mem'l Hosp. Med. Ctr.*, 687 N.Y.S.2d 667, 669 (2nd Dept. 1999) ............ 9

*Bongiovi v. Uber, et al.,* Index No. 150935/2023 (Richmond Cnty. Sup. Ct., May 31, 2024)8, 9

*Braxton v. Jennings,* 880 NYS2d 516 (2d Dept. 2009) ................................................ 14

*Brown v. City of New York,* 655 NYS2d 567 (2d Dept. 1997)........................................ 14

*Brown-Winfield v. Uber, et al.,* Index No. 515030/2018 (Kings Cnty. Sup. Ct., February 9, 2024) ..................................................................................................................... 6

*Bynog v. Cipriani*, 1 N.Y.3d 193 (2003)..................................................................... 9

*Byrd v. Uber, et al.,* Index No. 504328/2024 (Kings Cnty. Sup. Ct., July 31, 2024) ................. 6

*Caro Fortyz v. Peterson*, 973 N.Y.S.2d 605 (1st Dep't 2013) ........................................ 14

*Carter v. Full Serv., Inc.,* 815 N.Y.S.2d 41 (1st Dep't 2006) ........................................ 15

*Casilla v. N.Y. State Dept. of Labor*, 2005 U.S. Dist. LEXIS 35047 (S.D.N.Y. 2005)............... 16

*Castro v. Uber, et al.,* Index No. 508099/2020 (Kings Cnty. Sup. Ct., December 20, 2024)......... ............................................................................................................... 7, 9, 12

*Castro-Quesada v. Tuapanta*, 148 AD 3d 978 (2nd Dep't 2017). ................................. 8

*Chaouni v. Ali*, 105 AD3d 424 (1st Dep't 2013) ...................................................... 9

*Chuchuca v. Chuchuca*, 890 N.Y.S.2d 573 (2d. Dept. 2009)......................................... 9

*Cortese v. Uber, et al.,* Index No. 605477/2019 (Suffolk Cnty. Sup. Ct., February 18, 2021) ........ .............................................................................................................. 8, 9, 12

*Cuevas De Leon v. Uber, et al.,* Index No. 808882/2023E (Bronx Cnty. Sup. Ct., June 12, 2024) 5

*Davis v. Uber, et al.,* Index No. 517208/2023 (Kings Cnty. Sup. Ct., May 10, 2024) .................. 6

*Davis, et al., v. Uber, et al.,* Index No. 518771/2023 (Kings Cnty. Sup. Ct., March 6, 2024) ........ 6

*Dhondup v. Uber, et al.,* Index No. 500206/2024 (Queens Cnty. Sup. Ct., September 5, 2024) .... 6

*Duncan v. Uber, et al.,* Index No. 700606/2020 (Queens Cnty. Sup. Ct., September 27, 2023)...... .............................................................................................................. 8, 9, 12

*Dutan-Guaman v. Uber, et al.,* Index No. 505670/2022 (Kings Cnty. Sup. Ct., December 18, 2024) ....................................................................................................... 7, 9

*Friend v. Uber, et al.,* Index No. 524705/2022 (Kings Cnty. Sup. Ct., February 6, 2024)............. 6

*G.F. v. Epstein,* 210 N.Y.S.3d 200, 202 (2nd Dept. 2024)........................................... 14

*Galo v. Cunningham* 106 AD3d 865 (2d Dept. 2013)................................................. 13

*Gomez v. City of New York*, 304 A.D.2d 374 (1st Dep't 2003); *Olivia v. City of New York*, 297 A.D.2d 789 (1st Dep't 2002) ........................................................................................ 12

*Gorbacevska v. Uber, et al.,* Index No. 522028/2020 (Kings Cnty. Sup. Ct., August 22, 2024) ........................................................................................................................................ 8, 9

*Harenton Hotel, Inc. v. Vill. of Warsaw*, 749 F. App'x 17, 19 (2d Cir. 2018) ............................ 16

*Hassan v. Marriott Corp.*, 243 AD2d 406 (1st Dep't 1997) ......................................................... 12

*In re Ted Is Back Corp.*, 64 N.Y.2d 725, 726 (1984) ..................................................................... 9

*Island Assoc. Coop, Inc. v. Hartmann*, 118 A.D.2d 830, 831 (2d Dep't 1986) ......................... 12

*J.D. Conley v. Gibson*, 355 U.S. 41, 47 (1957) .......................................................................... 16

*Johnson v. Uber, et al.,* Index No. 708987/2020 (Queens Cnty. Sup. Ct. February 7, 2024) ......... 5

*Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932 (1999) ........................................................ 12

*Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159 (2d Dep't 1997) .............. 11

*Khundzakishvili v. Uber, et al.,* Index No. 521646/2022 (Kings Cnty. Sup. Ct., March 6, 2024) ... 6

*Kleeman v. Rheingold*, 81 N.Y.2d 270 (1993) ............................................................................. 12

*Kuchinski v Charge & Ride, Inc.*, 21 AD3d 1062, 1064, 803 NYS2d 596 (2nd Dept. 2005) ......... 9

*Lombardi v. Overhead Doors, Inc.*, 92 A.D.3d 921 (2d Dep't 2012) ............................................. 12

*Maldon v. Uber, et al.,* Index No. 517770/2020 (Kings Cnty. Sup. Ct., December 19, 2024) ... 7, 9

*Martinez v. Uber, et al.,* Index No. 710099/2023 (Queens Cnty. Sup. Ct., February 16, 2024) ...... 6

*Matter of O-Brien v. Spitzer*, 7 N.Y.3d 239, 242 (2006). .............................................................. 8

*Molina v. Uber, et al.,* Index No. 508862/2021 (Kings Cnty. Sup. Ct., December 18, 2024) ... 7, 9

*Muhammad v. Uber, et al.,* Index No. 701171/2024 (Queens Cnty. Sup. Ct., December 4, 2024). 5

*Murray v. Uber, et al.,* Index No. 509219/2020 (Kings Cnty. Sup. Ct., April 11, 2024) ............... 6

*Noel v. Uber, et al.,* Index No. 504960/2024 (Kings Cnty. Sup. Ct., October 2, 2024) ................. 5

*Ortiz-Daiz v. Uber, et al.,* Index No. 505708/2023 (Kings Cnty. Sup. Ct., February 2, 2024) ....... 6

*Parisi v. Loewen Dev. Corp.*, 774 N.Y.S.2d 746, 746 (2nd Dept. 2004) ......................................... 9

*Parra v. Uber, et al.,* Index No. 526895/2023 (Kings Cnty. Sup. Ct., October 16, 2024) .............. 5

*Perez v. Uber, et al.,* Index No. 700303/2020 (Queens Cnty. Sup. Ct., July 12, 2024) .................. 6

*Pineda v. Uber, et al.,* Index No. 512596/2021 (Kings Cnty. Sup. Ct., December 11, 2024) .... 7, 9

*Pixtun-Suret v. Gevinski,* 84 N.Y.S.3d 260, 261 (2nd Dept. 2018) ............................................. 14

*Rahman v. Uber, et al.,* Index No. 708761/2023 (Queens Cnty. Sup. Ct., May 17, 2024) .............. 6

*Reyes v. Uber, et al.,* Index No. 524704/2022 (Kings Cnty. Sup. Ct., February 2, 2024) .............. 6

*Rivera v. Fenix Car Serv. Corp.,* 916 N.Y.S.2d 169, 170 (2nd Dept. 2011) ..................................... 9

*Rodriguez v. Catalano,* 96 AD3d 821 (2d Dept. 2012) .............................................................. 14

*Rosa v. Scheiber,* 932 NYS2d 349 (2d Dept. 2011) .................................................................. 14

*Sanabria v. Aguero-Borges*, 117 A.D.3d 1024 (2d Dep't) ........................................................ 12

*Shenouda v. Uber, et al.,* Index No. 601854/2020 (Nassau Cnty. Sup. Ct.,, January 3, 2024) .... 8, 9

*Sheridan v. Uber, et al.,* Index No. 50267/2023 (Kings County Sup. Ct., June 26, 2024) .............. 6

*Soares v. Uber, et al.,* Index No. 30914/2017E (Bronx Cnty. Sup. Ct., April 30, 2024) ................. 6

*State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*, 2022 U.S. Dist. LEXIS 91241, at *68 (E.D.N.Y. May 19, 2022) (Brodie, J.) ................................................................................. 14

*Suero v. Uber, et al.,* Index No. 30130/2019E (Bronx Cnty. Sup. Ct., November 12, 2024) .......... 5

*Thompson v. Uber, et al.,* Index No. 710309/2023 (Queens Cnty. Sup. Ct., March 28, 2024) ....... 6

*Uber v. Bryant,* AAA Case No. 01-24-0000-1500 (October 22, 2024) ......................................... 8

*Uber v. Capone*, AAA Case No. 01-24-0000-0126 (October 24, 2024) .................................. 8, 12

*Uber v. Carrington,* AAA Case No. 01-24-0000-3178 (August 20, 2024) .................................... 8

*Uber v. Castillo,* AAA Case No. 01-23-0005-0269 (November 1, 2024) ................................. 8, 12

*Uber v. Edmunds*, AAA Case No. 01-24-0000-7233 (November 5, 2024)...................................8

*Uber v. Ellis,* AAA Case No. 01-22-0005-0265 (September 12, 2024) .................................8, 12

*Uber v. Headley,* AAA Case No. 01-23-0005-0215 (September 9, 2024) ...............................8

*Uber v. Kelly,* AAA Case No. 01-23-0005-8868 (December 4, 2024)...................................8

*Uber v. Krichmaryov,* AAA Case No. 01-23-0003-8044 (September 3, 2024) ....................8, 12

*Uber v. Larry,* AAA Case No. 01-23-0003-4241 (September 10, 2024) ...............................8

*Uber v. Oakley-Williams,* AAA Case No. 01-23-001-8011 (December 21, 2023) ............8, 12

*Uber v. Plantamura/Mastrapasqua*, AAA Case No. 01-23-0005-8868 (November 24, 2024) .....8

*Uber v. Radom*, AAA Case No. 01-23-0004-4089 (December 16, 2024); *Uber v. Alonso,* AAA
Case No. 01-23-0001-9636 (December 9, 2024)............................................................8

*Uber v. Ramos*, AAA Case No. 01-24-0003-1805 (December 2, 2024) ...............................8, 12

*Uber v. Robinson,* AAA Case No. 01-23-0000-3078 (March 28, 2024) ...............................8, 12

*Uber v. Smith*, AAA Case No. 01-23-0001-0641 (November 8, 2024)...................................8, 12

*Uber v. Sobel,* AAA Case No. 01-23-0004-5635 (July 29, 2024) ......................................8

*Uber v. Vasquez,* AAA Case No. 01-22-0002-1444 (March 24, 2023)...................................8

*Welch v. Ayala*, 2023 U.S. Dist. LEXIS 149424, at *18 (S.D.N.Y. Aug. 22, 2023) (Buchwald, J)
.................................................................................................................................15

*Wilson v. Uber, et al.,* Index No. 718083/2022 (Queens Cnty. Sup. Ct., September 10, 2024) ......5

*Zeng Ji Liu v. Bathily,* 145 A.D.3d 558 (1st Dept. 2016) ............................................9

**Rules**

Fed. R. Civ. P. 26 ..............................................................................................14, 15

Fed. R. Civ. P. 26(a)(1)(A)(iii) ...........................................................................14

Fed. R. Civ. P. 26(a)(2)(B) .................................................................................14

Fed. R. Civ. P. 26(b)(2)......................................................................................15

## PRETRIAL MEMORANDUM

### I.  STATEMENT OF THE CASE AT TRIAL

Plaintiff claims that Uber Technologies Inc. ("Uber") is liable for her alleged injuries when, on December 5, 2019, at approximately 5:15 p.m., she was allegedly hit by a car driven by Jose Alemar ("Alemar"). Plaintiff has two pled theories in her Complaint: (1) vicarious liability; and (2) negligent hiring, training, retention, and supervision.[1] However, all of Plaintiff's claims first hinge on the threshold issue of whether Alemar was online in the driver version of the Uber App ("Driver App") and available to receive ride requests at the time of the incident. Uber has maintained from the outset of this case, and continues to maintain, that Alemar was not online in the Driver App and as a result was not available to receive ride requests at the time of the incident. Even assuming *arguendo*, that Alemar was online and available to receive ride requests at the time of the incident, Plaintiff's claims still fail because: (1) Alemar was an independent contractor, not an employee of Uber, and thus Uber cannot be held vicariously liable for his alleged conduct; (2) there is no evidence that Uber knew or should have known that Alemar had a propensity for Alemar's alleged conduct; (3) Plaintiff was the sole proximate cause of the incident by darting out into moving traffic between parked buses and not in a crosswalk; and (4) Plaintiff has not disclosed any experts as required under Federal Rule of Civil Procedure 26, and without experts, Plaintiff cannot establish that any of her alleged injuries, including but not limited to the surgery, were proximately caused by the incident. Uber submits that Plaintiff, who bears the burden of proving her claims, has not and cannot do so, and therefore her claims fail for the reasons set forth below.

---

[1] As noted below, Plaintiff has submitted no proposed verdict sheet questions concerning Alemar's alleged employment with Uber or concerning Plaintiff's allegations of negligent hiring/training/retention/supervision. Plaintiff has also not submitted any proposed jury instruction concerning Plaintiff's allegations of negligent hiring/training/retention/supervision. Doc. 106. In light of the complete lack of evidence to support Plaintiff's unfounded allegation that Alemar was Uber's employee or that Uber negligently hired, trained, retained, or supervised Alemar, it would appear Plaintiff has apparently abandoned these claims. Nevertheless, out of an abundance of caution, Uber addresses these claims in this pretrial memorandum because they were pled in Plaintiff's Complaint.

First, because Alemar was not online in the Driver App and not available to receive ride requests at the time of the incident, Plaintiff cannot meet her burden of proving by a preponderance of admissible trial evidence that Alemar was acting within the scope of any alleged employment with Uber. To satisfy her burden, Plaintiff must prove that Alemar was online in the Driver App and available to receive ride requests at the time of the incident. Plaintiff has adduced no evidence admissible at trial to support this proposition, and the trial evidence will establish conclusively that Alemar was not online in the Driver App and not available to receive ride requests at the time of the incident. This will include testimony from Todd Gaddis, Uber's Manager II, Data Analytics; and data (kept in the normal course of Uber's business) from Alemar's access to and use of the Driver App, conclusively establishing that Alemar went offline in the Driver App at 11:51 p.m. on December 4, 2019, the night before the incident, and did not go online in the Driver App again until 8:26 p.m. on December 5, 2019, more than three (3) hours after the incident. Doc. 53-31 ¶ 9.

Second, because Alemar was an independent contractor, not an employee, Plaintiff cannot meet her burden of proving by a preponderance of admissible trial evidence that Alemar was an employee of Uber such that Uber could be held vicariously liable for his alleged conduct. To the contrary, all the evidence will confirm that Alemar was not an employee, but was an independent contractor. Every factor in this case supports finding that Alemar was an independent contractor, including but not limited to:

- Alemar used the Driver App for lead generation to connect with riders looking for a ride;
- American United Transportation, Inc., owned the vehicle, not Uber;
- Uber did not control the details of Alemar's work, rather Alemar was in business for himself;
- Uber did not provide Alemar with a shift or schedule of when to use the Driver App;
- Alemar determined when and where he would utilize the Driver App;
- Alemar chose when and how often to drive;
- Alemar had no set schedule or geographic area in which he was required to perform trips;

- There was no minimum amount of time Alemar had to use the Driver App to maintain access to it;
- Alemar could provide transportation services anywhere in New York City and other adjacent localities pursuant to TLC rules and reciprocity agreements;
- Alemar was free to go online or offline as he saw fit;
- Alemar could accept, reject or ignore ride requests as he saw fit;
- Alemar was able to cancel a ride request after accepting one;
- Alemar was not required to wear a uniform;
- Alemar was not required to display any Uber logos, names of colors on his vehicle, except as required by law;
- Alemar was free to (and did) use other software application services to connect with riders, such as the Lyft app or Via app, and to engage in any other business or employment activities;
- Alemar was free to use any navigational tool he desired, such as Google maps or Waze;
- Alemar did not have to report to a supervisor or attend company meetings;
- Alemar was not required to sign up for the Driver App in person, he could do so on his computer or smart device at his leisure;
- Alemar did not have to apply or undergo an interview to be able to accept ride requests on the Driver App;
- Uber did not perform a medical examination on Alemar in order for Alemar to gain access to the Driver App;
- Uber never trained Alemar or taught him how to drive;
- Uber did not provide Alemar with any written or in-person courses, classes, tests or examinations;
- Uber never monitored Alemar's driving or had someone sit in his vehicle supervising him;
- Uber does not pay Alemar a wage or a salary. Instead, he pays a service fee for use of the Driver App's lead generation services;
- Alemar was paid by the trip by riders. After a completed trip, the trip amount is charged to the rider's credit card and disbursed to Alemar, less the service fee paid to use the driver version of the Driver App.;
- Uber does not withhold taxes. If he met the statutory threshold, Alemar would be issued a 1099 and he is responsible for paying taxes on the money he earns;
- Alemar used and paid for his own tablet and/or cell phone to access driver version of the Uber App;
- Alemar was responsible for all gas for and maintenance of his vehicle; and
- Alemar's agreement with Uber (the Technology Services Agreement) specifically identified him as an independent contractor.

Third, because there is no evidence that Uber knew or should have known that Alemar had

a propensity for the alleged conduct, Plaintiff cannot meet her burden of proving by a preponderance

3

of admissible trial evidence that Uber negligently hired, retained, trained, or supervised Alemar. Here, since Alemar was not Uber's employee, it follows that Uber cannot be held liable for negligent hiring, training, retention, or supervision of Alemar because Uber never supervised, managed, directed, or controlled him in the first instance. Additionally, there will be no evidence adduced at trial that Alemar had a propensity for dangerous driving.

Fourth, Plaintiff's claims fail because the evidence will show that she caused the incident, not Alemar, when she darted out into traffic between parked buses. Plaintiff herself reported at the hospital that "she was running across the street to catch the bus, saw a car coming but didn't stop and neither did the car." Further, the first responders identified Plaintiff, not Alemar, as the cause of the incident.

Finally, even if Plaintiff somehow proves her claims concerning Alemar and the incident, after being treated and discharged from the hospital the same day, she treated a lumbar sprain/strain and complaints of right-sided pain with an escalating number of providers, culminating in an unnecessary surgery on her left lumbar spine. Plaintiff has not disclosed any experts as required under Federal Rule of Civil Procedure 26. Without experts, Plaintiff cannot establish that any of her alleged injuries, including but not limited to the surgery, were proximately caused by the incident.

Judgment in favor of Uber at trial is warranted.

## II.  STATEMENT OF THE ISSUES REMAINING FOR TRIAL

### A.    Plaintiff Cannot Meet Her Burden Of Proving Alemar Was Acting Within The Scope Of Any Alleged Employment With Uber Because Alemar Was Not Online In The Driver App And Not Available To Accept Ride Requests At The Time Of The Incident

The threshold issue in this case is whether Alemar was online in the Driver App and available to receive ride requests at the time of the incident. This is an essential element of Plaintiff's claims and all of Plaintiff's claims first hinge on this threshold issue. The trial evidence will

conclusively establish that Alemar was not online in the Driver App and not available to receive ride requests at the time of the incident. Whatever driving Alemar was doing at the time of the incident was not in relation to his use of the Driver App, nor further the business of Uber, and not in the course of any alleged employment with Uber.[2] It was on his own personal time. As such, Plaintiff will be unable to meet her burden of proving that Alemar was acting within the scope of any alleged employment with Uber and all of her claims against Uber fail for this reason**.** *See e.g., Wilson v. Uber, et al.,* Index No. 718083/2022 (Queens Cnty. Sup. Ct., September 10, 2024) (when the evidence establishes that a driver and was offline and not using the Driver App to connect with riders at the time of the incident, Plaintiff does not have a cause of action against Uber); *Cuevas De Leon v. Uber, et al.,* Index No. 808882/2023E (Bronx Cnty. Sup. Ct., June 12, 2024) (when driver is offline and unable to accept ride requests through the Driver App at the time of the incident, Plaintiff has no claim against Uber); *Johnson v. Uber, et al.,* Index No. 708987/2020 (Queens Cnty. Sup. Ct. February 7, 2024) (when evidence demonstrates that Plaintiff was offline and not using Driver App to connect with riders at the time of the accident, there can be no theory of liability to recover against Uber); *see also Muhammad v. Uber, et al.,* Index No. 701171/2024 (Queens Cnty. Sup. Ct., December 4, 2024); *Suero v. Uber, et al.,* Index No. 30130/2019E (Bronx Cnty. Sup. Ct., November 12, 2024); *Parra v. Uber, et al.,* Index No. 526895/2023 (Kings Cnty. Sup. Ct., October 16, 2024); *Noel v. Uber, et al.,* Index No. 504960/2024 (Kings Cnty. Sup. Ct., October 2, 2024);

---

[2] Of course, as noted throughout this pretrial memorandum, Uber vehemently denies that Alemar was an employee of Uber. Even assuming *arguendo* that Alemar was online in the Driver App and available to receive ride requests at the time of the incident (he was not) and assuming *arguendo* that Alemar was Uber's employee (he was not), Uber still could not be held liable under the doctrine of *respondeat superior* because Alemar was not within the scope of any alleged employment at the time of the incident. *See Hamm v. United States,* 483 F.3d 135, 138 (2d Cir. 2007) (government not liable for reservist involved in accident on route to Reserve Center as reservist was not in scope of employment while driving to Reserve Center); *Marfia v. T.C. Ziraat Bankasi, New York Branch,* 100 F.3d 243, 252 (2d Cir.1996) ("In New York, a master is not responsible for the wrongful acts of his servant who was not subject to the actual or potential control of the master when the wrongful acts took place") (citing *Lundberg v. State,* 25 N.Y. 467, 472 (1969).

*Perez v. Uber, et al.,* Index No. 700303/2020 (Queens Cnty. Sup. Ct., July 12, 2024); *Rahman v. Uber, et al.,* Index No. 708761/2023 (Queens Cnty. Sup. Ct., May 17, 2024); *Soares v. Uber, et al.,* Index No. 30914/2017E (Bronx Cnty. Sup. Ct., April 30, 2024); *Murray v. Uber, et al.,* Index No. 509219/2020 (Kings Cnty. Sup. Ct., April 11, 2024); *Thompson v. Uber, et al.,* Index No. 710309/2023 (Queens Cnty. Sup. Ct., March 28, 2024); *Martinez v. Uber, et al.,* Index No. 710099/2023 (Queens Cnty. Sup. Ct., February 16, 2024); *Brown-Winfield v. Uber, et al.,* Index No. 515030/2018 (Kings Cnty. Sup. Ct., February 9, 2024); *Friend v. Uber, et al.,* Index No. 524705/2022 (Kings Cnty. Sup. Ct., February 6, 2024); *Reyes v. Uber, et al.,* Index No. 524704/2022 (Kings Cnty. Sup. Ct., February 2, 2024); *Ortiz-Daiz v. Uber, et al.,* Index No. 505708/2023 (Kings Cnty. Sup. Ct., February 2, 2024).[3]

The undisputed record evidence, adduced by Uber by way of testimony, Affidavit, and data, will unequivocally establish that Alemar was not online and not available to receive ride requests at the time of the incident. Testimony from Todd Gaddis, Uber's Manager II, Data Analytics; and data (kept in the normal course of Uber's business) from Alemar's access to and use of the Driver App, conclusively establishes that Alemar went offline at 11:51 p.m. on December 4, 2019, the night before the incident, and did not go online again until 8:26 p.m. December 5, 2019, more than three (3) hours after the incident. Doc. 53-31 ¶ 9; Docs. 53-31, 60-3.

---

[3] *See also e.g. Dhondup v. Uber, et al.,* Index No. 500206/2024 (Queens Cnty. Sup. Ct., September 5, 2024); *Byrd v. Uber, et al.,* Index No. 504328/2024 (Kings Cnty. Sup. Ct., July 31, 2024); *Sheridan v. Uber, et al.,* Index No. 50267/2023 (Kings County Sup. Ct., June 26, 2024); *Davis v. Uber, et al.,* Index No. 517208/2023 (Kings Cnty. Sup. Ct., May 10, 2024); *Khundzakishvili v. Uber, et al.,* Index No. 521646/2022 (Kings Cnty. Sup. Ct., March 6, 2024); *Davis, et al., v. Uber, et al.,* Index No. 518771/2023 (Kings Cnty. Sup. Ct., March 6, 2024); *Friend v. Uber, et al.,* Index No. 524705/2022 (Kings Cnty. Sup. Ct., February 6, 2024); *Reyes v. Uber, et al.,* Index No. 524704/2022 (Kings Cnty. Sup. Ct., February 2, 2024); *Barrett v. Uber, et al.,* Index No. 515935/2023 (Kings Cnty. Sup. Ct., February 1 ,2024). It must be noted that Uber has only cited to Orders that were rendered on this issue in 2024. There are numerous other decisions out of the Supreme Courts in New York prior to 2024 and citations to same shall be provided upon the request of this Honorable Court.

The significance of Alemar not being online in the Driver App and not able to receive ride requests at the time of the incident is dispositive. Alemar simply could not have been engaged in any work connected to or "on behalf" of Uber when this incident happened. When driving without being online in the Driver App, Alemar was driving on his own time. Therefore, at the time of the incident, Alemar had no connection to Uber, could not have been acting with the scope of any purported employment relationship--which Uber denies, and therefore, Uber cannot be held liable for Alemar's alleged conduct.

**B.    Plaintiff Cannot Meet Her Burden Of Proving That Alemar Was An Employee Of Uber[4]**

Even if Alemar was online in the Driver App and available to receive ride requests at the time of the incident (which he was not), Uber cannot be held vicariously liable for his alleged actions because Alemar was an independent contractor and not an employee of Uber. Specifically, New York courts have consistently held that TLC-licensed drivers, like Alemar, using the driver version of the Uber App ("Driver App") for trip leads are independent contractors. *See e.g. Castro v. Uber, et al.,* Index No. 508099/2020 (Kings Cnty. Sup. Ct., December 20, 2024); *Maldon v. Uber, et al.,* Index No. 517770/2020 (Kings Cnty. Sup. Ct., December 19, 2024); *Dutan-Guaman v. Uber, et al.,* Index No. 505670/2022 (Kings Cnty. Sup. Ct., December 18, 2024); *Molina v. Uber, et al.,* Index No. 508862/2021 (Kings Cnty. Sup. Ct., December 18, 2024); *Pineda v. Uber, et al.,* Index No. 512596/2021 (Kings Cnty. Sup. Ct., December 11, 2024); *Bandele v. Uber, et al.,* Index No. 720862/2020 (Queens Cnty. Sup. Ct., December 9, 2024); *Allen v. Uber, et al.,* Index No. 514161/2019 (Kings Cnty. Sup. Ct., November 21, 2024); *Gorbacevska v. Uber, et al.,* Index

---

[4] Uber has consistently maintained throughout this case, and continues to maintain, that Alemar was not online in the Driver App and not available to receive ride requests at the time of the incident. This discussion is made solely for analyzing Uber's position that Alemar was an independent contractor and not an employee if the jury were to somehow determine that Alemar was online in the Driver App and available to receive ride requests at the time of the incident.

No. 522028/2020 (Kings Cnty. Sup. Ct., August 22, 2024); *Bongiovi v. Uber, et al.,* Index No. 150935/2023 (Richmond Cnty. Sup. Ct., May 31, 2024); *Shenouda v. Uber, et al.,* Index No. 601854/2020 (Nassau Cnty. Sup. Ct.,, January 3, 2024); *Duncan v. Uber, et al.,* Index No. 700606/2020 (Queens Cnty. Sup. Ct., September 27, 2023); *Cortese v. Uber, et al.,* Index No. 605477/2019 (Suffolk Cnty. Sup. Ct., February 18, 2021). In all of these cases, New York Courts have granted Uber summary judgment holding that Uber could not be held vicariously liable for the driver's alleged actions because the driver was an independent contractor and not an employee of Uber.[5]

Uber lacked control over Alemar and cannot be held vicariously liable for his alleged actions. "An employee is someone who works for another subject to substantial control, not only over the results produced but also over the means used to produce the results." *Matter of O-Brien v. Spitzer*, 7 N.Y.3d 239, 242 (2006). "A person who works for another subject to less extensive control is an independent contractor." *Id.* "The critical inquiry in determining whether an employment relationship exists 'pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results.'" *Castro-Quesada v. Tuapanta*, 148 AD 3d 978 (2nd Dep't 2017). When determining a worker's status for the purpose of tort liability, relevant factors Courts look to assess control include whether the worker: (1)

---

[5] In addition to the above-cited cases, New York arbitrators have consistently held drivers like Alemar are independent contractors. *See Uber v. Radom*, AAA Case No. 01-23-0004-4089 (December 16, 2024); *Uber v. Alonso,* AAA Case No. 01-23-0001-9636 (December 9, 2024); *Uber v. Kelly*, AAA Case No. 01-23-0005-8868 (December 4, 2024); *Uber v. Ramos*, AAA Case No. 01-24-0003-1805 (December 2, 2024); *Uber v. Plantamura/Mastrapasqua*, AAA Case No. 01-23-0005-8868 (November 24, 2024); *Uber v. Smith*, AAA Case No. 01-23-0001-0641 (November 8, 2024); *Uber v. Edmunds*, AAA Case No. 01-24-0000-7233 (November 5, 2024); *Uber v. Capone*, AAA Case No. 01-24-0000-0126 (October 24, 2024); *Uber v. Bryant,* AAA Case No. 01-24-0000-1500 (October 22, 2024); *Uber v. Ellis,* AAA Case No. 01-22-0005-0265 (September 12, 2024); *Uber v. Larry*, AAA Case No. 01-23-0003-4241 (September 10, 2024); *Uber v. Headley,* AAA Case No. 01-23-0005-0215 (September 9, 2024); *Uber v. Krichmaryov,* AAA Case No. 01-23-0003-8044 (September 3, 2024); *Uber v. Carrington,* AAA Case No. 01-24-0000-3178 (August 20, 2024); *Uber v. Sobel,* AAA Case No. 01-23-0004-5635 (July 29, 2024); *Uber v. Robinson,* AAA Case No. 01-23-0000-3078 (March 28, 2024); *Uber v. Oakley-Wil-liams,* AAA Case No. 01-23-001-8011 (December 21, 2023); *Uber v. Vasquez*, AAA Case No. 01-22-0002-1444 (March 24, 2023); *Ashar v. Uber,* NAM ID: 1000249080 (May 20, 2022).

worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule. *Bynog v. Cipriani*, 1 N.Y.3d 193 (2003). *Chuchuca v. Chuchuca*, 890 N.Y.S.2d 573 (2d. Dept. 2009); *Araneo v. Town Bd. for Town of Clarkstown,* 865 N.Y.S.2d 281, 284 (2nd Dept. 2008); *In re Ted Is Back Corp*., 64 N.Y.2d 725, 726 (1984); *Rivera v. Fenix Car Serv. Corp.,* 916 N.Y.S.2d 169, 170 (2nd Dept. 2011); *Parisi v. Loewen Dev. Corp*., 774 N.Y.S.2d 746, 746 (2nd Dept. 2004).

"Where the proof on the issue of control presents no conflict in evidence or is undisputed, the matter may properly be determined as a matter of law." *Barak v. Chen*, 929 N.Y.S.2d 315, 318 (2nd Dept. 2011); *Bhanti v. Brookhaven Mem'l Hosp. Med. Ctr*., 687 N.Y.S.2d 667, 669 (2nd Dept. 1999). *Castro, Maldon, Dutan-Guaman, Molina, Pineda, Bandele, Allen, Gorbacevska, Bongiovi, Shenouda, Duncan,* and *Cortese* follow a long history of First and Second Department cases where analogous conclusions were reached; that livery drivers are independent contractors of dispatching services without sufficient control to establish vicarious liability as a matter of law. *See e.g. Barak v. Chen,* 87 AD3d 955 (2d Dep't 2011); *Chaouni v. Ali*, 105 AD3d 424 (1st Dep't 2013); *Alves v. Petik*, 136 AD3d 426 (1st Dep't 2016); *Zeng Ji Liu v. Bathily,* 145 A.D.3d 558 (1st Dept. 2016); *Kuchinski v Charge & Ride, Inc.*, 21 AD3d 1062, 1064, 803 NYS2d 596 (2nd Dept. 2005).

Here, the evidence will demonstrate that Uber lacked sufficient control over Alemar and cannot be held vicariously liable for his alleged actions.

At all relevant times in New York City, Uber USA, LLC[6] sublicenses the use of the driver version of the Uber App to independent third-party transportation providers licensed in New York City by the Taxi & Limousine Commission ("TLC"). Prior to gaining access to the Driver App and pursuant to TLC regulations, Alemar created an account and provided personal identifying

---

[6] Uber USA, LLC, is a wholly owned subsidiary of Uber Technologies, Inc.

information, photocopies of a valid driver's license and TLC license, proof of commercial insurance and TLC-plated vehicle registration. Alemar then agreed to the Technology Services Agreement ("TSA") and Driver Addendum, which plainly stated that he was an independent contractor and not Uber's employee. *See* Doc. 53-31, specifically the Technology Services Agreement and Addendum electronically accepted by Alemar, along with the data showing the date of acceptance).

Uber did not control the details of Alemar's work. Rather, Alemar was in business for himself. He determined when and where he would utilize the driver version of the Driver App. Uber did not provide Alemar with a shift or a schedule of when to use the Driver App. Uber did not tell Alemar when or where he was required to use the Driver App. There was no minimum amount of time Alemar had to use the Uber App to maintain access to it. He could provide transportation services anywhere in New York City and other adjacent localities pursuant to TLC rules and reciprocity agreements. He was free to go online and offline as he saw fit and to accept or decline a trip request at his discretion. He was able to cancel a trip request after accepting one. He was not required to wear a uniform or to display any Uber logos, names or colors on his vehicle, except as required by law. He provided his own equipment and tools, including the smartphone on which he downloaded the Driver App and/or any navigational tools he used in providing transportation services, and he operated his own vehicle to provide transportation services to his riders. Alemar was free to use any navigational tool he desired, such as Google maps or Waze. He was free to use other software application services to connect with riders, such as the Lyft app or Via app, and to engage in any other business or employment activities. He did not have to report to a supervisor or attend company meetings. Alemar was not required to sign up for the Driver App in person. He could do so either over the computer or on his smartphone, at his leisure. Alemar

10

did not have to apply or undergo an interview to be able to accept trip leads on the Driver App. Uber did not perform a medical examination on Alemar in order for Alemar to gain access to the Driver App. He had no set schedule or area that he had to work in to provide trips. Uber never trained Alemar or taught him how to drive. Uber did not provide Alemar with any written or in-person courses, classes, tests or examinations. Uber never monitored Alemar's driving or had someone sit in his vehicle supervising him. Uber does not pay Alemar a wage or a salary. Instead, he pays a service fee for use of the Driver App's lead generation services. After a completed trip, the trip amount is charged to the riders' credit card and disbursed to Alemar, less the service fee paid to use the Driver App. Uber does not withhold taxes. If he met the statutory threshold, Alemar would be issued a 1099 and he is responsible for paying taxes on the money he earns. Alemar did not receive any fringe benefits from Uber, such as health insurance, retirement benefits or vacation.

The evidence at trial will demonstrate that Alemar is an independent contractor and not an employee of Uber, both in conduct and in his agreement with Uber. As such, Uber cannot be held vicariously liable for Alemar's alleged conduct.

## C.    Plaintiff Cannot Meet Her Burden Of Proving That Uber Knew Or Should Have Known That Alemar Had A Propensity For The Alleged Conduct[7]

In order to prevail on a cause of action for negligent hiring, training, retention, and supervision, a plaintiff must prove "that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159 (2d Dep't 1997); *see also Barton v. City of New York*, 187 A.D.3d 976 (2d Dep't 2020); *Dejesus v. Dejesus*, 132 A.D.3d 721 (2d Dep't 2015); *Gomez v. City*

---

[7] Uber has consistently maintained throughout this case, and continues to maintain, that Alemar was not online in the Driver App and not available to receive ride requests at the time of the incident. This discussion is made solely for analyzing Uber's position that Alemar was an independent contractor and not an employee and that there is no evidence that Alemar had any propensity for the alleged conduct if the jury were to somehow determine that Alemar was online in the Driver App and available to receive ride requests at the time of the incident.

*of New York*, 304 A.D.2d 374 (1st Dep't 2003); *Olivia v. City of New York*, 297 A.D.2d 789 (1st Dep't 2002). Therefore, the touchstone of a negligent supervision, management, direction, and control claim is foreseeability. In order to establish foreseeability, a plaintiff must establish that the employer was "aware or should have been aware of the employee's propensity for the conduct which allegedly caused Respondent's injury." *Avent v. Headley*, 252 A.D.2d 565 (2d Dep't 1998); *see also Hassan v. Marriott Corp.*, 243 AD2d 406 (1st Dep't 1997). "Mere speculation or surmise is not enough." *Island Assoc. Coop, Inc. v. Hartmann*, 118 A.D.2d 830, 831 (2d Dep't 1986); *see also Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932 (1999).

Here, since Alemar was not Uber's employee, it follows that Uber cannot be held liable for negligent hiring, training, retention, or supervision of Alemar because Uber never supervised, managed, directed, or controlled him in the first instance. *See e.g. Castro, Ramos, Smith, Castillo, Capone*, *Ellis*, *Krichmaryov*, *Robinson, Oakley-Williams*, *Duncan*, and *Cortese, supra*. Moreover, a company who hires an independent contractor, as distinguished from an employee or servant, is not vicariously liable for the negligent acts of the independent contractor. *Kleeman v. Rheingold*, 81 N.Y.2d 270 (1993); *Sanabria v. Aguero-Borges*, 117 A.D.3d 1024 (2d Dep't); *Lombardi v. Overhead Doors, Inc.*, 92 A.D.3d 921 (2d Dep't 2012).

Additionally, in this case the alleged conduct was some form of dangerous driving.[8] There is no evidence Alemar had a propensity for dangerous driving. Furthermore, it was the province of the TLC, and not Uber, to conduct a background search of Alemar before he was issued a TLC license. When giving Alemar access to the driver version of the Uber App to receive trip leads in New York City, Uber justifiably relied on Chowdhury's valid TLC license, which signified a satisfactory background check had been run by the TLC. *See* About TLC - TLC (nyc.gov). The

---

[8] Uber does not concede that Alemar acted negligently in the incident. This discussion is made solely for analyzing propensity in the context of this case.

evidence at trial will demonstrate that there is nothing to suggest that Uber knew or should have known that Alemar had a propensity for the alleged injury-producing conduct. Rather Uber reasonably relied on Alemar's TLC license and the background check that was a necessary component of obtaining that license.

### D. The Plaintiff Caused The Incident By Darting Out Into Moving Traffic Between Two Parked Buses And Not In A Crosswalk

The evidence at trial will demonstrate that Plaintiff was the sole proximate cause of the incident by darting out into moving traffic between parked buses. Beyond her own self-serving testimony, Plaintiff has no competent evidence that she was crossing at the crosswalk with the right of way when the accident occurred. This testimony is not credible in view of the overwhelming contrary evidence that will be presented by Uber that Plaintiff caused the incident by running out into the street mid-block between two parked buses. Specifically, NYPD Officer Steven M. Morrow concluded that the sole contributing factor to the accident was "Pedestrian error/confusion" and the pedestrian Linzy's action was "Emerging from in front of/behind parked vehicle." Doc. 53-32. The Plaintiff herself reported to emergency medicine Dr. Elizabeth Patterson on her arrival at Jacobi Medical Center immediately after the accident that "she was running across the street to catch the bus, saw a car coming but didn't stop and neither did the car." Jakobi Medical Center Records from December 5, 2019.

Thus, as a matter of New York law, Plaintiff, not Alemar, is the sole proximate cause of the accident, and Alemar is not liable. *See Galo v. Cunningham* 106 AD3d 865 (2d Dept. 2013) (judgment as a matter of law where "plaintiff ran into the middle of the road outside of a crosswalk and into the defendant's lane of travel when the defendant's view of the plaintiff was obstructed, such that the defendant was unable to avoid contact with the plaintiff"), *citing* New York Vehicle and Traffic Law § 1152 (a) (requiring pedestrians to yield when crossing outside

crosswalks)*; Rodriguez v. Catalano,* 96 AD3d 821 (2d Dept. 2012)*; Rosa v. Scheiber,* 932 NYS2d 349 (2d Dept. 2011)*; Braxton v. Jennings,* 880 NYS2d 516 (2d Dept. 2009)*; Brown v. City of New York,* 655 NYS2d 567 (2d Dept. 1997); *see also G.F. v. Epstein,* 210 N.Y.S.3d 200, 202 (2nd Dept. 2024) (same); *Pixtun-Suret v. Gevinski,* 84 N.Y.S.3d 260, 261 (2nd Dept. 2018) (same)*; Caro Fortyz v. Peterson*, 973 N.Y.S.2d 605 (1st Dep't. 2013) (same).

### E.    The Plaintiff Underwent Unnecessary Treatment And Surgery

After the incident, Plaintiff was transported after the accident to Jacobi Medical Center, where all her tests including X-rays and CT scans were negative, and she was diagnosed with bruising mild concussive symptoms. Nevertheless, she subsequently consulted with multiple pain management, orthopedic, and physical therapy providers, including numerous specialists at CitiMed–a provider enjoined from commencing further no-fault arbitrations in *State Farm Mut. Auto. Ins. Co. v. Metro Pain Specialists P.C.*, 2022 U.S. Dist. LEXIS 91241, at *68 (E.D.N.Y. May 19, 2022) (Brodie, J.). Uber has moved to preclude these doctors' testimony and records for plaintiff's failure to properly disclose them, and to impeach them with the allegations of improper and fraudulent treatment should their testimony be allowed. Doc. 91. Plaintiff treated with physical therapy, multiple epidural steroidal injections, and ultimately a left-sided discectomy at L4-L5. Plaintiff has not disclosed any experts as required under Federal Rule of Civil Procedure 26. Specifically, she has not disclosed treating medical experts under Rule 26(a)(2)(B) or retained medical experts under Rule 26(a)(2)(C). Further, she had not disclosed medical billing records under Rule 26(a)(1)(A)(iii). As such, Plaintiff should be precluded from offering any expert testimony or any medical billing records at trial.  See Doc. 91-94.  "[A] plaintiff is required to present competent, non-conclusory expert evidence sufficient to support a finding, not only that the alleged injury is serious within the meaning of Insurance Law § 5102(d), but also that the injury was proximately **caused** by the accident at issue." *Welch v. Ayala*, 2023 U.S. Dist. LEXIS 149424,

at *18 (S.D.N.Y. Aug. 22, 2023) (Buchwald, J) (emphasis original), *quoting Carter v. Full Serv., Inc.,* 815 N.Y.S.2d 41 (1st Dep't 2006). Dr. Gallina performed a lumbar hemilaminotomy surgery ("surgery") on Plaintiff, However, Dr. Gallina's records fail to establish that the surgery was proximately caused by the incident. Additionally, Plaintiff has not disclosed Dr. Gallina as an expert as required by Fed. R. Civ. P. 26(b)(2). The Plaintiff has failed to present any evidence whatsoever that the surgery Dr. Gallina performed was proximately caused by the subject incident, let alone competent, non- conclusory, properly-disclosed expert evidence of same. Since Dr. Gallina has not been disclosed as an expert, the Plaintiff must be precluded from presenting evidence or argument concerning Dr. Gallina's surgery. Here, without experts, the Plaintiff cannot establish that any of her alleged injuries, including the surgery, were proximately caused by the incident.

Moreover, Uber' expert, orthopedic surgeon Dr. John Beiner, was timely disclosed under Fed. R. Civ. P. 26. Dr. Beiner is expected to testify that Plaintiff sustained merely strains and sprains with nonverifiable radicular complaints and received unreasonable treatment, including a laminectomy performed on the wrong side of her body given her complaints.

## F.    The Plaintiff Cannot Present Unpleaded Claims

Plaintiff is suggesting her claim against Uber is based in negligent design of its application. This claim is **not pled** in her Complaint. Uber has moved to preclude the presentation of evidence or argument concerning unpleaded claims, including products liability, and to preclude presentation of evidence concerning the New York Vehicle and Traffic Law sections concerning mobile phone and electronic device use. Docs. 95-96, 99-100. The plaintiff has nevertheless submitted charges and verdict forms concerning these unpleaded claims and irrelevant issues, despite not pleading this

claim in her Complaint, a complete lack of evidence supporting such a claim, and having disclosed no expert on the topic. As such, Plaintiff should be precluded from making these claims at trial.[9]

Plaintiff has sought a defective question to go to the jury. Doc. 106 at Question 1. This claim is **<u>not pled</u>** in her Complaint. "The pleading requirements of the Federal Rules of Civil Procedure are designed to provide defendants 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Beckman v. United States Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) (quoting *J.D. Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "[A]t the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense." *Id.* "Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently rules that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment," much less on the eve of trial, over a year after summary judgment is litigated. *Id.* (internal quotation marks omitted) (collecting cases); *accord Harenton Hotel, Inc. v. Vill. of Warsaw*, 749 F. App'x 17, 19 (2d Cir. 2018); *see Casilla v. N.Y. State Dept. of Labor*, 2005 U.S. Dist. LEXIS 35047 (S.D.N.Y. 2005) at *19 (the Rules of Federal Procedure are "specifically designed to avoid 'trial by ambush'…. Instead, parties must share all relevant information with each other well in advance of trial in order to enable each side to fully prepare its legal strategy) (internal citation omitted); *AMEX v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002) (same); *Ginns v. Towle*, 361 F.2d 798, 801 (2nd Cir. 1966) (" "The basic purpose of the federal rules, particularly those concerning discovery and disclosure, is to eliminate trial by ambush, sometimes called the sporting theory of justice, and avoid . . . surprise"). *See also* Doc. 99-100. This question simply cannot be submitted to the jury.

---

[9] As set forth in Uber's Motion in Limine to Preclude Plaintiff from Presenting Unpleaded Claims (Doc. 99-100), which Uber incorporates herein by reference, Uber submits that these claims fail as a matter of law as Uber is a service provider, not a "product", New York does not recognize these types of claims, and Courts around the country have rejected the types of claims Plaintiff is now seeking to advance.

**G.    Plaintiff Has Not Submitted Any Proposed Verdict Sheet Questions Concerning Employment or Negligent Hiring, Training, Retention, or Supervision**

Despite Plaintiff's claim that Alemar was an employee of Uber being a necessary element of her claims of both vicarious liability and negligent hiring/training/retention/supervision, the Plaintiff has submitted no proposed verdict sheet questions concerning Alemar's alleged employment with Uber or concerning Plaintiff's allegations of negligent hiring/training/retention/supervision. Plaintiff has also not submitted any proposed jury instruction concerning Plaintiff's allegations of negligent hiring/training/retention/supervision.  Doc. 106. In view of the foregoing complete lack of evidence to support Plaintiff's completely unfounded allegation that Alemar was Uber's employee or Plaintiff's allegation of negligent hiring, training, retention, or supervision, it is not surprising that Plaintiff has apparently abandoned these claims.

**III. SUMMARY OF TRIAL WITNESSES**

**A.  Uber's Trial Witnesses**

Given that Uber does not have the burden of proof, Uber reserves the right to not call any witnesses or to call only some of the witnesses on this list based on the state of the evidence.  Subject to the foregoing, Uber states that it expects to call:

1.    Todd Gaddis, Uber's Manager II, Data Analytics, will testify consistent with his Affidavit and the data in support of summary judgment and his testimony at deposition. Specifically, Mr. Gaddis will testify that Alemar was not online in the Driver App and not available to receive ride requests at the time of the incident. Mr. Gaddis will testify that a driver must not only log onto the Driver App with his or her specific account credentials to use the Driver App, but also go online to be able to connect with riders to provide rides. Mr. Gaddis will testify that drivers can only receive and accept ride requests through the Driver App when they are online in the Driver App.  Mr. Gaddis will testify that he is personally familiar with various aspects of the

17

Uber Apps, including identifying drivers who have access to the Driver App and a driver's usage of the same, as well as Uber's business practices, regularly conducted business activity, and business records. Mr. Gaddis will testify that he is personally familiar with data transmitted through the Driver App, and the corresponding GPS coordinates that indicate a driver's status at the time he or she goes online or goes offline. Mr. Gaddis will testify that based on the police report, Plaintiff's Complaint, and Uber's business records relating to Alemar's access to the Driver App, including business records related to Alemar, it is conclusive that Alemar went offline in the Driver App at 11:51 p.m. on December 4, 2019, the night before the incident, and did not go online in the Driver App again until 8:26 p.m. on December 5, 2019, more than three (3) hours after the incident. Mr. Gaddis' testimony will conclusively establish that Alemar was not online in the Driver App and not available to receive ride requests at the time of the incident. In addition, Uber reserves all rights to call upon Mr. Gaddis as a rebuttal witness as may be deemed appropriate.

2.      Erin O'Keefe, Uber's Senior Manager, Corporate Business Operations, will provide testimony providing additional support evidencing the lack of employment relationship between Uber and Alemar. Ms. O'Keefe will testify about her personal knowledge regarding Uber's business as well as the operations of Uber subsidiaries. Ms. O'Keefe will testify that Uber is a technology company that uses its proprietary technology to develop and maintain digital multi-sided marketplace platforms, one of which connects independent transportation providers with individuals looking for rides. Ms. O'Keefe will testify that there are two versions of the Uber App: (1) one that a user accesses from his or her smartphone to request rides from an independent third-party transportation provider (i.e. the rider version of the Uber App); and (2) one that a driver goes online on his or her device in order to connect with those who are seeking the ride requests (i.e. the driver version of the Uber App). Ms. O'Keefe will testify that in New York City, Uber is

required to comply with NYC TLC regulations, and that drivers, such as Alemar, seeking to access the Driver App to provide transportation services to riders in New York City are commercial drivers who must have a TLC license. Ms. O'Keefe will testify how, TLC-licensed independent drivers in New York City, such as Alemar, are able to use the Driver App to connect with potential riders Ms. O'Keefe will testify that on or about June 11, 2018, Alemar electronically accepted and agreed to the Technology Services Agreement (TSA) and Driver Addendum (as well as additional addenda) and Ms. O'Keefe will testify about the terms of the TSA. Ms. O'Keefe will also testify that Plaintiff electronically accepted and agreed to Rider Terms of Use before gaining access to the rider version of the Uber App. Ms. O'Keefe will testify about the terms of the Rider Terms of Use. Ms. O'Keefe will testify about the independent contractor status of Alemar and/or other items establishing that there is no employment relationship whatsoever between Uber and Alemar, consistent with all of the facts set forth above in this pretrial memorandum. Ms. O'Keefe's testimony will conclusively establish that the relationship between Uber and Alemar was that of an independent contractor relationship. In addition, Uber reserves all rights to call upon Ms. O'Keefe as a rebuttal witness as may be deemed appropriate.

3. Sergeant William J. Melrose of the New York City Police is anticipated to testify concerning his investigation into the incident between the Plaintiff and Alemar, his conclusions concerning same, and the incident report he prepared.

4. Elizabeth Patterson, M.D. is anticipated to testify concerning treatment she provided to Plaintiff at Jakobi Medical Center and what Plaintiff told her concerning the incident.

5. John M. Beiner, MD, FAAOS, EMT/DMT will testify that the Plaintiff suffered a sprain/strain injury with non-verifiable complaints of radiculopathy and minimal degree of

impairment. Dr. Beiner will further testify that the plaintiff underwent left-sided lumbar spine surgery for an unclear reason given her complaints of right-sided pain.

6.     Jose Alemar is anticipated to testify concerning the facts and circumstances regarding the alleged incident, the nature and extent of Plaintiff's alleged damages and other issues relevant to Plaintiff's claims and Uber's defenses.

### B.  Plaintiff and Her Trial Witnesses

1.     Uber expects Plaintiff will be called to testify at trial, because it is expected that her entire case will rest upon her testimony. As set forth above, her deposition testimony that she did not cause the incident is not credible in view of the evidence to the contrary, including but not limited her own statements to Dr. Patterson on arrival at Jacobi Hospital and Sergeant Melrose's investigation of and conclusions regarding the incident.

2.     Uber expects Plaintiff will attempt to call some of her medical providers. Uber states that these providers must be precluded from testifying due to for Plaintiff's failure to properly disclose them as experts. Doc. 91-94. Should their testimony somehow be allowed, Uber intends to impeach them regarding the medical necessity of Plaintiff's treatment, the lack of proximate cause of Plaintiff's alleged injury, and with the allegations against them of improper and fraudulent treatment as more fully set forth in Uber's motions in limine on these issues. *Id.*

## IV. RELIEF REQUESTED

Judgment in Uber's favor at the conclusion of plaintiff's evidence and conclusion of trial under Fed.R.Civ.P. 50 will be warranted.

Respectfully submitted,
DEFENDANT,
UBER TECHNOLOGIES, INC.
By their attorneys,

/s/ Andrew R. Ferguson
Andrew R. Ferguson (AF5154)
Coughlin Betke LLP
1330 Avenue of the Americas
Suite 23A
New York, NY 10019
212-653-0380
aferguson@coughlinbetke.com

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to all counsel of record on December 30, 2024.

/s/ Andrew R. Ferguson
Andrew R. Ferguson